UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>HYPNOTIC TAXI LLC, et al.,[1]<br><br><div align="right">Debtors.</div> | Case No.:    15-43300 (CEC)<br>(Jointly Administered) |
| CITIBANK, N.A.,<br><div align="right">Plaintiff,</div><br>- against -<br><br>BOMBSHELL TAXI LLC, et al.,<br><br><div align="right">Defendants.</div> | Adv. Proc. No. *15-01185 (CEC)* |

## MEMORANDUM OF LAW
## IN SUPPORT OF ORDER OF ATTACHMENT AND TRO

ZEICHNER ELLMAN & KRAUSE LLP
Attorneys for Plaintiff
1211 Avenue of Americas
New York, New York 10036
Telephone:  (212) 223-0400

---

[1]    The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Hypnotic Taxi LLC (6632) (Case No. 15-43300); (ii) Bombshell Taxi LLC (1282) (Case No. 15-43301); (iii) Bourbon Taxi LLC (7155) (Case No. 15-43302); (iv) Butterfly Taxi LLC (6992)(Case No. 15-43303); (v) Candy Apple Taxi LLC (0249) (Case No. 15-43304); (vi) Chianti Taxi, LLC (6799) (Case No. 15-43305); (vii) Chopard Taxi Inc. (0746) (Case No. 15-43306); (viii) Cupcake Taxi LLC (0324) (Case No. 15-43307); (ix) Dorit Transit Inc. (9129) (Case No. 15-43308); (x) France Taxi LLC, (9592) (Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039) (Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877) (Case No. 15-43311); (xiii) Marseille Taxi LLC (9890) (Case No. 15-43312); (xiv) Merlot Taxi LLC (7103) (Case No. 15-43313); (xv) Milkyway Cab Corp. (5061) (Case No 15-43314); (xvi) Palermo Taxi, Inc. (5956) (Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725) (Case No. 15-43316); (xviii) Pointer Taxi LLC, (2323) (Case No. 15-43317); (xix) Pudding Taxi Inc. (0432) (Case No. 15-43318); (xx) Stoli Taxi Inc. (4079) (Case No. 15-43319); (xxi) Vodka Taxi LLC (4239) (Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909) (Case No. 1543321).

Plaintiff Citibank, N.A. ("Citibank") submits this memorandum of law in support of its motion for (i) an order of attachment as to the assets of Evgeny Freidman ("Freidman"), pursuant to CPLR §6201, (b) a temporary restraining order ("TRO"), pursuant to CPLR §6210, forbidding Freidman from making any transfer or other disposition of any asset in which he has a direct or indirect interest, (c) a TRO forbidding the Kelly Funding Trust ("Kelly Trust"), Birkin Funding Trust ("Birkin Trust"), Lindy Funding Trust ("Lindy Trust") and the Evelyn Funding Trust ("Evelyn Trust" and, together with the Kelly Trust, Birkin Trust, and Lindy Trust, the "Trusts"), from making any transfer or other disposition of any asset owned, directly or indirectly, by the Trusts, (d) an order, pursuant to CPLR §2020, authorizing Citibank to obtain expedited disclosure from any person having knowledge regarding any property in which Freidman has an interest, including, without limitation, Freidman, Sandra Friedman (his wife), the trustees of the Trusts and Ethan Gerber, and (e) such other and further different relief as is just and proper.

## PRELIMINARY STATEMENT

Citibank commenced the captioned action seeking, inter alia, judgment against Freidman in the sum of approximately $32 million pursuant to certain unconditional guaranties.  Approximately three months thereafter, Freidman arranged

for the formation of the Trusts[2] and then transferred his ownership interest in more than
$70 million worth of real estate to those Trusts.

There can be no explanation for the transfers but that Freidman assigned
and secreted his interests in his real estate assets in order to hinder, delay and defraud
his creditors, and frustrate the enforcement of a judgment that might be rendered in
favor of his creditors.  This is a textbook example of the type of wrongful conduct that
orders of attachment were designed to remedy.

