UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HYPNOTIC TAXI LLC, <u>et al.</u>,[1]. | Case No. 15-43300-cec<br>(Jointly Administered) |
| In re:<br><br>CITIBANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>BOMBSHELL TAXI LLC, *et al.*,<br><br>Defendants. | Civil Action No. 15-01185-(CEC) |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF PLAINTIFF CITIBANK, N.A. FOR: (I) AN ORDER OF ATTACHMENT OF FREIDMAN'S ASSETS PURSUANT TO CPLR §6201; AND (II) AN ORDER AUTHORIZING CITIBANK TO TAKE EXPEDITED DISCOVERY PURSUANT TO CPLR §6220**

**FOX ROTHSCHILD LLP**
Brett Berman, Esq.
Matthew Adams, Esq.
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7907
*Attorneys for Defendants*

---

[1]      The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Hypnotic Taxi LLC (6632)(Case No. 15-43300); (ii) Bombshell Taxi LLC (1282)(Case No. 15-43301); (iii) Bourbon Taxi LLC (7155)(Case No. 15-43302); (iv) Butterfly Taxi LLC (6992)(Case No. 15-43303); (v) Candy Apple Taxi LLC (0249)(Case No. 15-43304); (vi) Chianti Taxi, LLC (6799)(Case No. 15-43305); (vii) Chopard Taxi Inc. (0746)(Case No. 15-43306); (viii) Cupcake Taxi LLC (0324)(Case No. 15-43307); (ix) Dorit Transit Inc. (9129)(Case No. 15-43308); (x) France Taxi LLC, (9592)(Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039)(Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877)(Case No. 15-43311); (xiii) Marseille Taxi LLC (9890)(Case No. 15-43312); (xiv) Merlot Taxi LLC (7103)(Case No. 15-43313); (xv) Milkyway Cab Corp. (5061)(Case No 15-43314); (xvi) Palermo Taxi, Inc. (5956)(Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725)(Case No. 15-43316); (xviii) Pointer Taxi LLC, (2323)(Case No. 15-43317); (xix) Pudding Taxi Inc. (0432)(Case No. 15-43318); (xx) Stoli Taxi Inc. (4079)(Case No. 15-43319); (xxi) Vodka Taxi LLC (4239)(Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909)(Case No. 15-43321).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    The Underlying Litigation .................................................................. 3

    B.    The Bankruptcy Filings and Related Jurisdiction ................................ 4

    C.    Freidman's Estate Planning Activities in June 2015 ............................. 4

LEGAL ARGUMENT ........................................................................................ 7

POINT I
CITIBANK CANNOT ESTABLISH THAT IT IS ENTITLED TO AN ORDER OF
ATTACHMENT TO FREIDMAN'S ASSETS ............................................................ 7

    A.    Citibank Cannot Demonstrate That it is Likely to Succeed on the Merits of its
        Claims ................................................................................... 8

    B.    Citibank Cannot Demonstrate that Freidman Intended to Defraud his
        Creditors or Frustrate the Enforcement of a Judgment that Might be Rendered
        in Citibank's Favor ................................................................... 11

        i.    The Assignment of Freidman's Property Was Not Concealed ................ 13

        ii.    The Assignments Were Not Intended to Defraud Creditors or
            Frustrate the Enforcement of a Judgment ................................... 14

        iii.    The Assignments of Interests in Entities to the Trusts Relate to Estate
            Planning and Were Not Fraudulent Transfers ............................. 16

    C.    Citibank Fails to Demonstrate that the Amount Demanded by Citibank
        Exceeds the Damages Asserted in Freidman's Counterclaims ..................... 17

POINT II
CITIBANK IS NOT ENTITLED TO ATTACH TO PROPERTY OWNED BY THE
NON-PARTY TRUSTS ..................................................................................... 18

POINT III
CITIBANK'S MOTION SHOULD BE DENIED BECAUSE CITIBANK FAILS TO
IDENTIFY THE ASSETS TO WHICH IT SEEKS TO ATTACH ............................... 24

i

POINT IV
CITIBANK IS NOT ENTITLED TO EXPEDITED DISCOVERY ........................................... 25

CONCLUSION ....................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.K. Electric Corp. v. Coleman Cable & Wire Co.,*
    39 Misc. 2d 731 (Kings Cty. 1963).........................................................17

*In re Allou Distributors Inc.,*
    2012 WL 6012149 (Bankr. E.D.N.Y. Dec. 3, 2012) ...........................7

*Allstate Ins. Co. v. TMR Medibill Inc.,*
    2000 WL 34011895 (E.D.N.Y. July 13, 2000).........................19, 21, 22

*Am. Jerex Co. v. Universal Aluminum Extrusions, Inc.,*
    340 F.Supp. 524 (E.D.N.Y. 1972) ...............................................20, 21

*Bank of New York v. Nickel,*
    14 A.D.3d 140 (2004) ...................................................................18

*Blue Angel Films Ltd. v. First Look Studios, Inc.,*
    2012 WL 600595 (S.D.N.Y. 2012)...............................................24

*BRC Elec. Corp. v. Cripps,*
    413 N.Y.S.2d 182 (2d Dept 1979) ...............................................18

*Canterbury Realty & Equip. Cor. V. Poughkeepsie Sav. Bank,*
    135 A.D.2d 102 (3d Dept 1988) ...................................................10

*Capital Ventures Int'l v. Republic of Argentina,*
    443 F.3d 214 (2d Cir. 2006).............................................................8

*Concord Asset Management, Inc. v. Intercredit Corp.,*
    1994 WL 176975 (S.D.N.Y. May 5, 1994) ...................................10

*Cutietta v. Cilluffo,*
    127 N.Y.S. 297 (App. Term 1911) ...............................................17

*DLJ Mtge. Capital, Inc. v. Kontogiannis,*
    594 F.Supp.2d 308 (E.D.N.Y. 2009) ........................................7, 12

*Encore Credit Corp. v. LaMattina,*
    2006 WL 148909 (E.D.N.Y. Jan. 18, 2006) ............................12, 25

*Exchange Nat. Bank of Tulsa v. Washington*,
    30 N.Y.S.2d 43 (N.Y.Sup.Ct. 1941) ................................................................20, 21

*Gala Enters., Inc. v. Hewlett Packard Co.*,
    970 F.Supp. 212 (S.D.N.Y. 1997) ..................................................................19, 21

*Gartner v. Snyder*,
    607 F.2d 582 (2d Cir. 1979)........................................................................................23

*Great Lakes Carbon Corp. v. Fontana*,
    387 N.Y.S.2d 115 (N.Y.App.Div. 1976) ..............................................20, 21, 22

*Green Tree Servicing LLC v. Christoudoulakis*,
    2014 WL 5475514 (E.D.N.Y. Oct. 28, 2014)...................................................8

