WHITE AND WILLIAMS LLP
Robert Ansehl, Esq.
Sedgwick M. Jeanite, Esq.
250 W. 34th Street, Suite 4110
New York, NY 10119
Telephone: (212) 244-9500
ansehlr@whiteandwilliams.com
jeanites@whiteandwilliams.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HYPNOTIC TAXI, LLC, *et al.*, | : | Case No. 15-43300 (CEC) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

-----------------------------------------------------------x
| | | |
|---|---|---|
| CITIBANK, N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | Adv. Pro. No. 15-01185 (CEC) |
| | : | |
| BOMBSHELL TAXI, *et al.*, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------x

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AUTHORIZATION TO INTERVENE PURSUANT TO
<u>11 U.S.C. § 1109(b), FED. R. CIV. P. 24, AND FED. R. BANKR. P. 7023</u>**

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are: (i) Hypnotic Taxi LLC (6632) (Case No. 15-43300); (ii) Bombshell Taxi LLC (1282) (Case No. 15-43301); (iii) Bourbon Taxi LLC (7155) (Case No. 15-43302); (iv) Butterfly Taxi LLC (6992) (Case No. 15-43303); (v) Candy Apple Taxi LLC (0249) (Case No. 15-43304); (vi) Chianti Taxi, LLC (6799) (Case No. 15-43305); (vii) Chopard Taxi Inc. (0746) (Case No. 15-43306); (viii) Cupcake Taxi LLC (0324) (Case No. 15-43307); (ix) Dorit Transit Inc. (9129) (Case No. 15-43308); (x) France Taxi LLC, (9592) (Case No. 15-43309); (xi) Hennessey Taxi Inc. (4039) (Case No. 15-43310); (xii) Iceberg Taxi Inc. (5877) (Case No. 15-43311); (xiii) Marseille Taxi LLC (9890) (Case No. 15-43312); (xiv) Merlot Taxi LLC (7103) (Case No. 15-43313); (xv) Milkyway Cab Corp. (5061) (Case No. 15-43314); (xvi) Palermo Taxi, Inc. (5956) (Case No. 15-43315); (xvii) Pinot Noir Taxi LLC (6725) (Case No. 15-43316); (xviii) Pointer Taxi LLC, (2323) (Case No. 15-43317); (xix) Pudding Taxi Inc. (0432) (Case No. 15-43318); (xx) Stoli Taxi Inc. (4079) (Case No. 15-43319); (xxi) Vodka Taxi LLC (4239) (Case No. 15-43320); and (xxii) VSOP Taxi Inc. (3909) (Case No. 15-43321).

The Official Committee of Unsecured Creditors (the **"Committee"**) of the above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**), by and through its undersigned proposed counsel, hereby moves for authorization to intervene in the above-captioned adversary proceeding pursuant to 11 U.S.C. § 1109(b), Federal Rule of Civil Procedure 24, and Federal Rule of Bankruptcy Procedure 7024. In support of this Motion, the Committee respectfully represents as follows:

## BACKGROUND

### A. The Debtors' Bankruptcy Cases

1. On July 22, 2015 (the **"Petition Date"**), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the **"Bankruptcy Court"**). The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases. On September 24, 2015, the United States Trustee for the Eastern District of New York (the **"U.S. Trustee"**) filed an Amended Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 64] appointing the following members to the Committee pursuant to 11 U.S.C. § 1102(a):

- Hereford Insurance Company
- American Transit Insurance Company
- Jeremy Joseph

3. On October 28, 2015, the Committee filed an Application for Authorization to Retain and Employ White and Williams LLP as Counsel to the Official Committee of Unsecured

Creditors *Nunc Pro Tunc* to October 7, 2015, which is pending before the Bankruptcy Court and expected to be approved shortly.

**B.      The Debtors' Relationship with Citibank, N.A. and the Citi Action**

4.      In 2012, Citibank, N.A., (**"Citibank"**) extended loans to each of the Debtors, secured by New York City taxi medallions (the **"Medallions"**). Debtors' owner, Evgeny Freidman (**"Freidman"**), guaranteed the loans. The Medallions and related vehicles operate through four (4) non-debtor management companies: (i) 28th Street Management, Inc.; (ii) Downtown Taxi Management, LLC; (iii) Woodside Management, Inc.; and (iv) Tunnel Taxi Management, LLC (collectively, the **"Management Companies"**). In 2013, Citibank extended a $1.5 million loan to another Freidman-owned entity called Taxi Club Management Inc. (**"Taxi Club"**), which Freidman also guaranteed.