## FACTS

The relevant facts are fully set forth in the accompanying Walsh Decl.
and Schwed Decl.  In summary, Citibank commenced this lawsuit in March 2015
seeking, inter alia, judgment against the corporate defendants on the Loans and
judgment against Freidman as a result of his default under his guaranties of the Loans.
On May 22, 2015, Citibank obtained the Order of Seizure, after the Supreme Court
found a likelihood of success on the merits on the underlying claims. On or about June
15, 2015, Freidman executed multiple Assignments pursuant to which he transferred his
ownership interest in each of at least twenty-six (26) of the Real Estate Entities, and in
the Manhattan Residences to one of the Trusts (the "Transfers").  See Assignments
annexed as Exhibit H to Schwed Decl.  The trustees of the Trusts are Freidman's long-

---

[2]    Unless otherwise defined herein, capitalized terms shall have the respective meanings ascribed in the
       accompanying Declarations of Bernadette Walsh (the "Walsh Decl.") and Nathan Schwed (the
       "Schwed Decl.").

standing attorney and two close business associates.    Freidman received no consideration for the Transfers.

Freidman made the Transfers at a time that the Citibank Lawsuit against Freidman had been pending for several months and approximately seven (7) weeks after Capital One had filed Freidman's Affidavit of Confession of Judgment seeking entry of the Capital One Judgment. In addition, at the time of the Transfers Freidman was in default on his guarantees of millions of dollars of loans made by various lenders to entities that Freidman owns and/or controls.

Freidman made the Transfers with actual intent to hinder, delay and defraud his creditors, including Citibank.

## POINT I

## CITIBANK IS ENTITLED TO AN ORDER OF ATTACHMENT UNDER CPLR 6201(1)

Federal Rule of Civil Procedure 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Those remedies include attachment. Fed. R. Civ. P. 64(b).

Attachments under New York law are governed by Article 62 of New York's Civil Practice Law and Rules ("CPLR").

> Attachment is a provisional remedy that gives a pre-judgment creditor the ability to secure a defendant's property pending the entry of a final judgment. Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 926 N.E.2d 1202, 1207, 900 N.Y.S.2d 698 (N.Y. 2010); Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 911 N.E.2d 825, 828, 883 N.Y.S.2d 763 (N.Y. 2009). A plaintiff may attach any debt or property against which a money judgment can be enforced, CPLR § 6201, including debts owed to the defendant, CPLR § 5201(a), or property the debtor could assign or transfer. CPLR § 5201(b); Bass v. Bass, 140 A.D.2d 251, 528 N.Y.S.2d 558, 560-1 (N.Y. App. Div. 1988). To obtain an order of attachment, a plaintiff must establish four elements by affidavit or other written evidence: (1) it has stated a claim for a money judgment, (2) it has a probability of success on the merits (3) at least one of the five attachment grounds listed in CPLR 6201 has been satisfied, and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff. CPLR §§ 6212(a), 6201; Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 62 N.Y.2d 291, 465 N.E.2d 330, 334, 476 N.Y.S.2d 791 (N.Y. 1984).

Helicon Partners, LLC v. Kims Provision Co., Inc., 2013 Bankr. LEXIS 1844 (Bankr. S.D.N.Y. 2013) at 12.

Citibank has established each of the required elements by documentary evidence.

## A.    Claim for Money Judgment and Probability of Success

Two of the four required elements are established by undisputed documentary evidence and as a matter of law.

First, there can be no dispute that Citibank's complaint seeks a money judgment against Freidman (based on garden-variety guaranty claims). The likelihood

of Citibank's success on those claims is established by Citibank's papers in support of its pending motion for summary judgment, which is in the record.  For the sake of brevity, the facts and law set forth in those papers will not be repeated here.[3]  That Freidman disputes Citibank's claim does not defeat the fact that "likelihood of success" has been established:

> A likelihood of success on the merits may be established even if the facts are in dispute and the evidence is inconclusive. (Bell & Co., PC v. Rosen, 114 AD3d 411, 979 N.Y.S.2d 564 [1st Dept 2014]; Four Times Square Assocs. V. Cigna Invs., 306 AD2d 4, 5, 764 N.Y.S.2d 1 [1st Dept 2003]).

Genger v. Genger, 2014 N.Y. Misc. LEXIS 1691 (2014).