*Helicon Partners, LLC v. Kim's Provision Co.*,
    2013 WL 1881744 (Bankr. S.D.N.Y. May 6, 2013)................7, 19, 20, 21, 22

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*,
    306 F.Supp.2d 482 (S.D.N.Y. 2004).......................................................................8

*K/S Norman Agathe v. Sea Trade & Constr. Ltd.*,
    767 F.Supp. 60 (S.D.N.Y. 1991)..................................................................19, 21

*Koehler v. Bank of Bermuda Ltd.*,
    12 N.Y.3d 533 (2009) (*emphasis in original*).......................................................24

*Kornblum v. Kornblum*,
    828 N.Y.S.2d 404 (N.Y. App. Div. 2006) ..............................................................7

*Mandl v. Mandl*,
    61 N.Y.S.2d 364 (N.Y.Sup.Ct. 1946) ....................................................20, 21, 22

*McGinley v. Gildersleeve*,
    108 N.Y.S. 888 (1st Dept 1908) ..............................................................................18

*Morris v. N.Y. State Dep't of Taxation & Fin.*,
    82 N.Y.2d 135 (1993) ..................................................................................................23

*Musket Corp. v. PDVSA Petroleo, S.A.*,
    512 F.Supp. 2d 155 (S.D.N.Y. 2007)......................................................................8

*Nat'l Union Fire Ins. Co. v. Eagle Equip. Trust*,
    221 A.D.2d 212 (1st 1995) .........................................................................................23

*In re Our Distribution Co., Inc.*,
    110 B.R. 658 (Bankr. S.D.N.Y. 1990) ..................................................................12

*Penoyar v. Kelsy*,
   150 N.Y. 77 (1896) ............................................................................................7

*Petra Mortgage Capital Corp., LLC v. Amalgamated Bank*,
   2014 WL 2607087 (Sup. Ct. N.Y. Co. June 6, 2014) ...........................................10

*Sidwell & Co., Inc. v. Kamchatimpex*,
   632 N.Y.S.2d 455 (Sup. Ct. N.Y. Co. 1995) .......................................................18

*Silverman Partners, L.P. v. First Bank*,
   687 F.Supp. 2d 269 (E.D.N.Y. 2010) ...................................................................9

*VisionChina Media Inc. v. Shareholder Representative Services, LLC*,
   109 A.D.3d 49 (1st Dept 2013)............................................................................7

*In re Yerushalmi*,
   487 B.R. 98 (Bankr. E.D.N.Y. 2012)...................................................................23

STATUTES

Internal Revenue Code Section §671 *et seq.* ........................................................5, 16

New York's Debtor Creditor Law § 278(1)................................................................19

RULES

35 R.C.N.Y. §58-45(n) ............................................................................................15

35 R.C.N.Y. §58-47(c)(3)(i) .....................................................................................15

CPLR §6211(a) ......................................................................................................18

CPLR §6201..................................................................................1, 4, 7, 11, 12

CPLR §6212(a) ................................................................................................7, 17

CPLR §6220....................................................................................1, 4, 5, 25

CPLR §6223....................................................................................................8

OTHER AUTHORITIES

John K. Eason, *Home from the Islands: Domestic Asset Protection Trust
   Alternatives Impact Traditional Estate And Gift Tax Planning Considerations*,
   52 Fla. L. Rev. 41, 42 (2000)...............................................................................15

## PRELIMINARY STATEMENT

Defendant Evgeny Freidman ("Freidman") submits this memorandum of law in opposition to the application of Citibank, N.A. ("Citibank") for: (i) an order of attachment pursuant to CPLR §6201; and (ii) an order authorizing Citibank to take expedited discovery pursuant to CPLR §6220.

Citibank's application for an order of attachment is entirely misguided.  Contrary to the misleading statements contained in Citibank's moving brief and supporting papers used to secure *ex parte* temporary relief from this Court, Freidman did not transfer "$70 million of real estate assets" to trusts as part of a scheme to evade the highly contested alleged debts of his affiliated taxi medallion companies to Citibank.  Citibank has it wrong on the facts and the law.  It is now necessary to separate the actual facts of the situation before the Court from Citibank's fanciful work of fiction that resulted in the *ex parte* entry of temporary restraints by this Court.

The record is clear that Freidman assigned only his ownership/membership interests in certain entities to legally recognized grantor trusts for estate planning purposes, and that Freidman publically recorded each of those transactions with New York City and State authorities so that the world, including all of Mr. Freidman's creditors, would be on notice of the transactions.  That is a far cry from Citibank's attempt at spinning a distorted web of fraudulent and deceitful conveyances aimed at avoiding creditors.  There was nothing sinister, secretive, or even remotely nefarious about Freidman's conduct.  The reality of the situation is inconvenient for Citibank, but Citibank does not have a monopoly on the facts.  Simply stated, Freidman didn't do anything that others in his position have not done time and time again, and there are ample assets remaining after the estate planning transactions at issue to satisfy any judgment that ultimately might be entered against Freidman by Citibank or any other known creditor, for that

1

matter.  For Citibank to suggest otherwise is ludicrous, given that Citibank currently holds a secured position in other assets belonging to debtor entities that actually *exceeds* the purported value of the debt it claims to be owed.  Citibank *itself* has valued its secured position in various assets to satisfy the amount owed to it at a staggering $37 million.[2]

Tellingly, as part of the legally recognized grantor trusts that Freidman formed, he was required to first certify that he had sufficient remaining personal assets that were not being placed into the trusts to satisfy his known creditors.  In other words, Freidman had to certify that the creation of the grantor trusts would not render him insolvent and incapable of satisfying any future judgments that might be entered against him.  Ironically, that action by Freidman directly refutes and eviscerates the arguments being espoused by Citibank here to support its application for an order of pre-judgment attachment.  Those so-called "affidavits of solvency" are a threshold requirement for the type of grantor trusts that Freidman formed, and a fact conveniently overlooked by Citibank in its moving papers, among many others.

The reality is that Freidman could not have transferred "$70 million of real estate assets" into the trusts, as boldly stated by Citibank, *because, at no time relevant to this Court's instant inquiry, did Freidman ever own those real estate assets in his individual capacity*.  Instead, at all times relevant to this inquiry, he only held an interest in the entities that are the fee simple owners of the real estate in question.  Accordingly, Citibank's application for a writ of attachment seeks only to attach to Freidman's interests in various entities.  There is zero doubt that the fundamental premise underlying Citibank's application for a writ of attachment – that

---

[2] Defendants filed the Affidavit of Matthew W. Daus, Esq., dated June 29, 2015 with the Supreme Court of the State of New York, Appellate Division, First Judicial Department, which demonstrates that, contrary to Citibank's unsupported valuation, the value of the underlying taxicab medallions and vehicles is not $37 million, but rather, that each medallion is valued at $950,000 and, accordingly, the value of the medallions in which Plaintiff has a secured interest is $44,000,000.  (*See* Berman Dec. Ex G.)