5.      On March 6, 2015, Citibank filed a verified complaint (the **"Citi Complaint"**) against each of the Debtors, Taxi Club and Freidman in Supreme Court, New York County (the **"State Court"**), entitled *Citibank, N.A. v. Bombshell Taxi LLC, et al.* (Index No. 650691/15) (the **"Citi Action"**), seeking judgment against Freidman and the other defendants in the sum of approximately $34 million. Shortly after the State Court entered a pre-judgment seizure order in favor of Citibank with respect to the Medallions, the Debtors filed for bankruptcy protection on the Petition Date.

6.      On or about July 29, 2015, the Citi Action was removed to the United States District Court for the Southern District of New York. On or about August 31, 2015, the Citi Action was transferred to the United States District Court for the Eastern District of New York (the **"District Court"**). On October 28, 2015, the District Court referred the Citi Action to the Bankruptcy Court, where it was docketed as Adversary Proceeding No. 15-01185.

-3-

7.  The Debtors contend that the value of the medallions exceeds the amount owed to Citibank, such that Citibank's interest in its collateral (i.e., the Medallions) is adequately protected.  Reserving all of their respective rights, Citibank, the Debtors and the Management Companies entered into a Stipulation and Order Concerning Continued Use of Cash Collateral dated October 19, 2015, whereunder, commencing October 5, 2015, the Management Companies agreed to remit the sum of $159,802 per month to Citibank, representing the amount of the Management Companies' monthly lease payment to the Debtors.  Debtors further contend that, even if Citibank were entitled to adequate protection payments (which Debtors dispute), this payment would more than suffice to adequately protect Citibank's interest in the Medallions.

8.  Citibank disputes Debtors' contentions as to adequate protection.  In its Memorandum of Law in Support of Order of Attachment and TRO (the **"Citi Memorandum"**), Citibank contends the Medallions "are highly leveraged and encumbered by liens, rendering them of little value to a judgment creditor" and that Friedman's interest in the entities that own the Medallions "have little, if any, value to a judgment creditor, especially in light of the dramatic negative impact that app-based car services such as Uber have had on the value of Medallions and the amount that drivers are willing to pay to rent them."  Citibank Memorandum at 11.

9.  Apparently concerned that the value of its collateral is unstable or depreciating, Citibank now seeks to attach over $70 million in *other* assets owned or controlled by Freidman. On November 5, 2015, Citibank moved for (a) an order of attachment as to all of Freidman's assets, including Freidman's interests in certain real-estate entities and five (5) personal residences valued in excess of $70 million; (b) a temporary restraining order forbidding Freidman from transferring or disposing of any assets in which he has a direct or indirect

interest; (c) a temporary restraining order forbidding Kelly Funding Trust, Birkin Funding Trust, Lindy Funding Trust, and Evelyn Funding Trust (collectively, the **"Trusts"**) from transferring or disposing of any assets directly or indirectly owned by the Trusts; and (d) expedited discovery.

10. Citibank also filed a motion asking the Bankruptcy Court to abstain from hearing the Citi Action pursuant to 28 U.S.C. § 1334(c), or, alternatively, to remand the Citi Action to the State Court pursuant to 28 U.S.C. 1452(b).[2]

## RELIEF REQUESTED

11. By this Motion, the Committee seeks entry of an order of this Court pursuant to 11 U.S.C. § 1109(b), and Fed. R. Civ. P. 24(a)(1), made applicable herein by Fed. R. Bankr. P. 7024, authorizing it to intervene as of right in the Citi Action.

12. The Committee seeks to intervene on behalf of the Debtors' unsecured creditors because the relief sought by Citibank, if granted, could harm unsecured creditors in a number of ways. Among other things, the Citi Action involves property of the Debtors' estates, including the Medallions, which appears necessary for the Debtors' continued operation and successful reorganization. If – as Debtors contend – the value of the Medallions exceeds the amount of Citibank's debt, then the Debtors' equity in the Medallions may be a source of payment for general unsecured creditors even in a liquidation scenario. Additionally, the Debtors have raised serious counterclaims against Citibank, which if adjudicated successfully by the Debtors, would greatly diminish, if not eliminate, the claims of Citibank, by far the Debtors' largest secured creditor. In addition, an attachment of Friedman's assets, as sought by Citibank on a pre-judgment, pre-adjudication basis, could greatly reduce or even eliminate a source of potential funding for the Debtors' operations and for a plan of reorganization that would work to pay the

general unsecured creditors. In seeking to attach assets well in excess of the amount of its debt, Citibank attempts to prejudice the interests of other creditors. The relief sought by Citibank would potentially impede or prevent the Debtors from performing their duties as debtors-in-possession and fulfilling their obligations under the Bankruptcy Code.