To show probability of success for purposes of an attachment, it is sufficient that the evidentiary facts that support a prima facie case have "some probative force."  Swiss Bank Corp. 5 v. Eatessami, 26 A.D.2d 287, 290 (1st Dep't 1966). "While there must be a sufficient showing that the ultimate facts stated in the pleading can be sustained, the truth of the facts stated may be assumed and plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated...." Id. (internal citations and quotations omitted); Bank Leumi Trust Co. v. Istim, Inc., 892 F. Supp. 478, 482 (S.D.N.Y. 1995) ("In determining whether there is a likelihood of success on the merits, all legitimate inferences should be drawn in favor of

---

[3]  A copy of Citibank's Memorandum of Law in support of the Summary Judgment Motion is annexed as Exhibit G to the Schwed Decl.

the party seeking the attachments."); <u>Considar, Inc. v. Redi Corp. Establishment</u>, 238 A.D.2d 111 (1st Dep't 1997) (overturning denial of motion for attachment when there was "at least the probability of plaintiff being successful" in breach of contract claim against defendant and noting that "[a]lthough evidentiary facts making out a prima facie case must be shown, plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated"); <u>Deutsche Anlagen-Leasing GMBH v. Kuehl</u>, 111 A.D.2d 69 (1st Dep't 1985) (finding allegations of misappropriation of corporate funds by executive officer were "more than sufficient" to establish a prima facie claim for damages in fraud action instituted by corporations, for purposes of establishing probability of ultimate success on the merits as required for attachment).

However, even without this lenient standard, the undisputed facts are more than sufficient to demonstrate that "it is probable that [Citibank] will succeed on the merits" of its claims.

The undisputed documents presented by Citibank establish that Freidman unconditionally guaranteed the payment of the Loans to the Debtors, and that the $10 Million Loan and the $1.5 Million Loan have matured by their own terms. It is also undisputed that the matured Loans have not been paid. Similarly, the undisputed documents establish that the default by the $21 Million Loan Borrowers under their guaranties of the $1.5 Million Loan triggered a default under the $21 Million Loans which permitted Citibank to accelerate the $21 Million Loans.

Accordingly, Citibank has established the first of two of the four required elements for an attachment.

## B.     Grounds for Attachment Under CPLR 6201(3)

The third of the four required elements is met because "at least one of the five attachment grounds listed in CPLR 6201 has been satisfied." Section 6201 of the CPLR provides, in pertinent part:

> [a]n order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more of the defendants, when:
>
>                    . . . .
>
> 3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; . . .

As demonstrated below, Freidman's Assignments to the Trusts were made with <u>actual intent</u> to either defraud his creditors or frustrate the enforcement of Citibank's anticipated judgment.

> [B]ecause "fraudulent intent is rarely susceptible to direct proof," <u>In re Kaiser</u>, 722 F.2d 1574, 1592 (2d Cir. 1983), courts look for "proof of certain objective facts -- or badges of fraud -- that give rise to the inference of intent to defraud." <u>Lippe v. Bairnco Corp.</u>, 249 F. Supp. 357, 374-75 (S.D.N.Y. 2003); <u>Bank Leumi</u>, 892 F. Supp. at 483 (quoting <u>Stevens v. Middleton</u>, 26 Hun. 470, 472 (1st Dep't 1882) ("Direct proof of [fraudulent intent] can

rarely be obtained, and when it is established it must ordinarily be inferred from the circumstances.")).

LaChapelle v. Torres, 2013 U.S. Dist. LEXIS 188494 at 13 (S.D.N.Y. 2013).

It is settled law in the Second Circuit that actual intent to hinder, delay or defraud creditors may be proven by demonstrating the existence of "badges of fraud":

> "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." Wall St. Assocs. v. Brodsky, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999) (internal citations and quotation marks omitted). These "badges of fraud" may include (inter alia): "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; . . . and retention of control of the property by the transferor after the conveyance." Id.; see also HBE Leasing I, 48 F.3d at 639 ("Actual fraudulent intent . . . may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction."); In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005).

1.     Inadequacy of the Consideration

The Assignments do not recite any consideration received by Freidman in exchange for the transfers. Moreover, they were each recorded with New York transfer documents which reflect that no transfer taxes were paid. Thus, absent credible

evidence of adequate consideration, the only reasonable inference is that the first badge of fraud is present.

2.      Relationship Between Transferor and Transferee

Walker has been Freidman's corporate attorney for many years.  She is a Trustee of each of the four transferee Trusts.  Her co-trustees, Abitbol and Mermelstein, are Friedman's employees and/or business associates.  The "close relationship" badge of fraud is clearly present.

3.      Transfer Not in Ordinary Course of Business

The transfers involved virtually all of the real estate owned by Freidman. Many of the properties owned by the Real Estate Entities are used in connection with Freidman's taxi business.  The Transfers of Freidman's ownership interest in the Real Estate Entities to the Trusts were clearly outside of the ordinary course of Freidman's business.