Freidman has transferred valuable real estate assets out of the reach of his potential creditors – is demonstrably false. Citibank has, once again, overplayed its hand in its most recent attempt to obtain leverage in this litigation.

Not surprisingly, Citibank did not attach Freidman's financials to its moving papers to demonstrate Freidman's purported lack of assets either. Citibank is in possession of documents that conclusively demonstrate that Freidman has the financial capacity to satisfy any judgment that might be entered in Citibank's favor from assets separate and apart from the interests of Freidman that were placed into grantor trusts, but consciously chose not to disclose these important financial records to the Court. Although Freidman staunchly disputes the debts purportedly owed to Citibank, he has the personal wherewithal to satisfy the maximum judgment Citibank could ever achieve without regard to the fact that certain of his assets are in grantor trusts.

Citibank has been embroiled in litigation with Freidman and his affiliated entities (collectively, "Defendants") since March 2015. The transactions at issue have been a matter of public record since June 2015. Nothing about these facts requires emergent relief, or any relief for that matter, and Citibank's motion for a pre-judgment writ of attachment should therefore be denied in its entirety.

## STATEMENT OF FACTS

### A.    The Underlying Litigation

Citibank commenced its lawsuit against Freidman and his related entities in the Supreme Court of the State of New York in or about March 2015, via an order to show cause, seeking a prejudgment seizure of taxicab medallions and vehicles in which Citibank has a secured interest. (*See* Declaration of Brett A. Berman in Opposition to the Application of Citibank, N.A. for: (i)

3

An Order of Attachment of Freidman's Assets Pursuant to CPLR §6201; and (ii) an Order

Authorizing Citibank to Take Expedited Discovery from Freidman Pursuant to CPLR §6220

("Berman Dec.") at Exhibit ("Ex.") A, Citibank's Summons and Verified Complaint, dated

March 5, 2015).  Although Citibank attempted to classify this matter as a garden-variety breach

of loan agreement case, the affidavits and other documentary evidence in the record demonstrate

just the opposite.  (*See* Berman Dec. Exs. B through F).  These materials demonstrate that

Citibank has engaged in an intentional course of conduct orchestrated to cause severe damage to

Defendants and systematically dismantle the taxicab medallion industry.

     The relevant facts relating to the underlying action are set forth in the affidavits annexed

to the Berman Dec. and are available for the Court's review.

### B.       The Bankruptcy Filings and Related Jurisdiction

     On or about July 22, 2015, as this Court is aware, Freidman's affiliated entities that are

Defendants to the underlying action each filed a voluntary petition for relief in the United States

Bankruptcy Court pursuant to Chapter 11 of title 11 of the United States Code.  (*See* Berman

Dec. at Ex. H, Notice of Suggestion of Bankruptcy).  Accordingly, all pending lawsuits,

including the lawsuit filed by Citibank in the Supreme Court of the State of New York, were

stayed.  (*See id.*).  After being removed to the Southern District of New York, the case was

eventually transferred to this Court.

### C.       Freidman's Estate Planning Activities in June 2015

     In or about June 2015, in connection with his personal estate planning, Freidman created

four grantor trusts: (i) the Kelly Funding Trust; (ii) the Birkin Funding Trust; (iii) the Lindy

Funding Trust; and (iv) the Evelyn Funding Trust (collectively, the "Trusts").  (*See* Affidavit of

Evgeny Freidman (i) An Order of Attachment of Freidman's Assets Pursuant to CPLR §6201;

and (ii) an Order Authorizing Citibank to Take Expedited Discovery from Freidman Pursuant to CPLR §6220, dated November 10, 2015 ("Freidman Aff.") at ¶ 3). These grantor trusts are spendthrift trusts created pursuant to Internal Revenue Code Section §671 *et seq*., which authorize an independent trustee to make discretionary distributions to a class of beneficiaries. (*See* Freidman Aff. at ¶ 4).

In order to establish the Trusts, Freidman was required to provide the respective trust companies with an affidavit of solvency, demonstrating that Freidman retains assets that may satisfy any judgment that may be entered against him by his known creditors. (*See e.g.* Freidman Aff. at ¶ 6 and Ex. A). Indeed, an integral element of the affidavit of solvency is Freidman's statement of all pending lawsuits against him, demonstrating his potential liabilities. Citibank's claims against Freidman and his affiliated companies were included and disclosed on Freidman's affidavits of solvency. (*See e.g.* Freidman Aff. at ¶ 7 and Ex. A).

All of the assets and income from the Trusts are taxable to Freidman. (*See* Freidman Aff. at ¶ 5). When Freidman created the Trusts, he reached out to trusted attorneys and advisors, Ellen Walker, Everett Abitbol and Edward Mermelstein to serve as the trustees of the trusts. (*See* Freidman Aff. at ¶ 8). Neither Walker, Abitbol, nor Mermelstein receive any compensation for their role as trustee. (*See* Freidman Aff. at ¶ 9).

On or about June 15, 2015, Freidman assigned his ownership/membership interest in certain corporations and limited liability companies to the Trusts (the "Assignments"). (*See* Schwed Dec. at Ex. H; Freidman Aff. at ¶ 10). The only assets held by each corporation or limited liability company that was assigned to the Trusts are encumbered residential and commercial properties. (*See* Freidman Aff. at ¶ 11).

5

Freidman did not transfer any fee interest in real property or any other assets directly into the Trusts, other than his interests in certain entities, as set forth on the assignments of interest that were publicly filed. (*See* Freidman Aff. at ¶ 12). Freidman's ownership/membership interests in those real estate entities are not related to Freidman's ownership interest in the Defendants/Debtors in this matter nor do those interests relate to the operation of any business owned by Freidman related to the taxi industry. (*See* Freidman Aff. at ¶ 14). Instead, the interests assigned to the Trusts were Freidman's interests in property that he owned through interests in various companies. (*See id.*).

The assignments to the Trusts were transferred as gifts to the Trusts for estate planning purposes. (*See* Freidman Aff. at ¶ 15). Accordingly, all documents relating to the assignment of ownership/membership interests to the Trust are non-taxable events. (*See* Freidman Aff. at ¶ 16).

Although New York law does not require Freidman to record documents relating to the Assignments, Freidman filed documents demonstrating his assignment of interest in certain entities to the Trusts with the New York City Department of Finance and those documents are publicly available on ACRIS and have been for months. (*See* Freidman Aff. at ¶ 17). Additionally, documents relating to Freidman's updated personal financial statement were filed with the Supreme Court of the State of New York in connection with Freidman's pending divorce from his current wife, Sandra Freidman. (*See* Freidman Aff. at ¶ 19). Finally, Freidman provided his updated personal financial statement to many of his creditors, evidencing that he does not own the membership/ownership interests at issue herein. (*See* Freidman Aff. at ¶ 18 and Ex. B).