13. Under the circumstances, the Committee's constituency, which is the Debtors' general unsecured creditor body, has a strong interest in the matters at issue in the Citi Action. Granting intervention will provide a voice to the Debtors' unsecured creditors so their interests can be heard and considered.

## BASIS FOR RELIEF REQUESTED

14. Fed. R. Civ. P. 24, made applicable herein by Fed. R. Bankr. P. 7024 provides:

(a) **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

…

(c) **Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for the intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed. R. Civ. P. 24.

15. Section 1109(b) of the Bankruptcy Code provides:

**A party in interest, including** the debtor, the trustee, **a creditors' committee**, an equity security holders' committee, a creditor, an equity security holder, or any

---

[2] While reserving all of its rights and objections in connection with Citibank's motion for abstention/remand, the Committee requests that any relief granted pursuant to this Motion survive any order for abstention or remand that may be entered in connection with the Citi Action.

> indenture trustee, **may raise and may appear and be heard on any issue in a case** under this chapter.

11 U.S.C. § 1109(b) (emphasis added).

16. In *Term Loan Holder Committee v. Ozer Group, et al. (In re Caldor Corp.)*, 303 F.3d 161 (2d Cir. 2002), the Second Circuit considered for the first time whether 11 U.S.C. § 1109(b) gives parties in interest an unconditional right to intervene in adversary proceedings. In a thorough construction analysis, the court found that the plain meaning of the phrase "any issue in a case" set forth in section 1109(b) of the Bankruptcy Code grants a party in interest the "right to raise, appear and be heard *on any* issue regardless whether it arises in a contested matter or an adversary proceeding." *Id.* at 169. In support of its holding, the Second Circuit noted that "[t]he 'issues' referred to in § 1109(b) occur in proceedings, which themselves occur in and constitute part of the 'case'." *Id.* This reasoning has been adopted by numerous other courts. *See, e.g., Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, No. 01 Civ. 8539, 2003 WL 22790916, at *2 (S.D.N.Y. Nov. 25, 2003); *Adelphia Commun. Corp. v. Rigas (In re Adelphia Commun. Corp.)*, 285 B.R. 848 (Bankr. S.D.N.Y. 2002).

17. In *Term Loan Holder Committee*, the Second Circuit went on to hold that section 1109(b) of the Bankruptcy Code provides a party in interest an unconditional right to intervene in an adversary proceeding pursuant to Fed. R. Civ. P. 24(a)(1). *Term Loan Holder Committee*, at 175; *see also G-I Holding*, at *2. In particular, the right of a creditors committee to intervene in an adversary proceeding has also been specifically recognized by Bankruptcy Courts in this District. *See, e.g., Adelphia*, 285 B.R. at 854 (noting that "intervenor parties in interest have the right to raise any issue, and to appear and be heard on any issue, in an adversary proceeding, just as they have such rights in the umbrella case itself" including the "right to brief and argue such matters as they see fit").

18. In the *Adelphia* decision, after summarizing the Second Circuit's *Term Loan Holder Committee* decision, and contrasting the same against the court's other decisions involving committee standing by acquisition, Judge Gerber sought to explore the limits of what a committee or other party in interest can or should do in an adversary proceeding following intervention as of right. *Adelphia*, 285 B.R. at 854 (stating "the real issue in this adversary proceeding – what happens *after* the intervention."); *compare Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, 779 F.2d 901, 904 (2d Cir. 1985) (holding that creditors' committees may initiate adversary proceedings in the name of the debtor in possession, with the approval of the bankruptcy court after finding that the trustee unjustifiably failed to bring such proceeding); *Commodore International Ltd. v. Gould (In re Commodore International Ltd.)*, 262 F.3d 96, 99-100 (2d Cir. 2001) (creditors committee may acquire standing to pursue estate causes of action with the consent of the debtor or trustee if the suit is necessary and beneficial to the resolution of the case).