4.      Retention of Control

The Transfers were made for no consideration to Trusts controlled by Freidman's attorney and close associates.  Whether or not Freidman is the stated beneficiary of the Trusts, it is obvious that Freidman has not relinquished ultimate control over these assets.

It would defy credulity for Freidman to assert that he has retained no control over the more than $70 million of real estate assets he placed in the Trusts, especially since many of the properties are actively used for Freidman's taxi business.

5.    <u>Additional Badges of Fraud</u>

<u>Timing of the Transfers</u>

The Transfers were made (i) while the Citibank Lawsuit was pending, (ii) one month after the Supreme Court rejected Freidman's arguments and entered the Seizure Order, (iii) two months after Capital One recorded Freidman's Confession of Judgment, (iv) at a time that Freidman was in default on his obligations under at least ten (10) notes secured by mortgages, (v) at a time that many of Freidman's entities were in default on numerous other loans guaranteed by Freidman, (vi) at a time that many of Freidman's other lenders were pressuring Freidman to either pay down debt or post additional collateral to secure outstanding loans, and (vii) at a time that Freidman anticipated that numerous other loans guaranteed by Freidman would be going into default.  The timing of the Transfers is powerful evidence of Freidman's intent to hinder, delay and defraud creditors.

<u>Other Pending Lawsuits Against Freidman</u>

Freidman is currently a defendant in multiple lawsuits in which lenders are seeking to recover judgments against him based on his default under notes and/or guaranties.  At least ten such lawsuits were recently commenced.  See Schwed Decl. at

¶22.  It is reasonable to assume that when Freidman made the Transfers he was anticipating those lawsuits.  Indeed, based on Freidman's default on his guaranties of numerous other Medallion loans, it is reasonable to assume that Freidman expects to be named as a defendant in numerous additional lawsuits imminently.

Concealment of Transfers

Although Freidman provided the PFS to Citibank and knows that Citibank relied on his guaranties in making the Loans and his substantial assets to back up those guaranties, Freidman concealed the Transfers from Citibank.

Freidman's Remaining Assets After the Transfers

As set forth in the Schwed Decl., the assets transferred by Freidman were the only substantial assets that were easily subject to execution by a judgment creditor. Following the Transfers, Freidman's only remaining substantial assets are his interests in numerous entities that own Medallions.[4]  Those Medallions, however, are highly leveraged and encumbered by liens, rendering them of little value to a judgment creditor.  This is compounded by the negative impact that Uber has had on the values of Medallions.  The fact that Freidman transferred the only assets that are readily

---

[4]  Freidman has also retained his interests in various companies that manage Medallions and provide services for taxis.  However, Freidman's interest in these entities have little, if any, value to a judgment creditor, especially in light of the dramatic negative impact that app-based car services such as Uber have had on the value of Medallions and the amount that drivers are willing to pay to rent them.

accessible to creditors (and have significant unencumbered value) is another significant "badge of fraud."

The foregoing badges of fraud provide overwhelming evidence that Freidman made the Transfers with intent to hinder, delay or defraud creditors. Although Freidman will undoubtedly claim that he made the Transfers for a purpose other than to hinder, delay or defraud his creditors, it will be difficult for him to do so with a straight face.

**C.    Amount Demanded Exceeds Counterclaim**

Finally, Citibank has established the fourth required element by undisputed documentary evidence.  The pleadings in the action establish that "the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff."  It is black-letter law that, for purposes of this calculation, the Court is to weigh only the amount of counterclaims that Citibank concedes are valid.  The record in this action is clear that Citibank disputes all of Freidman's purported counterclaims.  Accordingly, no part of the counterclaims is to be considered by the Court in connection with Citibank's request for an order of attachment.

> "In determining whether the fourth requirement, that 'the amount demanded from the defendant exceeds all counterclaims known to the plaintiff is met, courts are to examine only the amount of the counterclaims that the plaintiff concedes are just," Bank Leumi, 892 F. Supp. at 482 (emphasis in original) (collecting cases), which in this case is none.

LaChapelle, supra, at 29, fn. 3.