In conjunction with Freidman's filings of documents relating to the Assignments, Freidman was required to file Form TP-584 (Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certificate, and Certification of Exemption from the Payment of Estimated Personal Income Tax), with the New York State Department of Taxation and Finance, and Freidman was required to file a form with the New York City Department of Finance, which were thoroughly vetted by New York state and city authorities, confirming the tax-exempt status of the Assignments.  (*See* Freidman Aff. at ¶ 13).

## LEGAL ARGUMENT

### POINT I

### CITIBANK CANNOT ESTABLISH THAT IT IS ENTITLED TO AN ORDER OF ATTACHMENT TO FREIDMAN'S ASSETS

A plaintiff seeking an order of attachment must establish "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in CPLR §6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  CPLR §6212(a).  New York law is clear that attachment is a harsh remedy and courts have strictly construed the statute in favor of those against whom it is employed.  *Helicon Partners, LLC v. Kim's Provision Co.*, 2013 WL 1881744, at *4 (Bankr. S.D.N.Y. May 6, 2013) (citing *Kornblum v. Kornblum*, 828 N.Y.S.2d 404, 405 (N.Y. App. Div. 2006); *Penoyar v. Kelsy*, 150 N.Y. 77, 80 (1896); *VisionChina Media Inc. v. Shareholder Representative Services, LLC*, 109 A.D.3d 49 (1st Dept 2013); *DLJ Mtge. Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 319 (E.D.N.Y. 2009).  Accordingly, "even when the statutory requirements for an order of attachment are satisfied, 'the issuance of relief remains in the discretion of the Court.'"  *In re Allou Distributors Inc.*, 2012 WL 6012149, at *32

7

(Bankr. E.D.N.Y. Dec. 3, 2012) (*quoting JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 306 F.Supp.2d 482, 485 (S.D.N.Y. 2004)).

A party should not be permitted to secure an order for attachment, whether temporary or not, unless the party seeking the order of attachment can establish "the need for continuing the levy." *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006) (*quoting* CPLR §6223); *see also Capital Ventures Int'l* 443 F.3d at 222 (in determining an application for an order of attachment a court must continue, a court, among other things, must determine "whether the remedy is needed to secure payment or obtain jurisdiction").

Here, Citibank cannot meet any of the requirements necessary to obtain a pre-judgment attachment order.   In its *ex parte* application for a temporary restraining order, Citibank purposefully omitted important and probative documents and information in order to paint Freidman in a bad light while, at the same time, manufacturing the appearance that Citibank is an innocent lender in this action.   This Court should not be tricked by Citibank's omissions and word-play.   For the reasons set forth herein, Citibank's application for a pre-judgment order of attachment should be denied and the temporary restraining order be vacated immediately.

### A.    Citibank Cannot Demonstrate That it is Likely to Succeed on the Merits of its Claims

Citibank is not entitled to a pre-judgment order of attachment because it cannot demonstrate that it is likely to succeed on the merits of its claims.   "Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F.Supp. 2d 155, 160 (S.D.N.Y. 2007). *See also Green Tree Servicing LLC v. Christoudoulakis*, 2014 WL

5475514 (E.D.N.Y. Oct. 28, 2014); *Silverman Partners, L.P. v. First Bank*, 687 F.Supp. 2d 269, 293 (E.D.N.Y. 2010).

Contrary to Citibank's arguments here, Freidman contends that the documentary evidence submitted to the New York Supreme Court demonstrates that the damages and alleged defaults set forth in Citibank's complaint are a direct result of Citibank's bad-faith conduct. New York law is clear that Citibank cannot profit from its misdeeds and, as a result, Freidman respectfully submits that Citibank will not succeed on ***any*** of its claims against Freidman or his affiliated entities.

Record evidence now before the Court that was curiously omitted from Citibank's moving papers demonstrates that Freidman's arguments are real and compelling. (*See* Berman Dec., Exs. B – F). Freidman and his affiliated companies entered into a banking relationship with Citibank as a result of Citibank's explicit promise to provide Defendants with a cash management solution to combat recurring banking problems in the taxicab operation industry. At the time Citibank and Defendants entered into the banking relationship, the price of taxicab medallions were at an all-time high and taxicab medallions were an attractive investment for a large banking institution like Citibank. However, as app-based companies like Uber Technologies, Inc. entered into the transportation marketplace, Citibank allowed the illogical and unsound speculation that app-based companies could pose an existential threat to the taxicab medallion industry, as well as the desire to do business with these new companies, to sour Citibank's thinking on the business relationship that it had forged with Defendants. As a result, Citibank unilaterally changed the way it did business with Defendants and had full knowledge that the change in the business relationship deprived Defendants of the very benefits that enticed Defendants to enter into a relationship with Citibank. In essence, Citibank manufactured the

9

purported default that it is attempting to use to obtain an order of attachment to Freidman's assets by its own conduct.

As a result of Citibank's improper unilateral changes to the parties' agreed-upon business operations, Defendants were charged hundreds of thousands of dollars in bank fees by Citibank. Additionally, as a result of Citibank's unilateral changes, Defendants were unable to enter into significant business opportunities and were effectively precluded from operating their businesses in a manner consistent with the parties' agreement. Stated differently, Citibank made it impossible for Defendants' businesses to function. When Citibank's actions halted Defendants' business operations, Citibank improperly seized an opportunity to accelerate alleged outstanding debt owed by Defendants to Citibank, demonstrating Citibank's desire to put Defendants out of business and prevent Defendants' ability to recover damages from Citibank. Citibank's conduct demonstrates the utmost degree of bad faith and, for those reasons, Citibank cannot show that it is likely to succeed on the merits of its claims.

Citibank further cannot demonstrate that it is likely to succeed on the merits of its claims because the alleged delay of any payment by Defendants was *directly* caused by Citibank. It is well established under New York law that "[i]f, within the time allowed for performance the plaintiff made performance . . . impossible, it is unimaginable that any civilized system of law would allow it to recover . . . for a failure to perform." *Canterbury Realty & Equip. Cor. V. Poughkeepsie Sav. Bank*, 135 A.D.2d 102, 107-108 (3d Dept 1988); *see also Petra Mortgage Capital Corp., LLC v. Amalgamated Bank*, 2014 WL 2607087 (Sup. Ct. N.Y. Co. June 6, 2014); *Concord Asset Management, Inc. v. Intercredit Corp.*, 1994 WL 176975 (S.D.N.Y. May 5, 1994).