19. Judge Gerber concluded that intervenors like the committee in the case before him are clearly able to "monitor the case in all respects; to notice of proceedings (and the service of papers on them); the right to file their own papers; to argue and respond to arguments in court; and to raise matters of concern to them at case status conferences and, if necessary, by motion." *Adelphia*, 285 B.R. at 856. Less clear for Judge Gerber were issues such as whether intervenors should be able to "propound discovery requests, to notice deposition and/or to question at depositions, to ask questions at trial or to have rights with respect to settlement." *Id.* at 256-57. Instead of attempting to prospectively sort through these less certain rights of an intervenor and recognizing that facts and circumstances may be important, the court concluded that he and other bankruptcy courts "may control the proceedings before them even after intervention," and, if

necessary, limits or coordination requirements may be imposed upon the actions of intervenors "in the interests of judicial economy, avoiding harassment or excessing burdens, or otherwise in the interests of justice." *Id*. at 857.

20. With the foregoing legal authority as its backdrop, the Committee seeks to intervene in the Adversary Proceeding in order to provide a voice for the Debtors' general unsecured creditors, and to raise and be heard on issues that are of importance to the Debtors' general unsecured creditors.

21. The Committee has a fiduciary obligation to protect and advance the interests of the Debtors' general unsecured creditors. The unsecured creditors have a substantial pecuniary interest in the Adversary Proceeding as Citibank is seeking to attach assets of the Debtors and Mr. Freidman that would otherwise potentially be available to fund Debtors' operations and a plan of reorganization in Debtors' bankruptcy cases. Every dollar allocated towards Citibank potentially reduces the funds available for unsecured creditors, which is of particular concern to the Committee here, where Citibank seeks to attach assets in excess of the value of its secured claim. As such, the Committee believes it has an obligation to participate in the Citi Action, which may greatly impact the Committee's constituency.

**WHEREFORE**, the Committee respectfully requests that this Court enter an order, granting the Motion, authorizing the Committee to intervene in the Citi Action, and granting such other and further relief as is just and proper.

Dated: November 10, 2015

                        WHITE AND WILLIAMS LLP

                        By: /s/ Sedgwick M. Jeanite
                            Robert Ansehl, Esq. (admitted *pro hac vice*)
                            Sedgwick M. Jeanite, Esq.
                            250 West 34th Street, Suite 4110
                            New York, NY 10119
                            Telephone: 212-244-9500
                            ansehlr@whiteandwilliams.com
                            jeanites@whiteandwilliams.com

                            and

                            Earl M. Forte, Esq. (admitted *pro hac vice*)
                            Amy E. Vulpio, Esq. (admitted *pro hac vice*)
                            White and Williams LLP
                            1650 Market Street, 18th Floor
                            Philadelphia, PA 19103
                            Telephone: 215-864-7000
                            fortee@whiteandwilliams.com
                            vulpioa@whiteandwilliams.com

                            *Proposed Counsel to the Official Committee of Unsecured Creditors*

WHITE AND WILLIAMS LLP
Robert Ansehl, Esq.
Sedgwick M. Jeanite, Esq.
250 W. 34th Street, Suite 4110
New York, NY 10119
Telephone: (212) 244-9500
ansehlr@whiteandwilliams.com
jeanites@whiteandwilliams.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | |
|---|---|
| In re: : | Chapter 11 |
| : | |
| HYPNOTIC TAXI, LLC, *et al*., : | Case No. 15-43300 (CEC) |
| : | |
| Debtors. : | (Jointly Administered) |
------------------------------------------------------------x
| | |
|---|---|
| CITIBANK, N.A., : | |
| : | |
| Plaintiff, : | |
| : | |
| -against- : | Adv. Pro. No. 15-01185 (CEC) |
| : | |
| BOMBSHELL TAXI, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |
------------------------------------------------------------x

**ORDER**

AND NOW, this ___ day of November, 2015 upon consideration of the Motion of Official Committee of Unsecured Creditors for Authorization to Intervene Pursuant to 11 U.S.C. § 1109(b), Fed. R. Civ. P. 24, and Fed. R. Bankr. P. 7023 (the **"Motion"**)[1] filed by the Official Committee of Unsecured Creditors (the **"Committee"**) of the above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**); it is hereby ORDERED that:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

-2-

1. The Motion is GRANTED.

2. To the extent court authorization is required, the Committee is authorized to intervene in the Citi Action.

3. The relief granted herein shall survive any order for abstention or remand that may be entered in connection with the Citi Action.

IT IS SO ORDERED.

Dated: November __, 2015  
Brooklyn, New York

_____  
The Honorable Carla E. Craig  
Chief United States Bankruptcy Judge