> The requirement that the amount demanded by the plaintiff exceed all counterclaims known to the plaintiff applies only to those counterclaims "the validity of which the plaintiff is willing to concede." (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C6212:2; see also Freedman v. Wilson Sec. Corp., 31 AD2d 627, 628, 295 N.Y.S.2d 789 [1st Dept 1968] ["the burden imposed upon the plaintiffs is satisfied by a statement that the sum claimed from defendants is due over and above all counterclaims which plaintiffs are willing to concede as just") accord Mishcon De Reya New York LLP v. Grail Semiconductor, Inc., 2011 US Dist LEXIS 150998 at *38, 2011 WL 6957595 at *10 [SD NY]).

Genger v. Genger, supra, at 6.

As Citibank has consistently maintained that Friedman's purported counterclaims are meritless and invalid, and has conceded no part of them, the required fourth element necessary for an attachment order is satisfied.

## POINT II

### CITIBANK IS ENTITLED TO ATTACH FRAUDULENTLY TRANSFERRED PROPERTY OSTENSIBLY LODGED IN THE TRUSTS

In addition to assets in which Freidman has title, Citibank is entitled to attach assets he has fraudulently transferred. In a decision precisely on point, Bankruptcy Judge Bernstein ruled that a plaintiff may attach property ostensibly titled in the name of a non-party fraudulent transferee:

[I]t is well settled under New York law dating back more than 100 years that a plaintiff may attach fraudulently transferred property.  See Hess v. Hess, 117 N.Y. 306, 22 N.E. 9546, 956 (N.Y. 1889); Rinchey v. Stryker, 28 N.Y. 45, 54, 26 How. Pr. 75 (1863) Mandl v.Mandl, 187 Misc. 185, 61 N.Y.S.2d 364, 367 (N.Y. Sup. Ct. 1946).

The right is now codified in New York Debtor's and Creditor Law ("DCL") § 278, which states in pertinent part:

> 1.    Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. *Disregard the conveyance and attach or levy execution upon the property conveyed.*

DCL § 278(1) (emphasis added);[16] accord Glassman v. Glassman, 309 N.Y. 436, 131 N.E.2d 721, 724-25 (N.Y. 1956) (Fuld, J.) (title to fraudulently transferred property is only "ostensibly lodged" in the fraudulent transferee and the creditor is entitled to treat that property as belonging to the debtor-defendant).

Helicon Partners, supra, at 24.

With respect to claims not yet reduced to judgment, CPLR 6202 provides, in pertinent part:

> Any debt or property against which a money judgment
> may be enforced as provided in section 5201 is subject to
> attachment.

Finally, there is no requirement that a plaintiff assert claims against a

non-party garnishee prior to levying on the non-party's property:

> The relevant law does not, however, impose that
> requirement prior to levying on the non-party's property.
> To the contrary, the case law recognizes the plaintiff's
> right to levy on property held by a non-party garnishee
> pursuant to an order of attachment. *E.g., Allstate Ins.,*
> *2000 U.S. Dist. LEXIS 23142, 2000 WL 34011895, at*
> *\*16; Gala Enters., Inc. v. Hewlett Packard Co., 970 F.*
> *Supp. 212, 217 (S.D.N.Y. 1997); K/S Norman Agathe v.*
> *Sea Trade & Constr. Ltd970 F. Supp. 212, 61-62*
> *(S.D.N.Y. 1991); Am. Jerex Co., 340 F. Supp. at 532;*
> *[\*27] Great Lakes Carbon Corp., 387 N.Y.S.2d at 115;*
> *Mandl, 61 N.Y.S.2d at 367; Exchange Nat. Bank of Tulsa*
> *v. Washington, 30 N.Y.S.2d 43, 44-45 (N.Y. Sup. Ct.*
> *1941).* Furthermore, *CPLR § 6214(d)* recognizes that the
> plaintiff may attach the property or a debt in the
> possession of a non-party, and makes no exception for
> fraudulently transferred property or property held in the
> name of an alter ego.

Helicon, supra, at 26.

## POINT III

### THE COURT SHOULD GRANT AN
### *EX PARTE* TEMPORARY RESTRAINING ORDER

CPLR §6210 provides:

> Upon a motion on notice for an order of attachment, the
> court may, without notice to the defendant, grant a
> temporary restraining order prohibiting the transfer of

assets by a garnishee as provided in subdivision (b) of section 6214.[5]