In this matter, as a result of Citibank's actions, evidence of which Freidman contends is now before the Court, it became impossible for Defendants to perform pursuant to the terms of the loan documents. But even if Citibank somehow demonstrates that they have performed all of their duties in good faith, Citibank cannot overcome evidence that supports Defendants' remaining counterclaims for: (i) fraudulent inducement; (ii) fraud; (iii) negligence; (iv) tortious interference; (v) negligent misrepresentation; (vi) breach of fiduciary duty; (vii) unjust enrichment; (viii) breach of contract; and (ix) recoupment. Stated simply, Citibank cannot demonstrate that any alleged delay of payment or purported default was Defendants' fault and, accordingly, Citibank cannot meet the high burden of demonstrating that it is likely to succeed on the merits of its claims.

### B. Citibank Cannot Demonstrate that Freidman Intended to Defraud his Creditors or Frustrate the Enforcement of a Judgment that Might be Rendered in Citibank's Favor

Citibank has woefully failed to meet the standard required to demonstrate it is entitled to a pre-judgment attachment under New York law.[3] Not only has Citibank attempted to mislead the Court by stating, without any factual support, that Freidman intended to defraud creditors or frustrate the enforcement of a remotely possible judgment, Citibank also misleads this Court concerning Freidman's remaining assets by disingenuously claiming that it is not adequately

---

[3] As set forth above, in order to obtain a pre-judgment attachment under New York law, Plaintiff is required to demonstrate that one or more grounds exist for attachment under CPLR §6201. The only provision of CPLR §6201 that Plaintiff addresses in its moving papers is CPLR §6201(3), which states that an order of attachment may be granted where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." *See* CPLR §6201(3). While Freidman has not taken any actions to defraud creditors or frustrate the enforcement of a potential judgment against him, Plaintiff's moving papers demonstrate that the facts of this case do not lend support to any of the remaining provisions of CPLR §6201. Accordingly, CPLR §6201(3) will be the only provision addressed herein. Freidman reserves the right to set forth any arguments relating to the remaining provisions of CPLR §6201 at a later date, as may be necessary or appropriate.

11

protected. Indeed, by Citibank's own acknowledgment, the very collateral for the loans at issue in this case, upon which Citibank has valid and enforceable security interests, adequately provides Citibank with assets sufficient to satisfy any judgment that would be entered against Freidman. (*See* Berman Dec. at Ex. I, Affidavit of Charles Nigro, dated March 5, 2015 ("Nigro Aff.") at ¶72) (estimating the aggregate value of the assets in which Citibank has an enforceable security interest at $37 million).

To secure an order of attachment pursuant to CPLR §6201(3), the Citibank has the burden of establishing: (i) the defendant secreted or disposed of property and, (ii) he did so with the intent to defraud creditors or frustrate the enforcement of a judgment. *See In re Our Distribution Co., Inc.*, 110 B.R. 658, 662 (Bankr. S.D.N.Y. 1990) (citing CPLR § 6201(3)). "Removal, assignment, or other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009) (*quoting Encore Credit Corp. v. LaMattina*, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006)). In connection with an application for an attachment of property, "[f]raud is not lightly inferred." *DLJ Mortgage Capital, Inc.,* 594 F. Supp. 2d at 319 (*citations omitted*). Accordingly, Citibank must present evidentiary facts, not unsubstantiated conclusions devoid of critical background information, to prove fraud. *Id.* When all the facts are examined, as they must under the applicable standard, it is clear that there was no intend to defraud by Freidman merely making use of an estate planning mechanism on notice to Citibank and the rest of the world.

### i.     The Assignment of Freidman's Property Was Not Concealed

Citibank asserts, without any factual support for its contention whatsoever, that Freidman concealed the transfer of his ownership interest in certain entities from Citibank. However, that assertion is demonstrably false. In fact: (i) documents relating to the assignment of Freidman's ownership interest in certain entities were filed with numerous public authorities (including New York State and New York City) and all documents relating to the assignments are publicly available on the ACRIS system; (ii) documents relating to Freidman's updated personal financial statements were filed with the Supreme Court of the State of New York in connection with Freidman's pending divorce from his current wife, Sandra Freidman; and (iii) updated personal financial statements evidencing the transfers were provided directly to many of Freidman's creditors. (*See* Freidman Aff. at ¶ 17 - 19). Indeed, the very documents submitted by Citibank in support of its contention that Freidman "concealed" these assignments were taken directly from ACRIS, where the documents have been available for public review since June 2015. Therefore Citibank's own proofs demonstrate the ridiculousness of Citibank's argument that Freidman attempted to conceal the transfer of his ownership interests.

Although it was not required of Freidman, he *still* filed documents relating to the Assignments with the appropriate New York State and New York City authorities and made the documents demonstrating his assignment of ownership/membership interests publicly available. (*See* Freidman Aff. at ¶17). This is fatal to Citibank's position here. No attempt to spin Freidman's conduct can change the simple fact that Freidman's transfers have been on public record for months for the world to see. (*See* Schwed Dec. at Ex. H; Freidman Aff. at ¶17).

### ii.    The Assignments Were Not Intended to Defraud Creditors or Frustrate the Enforcement of a Judgment

On or about June 15, 2015, Freidman assigned his ownership/membership interest in certain entities to the Trusts. (*See* Freidman Aff. at ¶ 10). The only assets held by each corporation or limited liability company that was assigned to the Trusts are encumbered residential and commercial properties. (*See* Freidman Aff. at ¶ 11).

Based solely upon improper inferences, Citibank jumps to the conclusion that the Assignments were carried out to defraud creditors or frustrate the enforcement of a judgment. Citibank's conclusion is not only without merit, it is simply illogical. If Citibank were to obtain a judgment against Freidman, notwithstanding the volume of evidence demonstrating Citibank's bad-faith conduct in this matter, Citibank would then need to try to levy upon Freidman's ownership/membership interests in the entities whose interests were assigned to the Trusts. In the event that Citibank obtained majority ownership/membership in those entities by executing upon Freidman's assets, Citibank would need to navigate those entities to obtain authority to liquidate the assets. Only then would Citibank be allowed to try to sell the real property owned by that entity and incur costs relating thereto, because Freidman, individually, does not own those properties. Because most of the properties are encumbered with senior mortgages, judgments, liens, warrants, and the like, upon the sale of such assets, Citibank would first be required to ensure that senior creditors – including secure creditors -- of those properties are paid before it would potentially entitled to receive any money from the sale. However, once the senior creditors of those properties are paid, there would be little, if any, money left to satisfy a potential judgment. In sum, the assets assigned to the Trust have almost ***no value*** to a potential

creditor like Citibank at all. Thus, there is no reason for Freidman to have undertaken a transfer to evade creditors in the manner described by Citibank.