A temporary restraining order ("TRO"), pending the hearing and determination of this motion, forbidding the transfer of assets in Freidman's possession, or those held on his behalf by garnishees, including the Trusts and the Trustees, is certainly warranted here and necessary to prevent further irreparable harm to Citibank. Although CPLR 6210 refers to only a "garnishee," the temporary restraining order it authorizes reaches defendants as well. Provisional Protective Comm. v. Williams, 121 A.D.2d 271, 273 (1st Dep't 1986) ("[T]he CPLR 6210 motion for an order of attachment authorizes ex parte temporary restraining orders aimed at defendants, as well as garnishees, who allegedly have control of the property at issue."); N.Y. Janitorial Serv., Inc. v. Easthampton Dewitt Corp., 100 Misc. 2d 814, 815 (Sup. Ct., Onondaga County 1979) (The provision "allows a plaintiff to obtain an ex parte restraining order to protect its interests until a hearing can be held and an attachment order granted."); Pahlavi v. Laidlaw Holdings, Inc., 180 A.D.2d 595 (1st Dep't 1992) (enforcing pre-attachment temporary restraining order).

The potential for irreparable injury to Citibank is manifest. Absent a TRO temporarily enjoining the further transfer of assets in which Freidman has an

---

[5]    CPLR §6214(b) provides that a garnishee who is served with an order of attachment and is in possession of property in which the defendant has an interest:

> is forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to order of the court.

interest, the Trustees will be free to place Trust's assets potentially out of Citibank's reach. Similarly, Freidman will be free to transfer other assets beyond the reach of creditors. A TRO will prevent them from continuing their wrongful conduct and protect Citibank from the irreparable harm that would otherwise result. Moreover, the TRO will merely maintain the status quo until the Court determines the motion for an attachment. Finally, Freidman's actions epitomize the type of wrongful conduct that this Court can, and should, set right. There can be no question that the Court should preserve its ability to do so by preventing further dissipation or transfers of the assets that should be available to satisfy Citibank's claim when it is reduced to judgment.

Accordingly, the Court should grant a TRO pursuant to CPLR 6210.

## POINT IV

### CITIBANK SHOULD BE PERMITTED
### TO CONDUCT EXPEDITED DISCOVERY

CPLR 6220 authorizes the Court, upon the granting of an order of attachment, to "order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant."

While Citibank has identified certain assets in New York that are subject to attachment, it is likely that Freidman possesses other valuable, undisclosed assets which would be revealed through prompt and appropriate discovery. Accordingly, Citibank should be permitted to conduct expedited discovery in aid of the attachment. Heller Financial, Inc. v. Wall Street Imports, Ltd., 140 Misc. 2d 205 (Sup. Ct. N.Y. Co.

1988) (granting depositions in aid of attachment under CPLR 6220 because "so long as the order is outstanding and unsatisfied, a plaintiff is entitled to learn of assets to enable a sheriff to seize sufficient property to comply with the order"); Etalon Imob SRL v. Schoenbach, No. 12 CV 6868 (BSJ), 2012 WL 4741595, at *5 (S.D.N.Y. 2012) (granting attachment and disclosure under CPLR 6220 because "[p]laintiffs have demonstrated the need to better assess Defendants' asset holdings and ability to satisfy a judgment").

As set forth in the Schwed Decl., several of the Assignments initially provided for Ethan Gerber ("Gerber") to be one of the Trustees. Gerber's name was replaced with Ms. Walker's name on those Assignments. Citibank seeks authorization, pursuant to CPLR 6220, to obtain expedited discovery from anyone with information regarding assets in which Freidman has an interest, including without limitation, Freidman, his wife, Sandra Freidman, Walker, Mermelstein, Abitbol and Gerber.[6]

## CONCLUSION

Citibank has established each of the elements necessary to obtain an order of attachment. The documentary evidence demonstrates that Freidman has transferred his assets for no consideration to recently formed trusts. The multiple "badges of fraud" surrounding the Transfers lead to the conclusion that Freidman made the Transfers with intent to defraud his creditors or frustrate the enforcement of a

---

[6] This request is made without prejudice to Plaintiffs' right to take additional depositions on the merits in the ordinary course.

judgment that might be rendered in favor of Citibank. Citibank is, therefore, entitled to an order of attachment. In addition, for the reasons set forth above, the Court should grant a TRO and authorize Citibank to conduct expedited discovery.

Dated:    New York, New York
          November 5, 2015

<div align="right">

ZEICHNER ELLMAN & KRAUSE LLP

By: _____

Nathan Schwed
Jantra Van Roy
Robert Guttmann
Attorneys for Citibank, N.A.
1211 Avenue of Americas
New York, New York 10036
(212) 223-0400

</div>