But even if the Court ignores the foregoing and finds that the assignment of Freidman's ownership/membership interests in entities was a valuable transfer, Citibank *still* cannot overcome the fact that Freidman has sufficient assets—separate and apart from the interests transferred to trust -- to satisfy a potential judgment. (*See* Freidman Aff., Ex. B, Freidman Personal Financial Statement as of June 30, 2015).[4]

Moreover, Citibank fails to inform the Court that, notwithstanding the significant personal assets of Freidman available to a speculated judgment against him, Citibank also has a secured interest in several taxicab medallions and vehicles owned by the Defendants in this action that **Citibank itself** has valued at $37 million. (*See* Berman Dec, Ex. I, Affidavit of Charles Nigro, dated March 5, 2015 at ¶ 72). The secured interests in taxicab medallions are encumbered with perfected UCC liens *by* Citibank, rendering the transfer of the taxicab medallions and vehicles impossible. Further, pursuant to New York City Taxi and Limousine Commission regulations, the Defendants are barred from transferring or selling the taxicab medallions, absent Citibank first being informed of any potential sale or transfer. *See* 35 R.C.N.Y. §58-45(n); 35 R.C.N.Y. §58-47(c)(3)(i). Consequently, any sale or transfer would require that Citibank's liens be paid in full. *Id.*

---

[4] Of note, Freidman's Personal Financial Statement, dated June 30, 2015, is a snapshot of Freidman's assets *after* he assigned his interests/memberships in entities to the Trusts.

### iii.    The Assignments of Interests in Entities to the Trusts Relate to Estate Planning and Were Not Fraudulent Transfers

The grantor trusts created by Freidman are trusts established by a U.S. citizen and designed to lawfully remove assets from the settlor's balance sheet without creating any adverse federal tax consequences.  *See e.g.* John K. Eason*, Home from the Islands: Domestic Asset Protection Trust Alternatives Impact Traditional Estate And Gift Tax Planning Considerations,* 52 Fla. L. Rev. 41, 42 (2000).  The creation of such trusts is a widely accepted, legal practice that is specifically sanctioned by the Internal Revenue Code.  *See e.g.* IRC §671 *et seq.*  All of the assets and all of the income from the Trusts are taxable to Freidman.  (*See* Freidman Aff. at ¶ 5).

Contrary to Citibank's assertion, the assignments at issue in this motion were not the transfer of "virtually all of the real estate owned by Freidman."  Freidman assigned only his ownership interests in certain legal entities to the Trusts, and not any fee simple interests in real property.  (*See* Freidman Aff. at ¶ 11 - 12).  Freidman could not transfer the real estate referenced in the documents annexed to the Schwed Declaration as Exhibit H because Freidman does not, and has never, owned those real estate properties in his individual capacity.

Further, Citibank's contention that the "timing of the [Assignments] is powerful evidence of Freidman's intent to hinder, delay and defraud creditors" is misleading and without merit. Knowing that its argument is deficient, Citibank seeks to buttress its position by asserting, without any support for its contention, that: (i) Freidman's entities were in default on loans guaranteed by Freidman; (ii) Freidman "anticipated" that other loans would be going into default; and (iii) Freidman's other lenders were "pressuring" Freidman.  However, Citibank cannot overcome the undisputed fact that when the assignments were effected, Freidman disclosed each and every lawsuit and/or administrative proceeding to which he was a defendant

16

to the trust company in order to establish the trust.  (*See* Freidman Aff., Ex. A, Schedule A). Although Freidman eventually came to learn that Capital One Taxi Medallion Finance ("Capital One") had filed a confession of judgment with the New York Supreme Court two months prior to the transactions at issue here, Freidman was not aware that the confession of judgment was filed because it was filed with the court by Capital One *ex parte*.  Thus, there were no known judgments entered or anticipated against Freidman when the Assignments were effected and therefore, the Assignments were not made to avoid actual or potential creditors.

### C.    Citibank Fails to Demonstrate that the Amount Demanded by Citibank Exceeds the Damages Asserted in Freidman's Counterclaims

On a motion for an order of attachment, the moving party must present an affidavit or other written evidence that demonstrates that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.  *See* CPLR §6212(a).  The purpose of this procedural prerequisite is to require the plaintiff to show that it is entitled to recover a sum stated above all counterclaims known to him and to make it appear that plaintiff has, so far as he knows, a valid claim to the extent for which he seeks an attachment.  *See Cutietta v. Cilluffo*, 127 N.Y.S. 297 (App. Term 1911).  Computing whether the amount demanded by the plaintiff exceeds the damages asserted by the counterclaims, the plaintiff can disregard a known counterclaim if the plaintiff submits an affidavit demonstrating that is justified in thinking that the counterclaim is not valid.  *A.K. Electric Corp. v. Coleman Cable & Wire Co.*, 39 Misc. 2d 731 (Kings Cty. 1963).  There was no such affidavit filed here, and Citibank's failure is procedurally fatal to its instant application.

Citibank asserts, with no support for its contention as the law requires, that Defendants' counterclaims are not valid.  (*See* Citibank's Moving Br. at 12 – 13).  This runs afoul of the

requirements of CPLR §6212(a).    If the Court were to accept Citibank's unsubstantiated assertion, then the requirement that the amount demanded from the defendant exceeds all counterclaims known to the Citibank is effectively non-existent.    Any party seeking an order of attachment would simply be able to state that a counterclaim is "not valid" in support of their application, without any factual support that rebuts Defendants' counterclaims as the rule requires, rendering the rule meaningless.    The Court cannot accept this interpretation of the requirements for an order of attachment under the requirements imposed upon the proponent of the order of attachment pursuant to the CPLR.

Because Citibank has failed to demonstrate that the amount demanded by Citibank exceeds the damages asserted in Freidman's counterclaims, Citibank's application for an attachment must fail, as a matter of law.    *See e.g. BRC Elec. Corp. v. Cripps*, 413 N.Y.S.2d 182 (2d Dept 1979); *McGinley v. Gildersleeve*, 108 N.Y.S. 888 (1st Dept 1908).

## POINT II

### CITIBANK IS NOT ENTITLED TO ATTACH TO PROPERTY OWNED BY THE NON-PARTY TRUSTS

Citibank incorrectly asserts that it is entitled to attach the ownership interests that Freidman transferred to the Trusts.    (*See* Citibank's Moving Br. at 13-15).    As set forth above, Citibank has not met its burden to demonstrate that it is entitled to levy upon Freidman's property, let alone upon the property of the Trusts, which are not parties to this action.

It is well established that a plaintiff can only attach or levy upon property in which the defendant has an interest.    *See* CPLR 6211(a) (providing that an order of attachment "shall direct the sheriff to levy . . . upon such property in which the defendant has an interest"); *see also Bank of New York v. Nickel*, 14 A.D.3d 140, 145 (2004) ("[A]ttachment will only lie against the property of the debtor, and that the right to attach the property 'is only the same as the

18

defendant's own interest in it.'") (*quoting Sidwell & Co., Inc. v. Kamchatimpex*, 632 N.Y.S.2d 455, 459 (Sup. Ct. N.Y. Co. 1995)). Here, Freidman legally assigned his ownership/membership interests in certain entities to the Trusts. (*See* Freidman Aff. at ¶ 11). Freidman no longer retains an interest in the assigned ownership/membership interests. The ownership/membership interests are now the property of the Trusts. As such, Citibank is not entitled to attach the Trusts' property.

Citibank wrongly asserts that because the transfers of the ownership interests were fraudulent, it may therefore disregard the transfers and attach the ownership/membership interests held by the Trusts. (*See* Citibank's Moving Br. at p. 14) (*citing Helicon Partners, LLC v. Kim's Provision Co.*, 2013 WL 1881744, at *7 (Bankr. S.D.N.Y. May 6, 2013) (*examining* New York's Debtor Creditor Law ("DCL") § 278(1)). As discussed herein at Point I(B), *supra*, Citibank has failed to establish that the transfers were fraudulent. Accordingly, Citibank cannot rely on DCL § 278(1)(b) as basis for attachment of the ownership interests held by the Trusts.

Citing only to *Helicon Partners, LLC v. Kim's Provisions Co., Inc*., 2013 WL 1881744 (Bankr. S.D.N.Y. May 6, 2013) Citibank incorrectly asserts that it is not required to assert claims against the Trusts prior to levying on their property. (*See* Citibank's Moving Br. at p. 15) (*citing Helicon,* 2013 WL 1881744, at *8). Citibank's reliance on *Helicon* is misplaced.

In *Helicon*, the plaintiff petitioned and received a levy on the bank account of a non-party corporation. The non-party moved to challenge the order of attachment. The bankruptcy court found, *inter alia*, that the defendants in the underlying action not only owned the non-party, but were actively using the non-party's bank account to conduct their businesses. *See Helicon*, 2013 WL 1881744 at * 2. Analogues to the facts of *Helicon* do not exist under these facts.

In support of its finding, the bankruptcy court found that "the case law[5] recognizes the plaintiff's right to levy on property held by a non-party garnishee pursuant to an order of attachment." *Id.* at *8. However, each of the cases cited by the bankruptcy court in *Helicon* are distinguishable for the issues in this matter and, accordingly, the bankruptcy court's holding in *Helicon* cannot be applied to the facts at issue in this case.

Here, Citibank seeks to restrain the non-party Trusts without providing those entities with the legally required due process to which they are entitled before their assets are subject to attachment. *Exch. Nat. Bank of Tulsa* and *Am. Jerex Co.*, cited by the bankruptcy court in *Helicon*, both demonstrate that non-parties—such as the Trusts here— must be a party to the action in which their property has been attached. In *Exch. Nat. Bank of Tulsa*, a non-party claiming property seized under a warrant of attachment as property of the defendant to the underlying action moved for an order directing the sheriff to release the property unless the plaintiff provided the sheriff indemnity against the third person's claim. 30 N.Y.S.2d at 43-44. The court found that there was reason to believe that the non-party was entitled to the property and required the non-party to subject itself to the jurisdiction of the court in order to establish its ownership of the attached property at a hearing. *Id.* at 45. Similarly, in *Am. Jerex Co.*, the plaintiff secured an order of attachment on defendant's accounts receivable. *Am. Jerex Co.*, 340 F. Supp. at 526-27. A non-party bank petitioned to intervene in the action for the purpose of

---

[5] The following cases were cited by the bankruptcy court in *Helicon* to support the court's conclusion that a plaintiff can levy upon property held by a non-garnishee pursuant to an order of attachment: *Allstate Ins. Co. v. TMR Medibill Inc.*, 2000 WL 34011895, at * 16 (E.D.N.Y. July 13, 2000); *Gala Enters., Inc. v. Hewlett Packard Co.*, 970 F.Supp. 212, 217 (S.D.N.Y. 1997); *K/S Norman Agathe v. Sea Trade & Constr. Ltd.*, 767 F.Supp. 60, 61–62 (S.D.N.Y. 1991); *Am. Jerex Co. v. Universal Aluminum Extrusions, Inc.*, 340 F.Supp. 524, 532 (E.D.N.Y. 1972); *Great Lakes Carbon Corp. v. Fontana*, 387 N.Y.S.2d 115, 115 (N.Y.App.Div. 1976); *Mandl v. Mandl*, 61 N.Y.S.2d 364, 367 (N.Y.Sup.Ct. 1946); and *Exchange Nat. Bank of Tulsa v. Washington*, 30 N.Y.S.2d 43, 44–45 (N.Y.Sup.Ct. 1941)).

vacating the attachment order, claiming that it was the assignee of the accounts receivable and that its interest would be impaired unless permitted to intervene. *Id.* at 527. The district court granted the non-party's motion to intervene in order to allow it to protect its interests and demonstrate it was the proper owned of the attached property. *Id.* at 532. Thus, in both *Exch. Nat. Bank of Tulsa* and *Am. Jerex Co.* the non-party garnishee was a required to appear in the action and was therefore subject to the Court's jurisdiction.

Likewise, in both *K/S Norman Agathe* and *Gala Enters., Inc.*, also cited by the bankruptcy court in *Helicon*, the courts determined that attachment upon a non-party was appropriate only under circumstances where there was no due process concern. In *K/S Norman Agathe,* a non-party bank was served an order of attachment directing it to hold certain funds in an account belonging to the defendant. *K/S Norman Agathe,* 767 F.Supp. 60, 61–62. *Id.* at 62. Similarly, in *Gala Enters., Inc.*, the district court upheld an order of attachment on money held in escrow by an attorney because the defendant still retained an interest in the money. *Gala Enters., Inc.*, 970 F.Supp. at 220-221 (reasoning that "[i]f the firm's services were terminated, [the defendant] would have had an absolute right to the money back, less any amounts due for expenses already incurred."). In both cases, at all relevant times, the attached funds belonged to the defendants and not the non-party. However, here, Citibank seeks to levy upon the non-party Trusts' property without the trusts actually having been joined in the action.

In *Allstate Ins. Co.*, *Great Lakes Carbon Corp.*, and *Mandl*, all cited by the bankruptcy court in *Helicon*, the courts granted an order of attachment where no due process concerns existed. In *Allstate Ins. Co.*, the district court found that defendants had fraudulently transferred certain property and established that the plaintiffs were entitled to attachment of the property owned directly by defendants. *Allstate Ins. Co.*, 2000 WL 34011895 at *16. The district court

then evaluated whether it was proper to attach the property held by certain non-party realty companies.   The district court found, among other things, that the "plaintiffs can attach the real estate owned by these companies because [the] plaintiffs have made a showing sufficient to disregard the corporate form." *Id.*

In *Great Lakes Carbon Corp.*, the plaintiff brought claims against a husband and wife and sought an order of attachment on their bank account. *Great Lakes Carbon Corp.*, 54 A.D.2d at 548. The court dismissed the claims against the wife, who then sought to vacate the order of attachment. *Id.* The court upheld the order of attachment because the plaintiff demonstrated that "the wife and the bank account were used as tools of the husband and that the account, subject of the attachment and, we are told, being steadily depleted, is actually his and should be held in attachment, and we agree." *Id.* at 548-49. Despite all of Citibank's bald rhetoric, it has not established any such facts here.

In *Mandl,* the plaintiff secured an order of attachment to levy upon certain stocks and bonds held by a foreign corporation that was not a party to the action.   61 N.Y.S.2d at 366-67. The court upheld the order of attachment because the defendant did not refute or rebut the plaintiff's presentation of "substantial evidence in support of her claim that the attached securities, although held in the name of the Argentina [*sic*] corporation, are nevertheless owned by the defendant." *Id.* at 367.

The defendants in *Allstate Ins. Co., Great Lakes Carbon Corp.*, and *Mandl*, like the defendants in *Helicon*, were found to be the alter egos of the non-parties, and therefore had a continued interest in the property sought to be attached.

Citibank does little by way of supporting an alter ego argument here than to engage in rank speculation. Indeed, the very documents submitted in support of Citibank's motion

22

demonstrate that Freidman was not even the sole owner of many of the entities assigned to the trusts.  (*See e.g.* Schwed Dec., Ex. H, assignments of interest for (i) Graphite Realty, LLC; (ii) 43-05 Vernon Boulevard, LLC; and (iii) 43-01 Vernon Boulevard, LLC).  In sum, Citibank fails to demonstrate that the Trusts are the alter ego of Freidman.  Citibank asserts that the Trusts are "controlled by Freidman's attorney and close associates," and "[w]hether or not Freidman is the stated beneficiary of the Trusts, it is obvious that Freidman has not relinquished ultimate control over these assets."  (*See* Citibank's Moving Br. at p. 9, ¶ 4; *see also* Schwed Dec. at ¶ 13).  These conclusory allegations are not sufficient to demonstrate that the Trusts act as Freidman's alter ego under established law.

In order to demonstrate that one entity is the alter ego of another, as necessary to impute attachment to a non-party, New York law requires Citibank to show that: "(1) the owner exercised complete domination of the corporation with respect to the transaction at issue; and (2) the owner used this domination to commit a fraud or wrong against the plaintiff which resulted in injury to the plaintiff."  *In re Yerushalmi*, 487 B.R. 98, 109-10 (Bankr. E.D.N.Y. 2012) (applying corporate veil piercing to estate planning trusts) (*quoting Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135 (1993)); *see also Nat'l Union Fire Ins. Co. v. Eagle Equip. Trust*, 221 A.D.2d 212 (1st 1995) ("There is no authority for applying, by analogy, a theory of 'piercing the corporate veil' to disregard the form of a trust, when the trust was not formed for an illegal purpose and there is the requisite separation between beneficiary and trustee."); *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) ("Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate

identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.").

Citibank has not presented any evidence, aside from conclusory allegations, that Freidman dominates and controls the Trusts.  It is Citibank's burden to do so.  *See In re Yerushalmi*, 487 B.R. 98, 109-10 (Bankr. E.D.N.Y. 2012).  Moreover, as discussed herein, Citibank has not demonstrated that the assignments to trust at issue were fraudulent, or that they were anything other than the estate planning device acknowledged by Freidman in the extensive public filings he has made acknowledging that the transfers were made.  Accordingly, the veil piercing standard under New York law has not been met under the facts that Citibank alleges.

## POINT III

### CITIBANK'S MOTION SHOULD BE DENIED BECAUSE CITIBANK FAILS TO IDENTIFY THE ASSETS TO WHICH IT SEEKS TO ATTACH

Attachment is an *in rem* remedy.  Under New York law:

> An article 62 attachment proceeding operates only against property, not any person.  By means of attachment, a creditor effects the prejudgment seizure of a debtor's property, to be held by the sheriff, so as to apply the property to the creditor's judgment if the creditor should prevail in court.  Attachment simply keeps the debtor away from his property or, at least, the free use thereof; it does not transfer the property to the creditor.

*Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 538 (2009) (*emphasis in original*).  In *Blue Angel Films Ltd. v. First Look Studios, Inc.*, 2012 WL 600595 (S.D.N.Y. 2012), the district court denied the plaintiff's application for an attachment where the plaintiff "failed to identify with specificity any asset owned by Defendants which would properly be the object of an order of attachment."  *Blue Angel Films Ltd.*, 2012 WL 200595 at *2.  The District Court further noted

that since "attachment is an *in rem* remedy, the failure to identify an asset which may be attached is fatal to Plaintiff's request for an order of attachment." *Id.*

Similarly, here, Citibank has failed to identify the specific asset presently owned by Freidman, either in New York or elsewhere that would appropriately be subject to an attachment. Accordingly, Citibank's broad-based request for an order of attachment to "Freidman's assets" must be denied as a matter of law.

## POINT IV

### CITIBANK IS NOT ENTITLED TO EXPEDITED DISCOVERY

CPLR §6220 permits an order for expedited discovery only where it has obtained an order for an attachment. For the reasons set forth above, Citibank is not entitled to an order of attachment to any aspects of the grantor trusts at issue. Accordingly, Citibank is not entitled to an order for expedited discovery relating to Freidman's assets pursuant to CPLR §6220. *See Encore Credit Corp. v. LaMattina*, 2006 WL 148909 at n. 2 (E.D.N.Y. Jan. 18, 2006) ("Because I have denied plaintiff's motion for an order of attachment, [the motion for expedited discovery pursuant to CPLR §6220] is also denied.").

## **CONCLUSION**

For the foregoing reasons, Freidman respectfully requests that this Court deny Citibank's application for an order of attachment and order authorizing Citibank to take expedited discovery in its entirety and vacate the temporary *ex parte* restraints that have been previously entered by this Court.

Dated: New York, New York
      November 10, 2015

Respectfully submitted,

**FOX ROTHSCHILD LLP**
By:   /s/ Brett A. Berman
      Brett Berman, Esq.
      Matthew S. Adams, Esq.
      100 Park Avenue, Suite 1500
      New York, New York 10017
      (212) 878-7900
      *Attorneys for Defendants*