UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                                       Chapter 7

HYPNOTIC TAXI LLC, et al.,                           Case No. 15-43300 (CEC)

                Debtors.
-----------------------------------------------------------x

CITIBANK, N.A.,
                                                         Adv. Pro. No.: 15-01185 (CEC)
                Plaintiff,

v.

BOMBSHELL TAXI LLC, et al.,

                Defendants.
-----------------------------------------------------------x

## DECISION

APPEARANCES:

| | |
|---|---|
| Jantra Van Roy, Esq. | Brett A. Berman, Esq. |
| Nathan Schwed, Esq. | Fox Rothschild LLP |
| Zeichner Ellman & Krause LLP | 2000 Market St. |
| 1211 Avenue of the Americas | 20th Floor |
| New York, NY 10036 | Philadelphia PA 19103 |
| Attorneys for the Plaintiff | Attorneys for Defendant Evgeny Freidman |
| | |
| Paul S. Hollander, Esq. | Michael D. Sirota, Esq. |
| Margreta M. Morgulas, Esq. | David Bass, Esq. |
| Okin Hollander LLC | Cole Schotz P.C. |
| 500 Frank W. Burr Blvd. | 1325 Avenue of the Americas |
| Suite 40, 2nd Floor, Glenpointe Centre West | 19th Floor |
| Teaneck, New Jersey 07666 | New York, New York 10019 |
| Attorneys for The Lindy Funding Trust, The Evelyn Funding Trust, The Kelly Funding Trust, and The Birkin Funding Trust | Attorneys for Defendant Evgeny Freidman |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Citibank, N.A. ("Citibank") for an order directing The Lindy Funding Trust, The Evelyn Funding Trust, The Kelly Funding Trust, and The Birkin Funding Trust (collectively, the "Trusts"), Evgeny Freidman, and their respective counsel to produce to Citibank all communications (including attachments) between (i) Freidman and/or any of Freidman's counsel on the one hand and (ii) the Trusts and/or any of the Trusts' counsel on the other hand. The Trusts and Freidman oppose Citibank's motion, arguing that the communications are protected by the common interest doctrine. Because Freidman and the Trusts have not met the burden to establish their entitlement to the protections of common interest doctrine, Citibank's motion is granted.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This non-core proceeding is related to these bankruptcy cases. Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992). A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case. 28 U.S.C. § 157(c)(1). Although bankruptcy courts may not enter final orders in non-core proceedings absent consent of the parties, bankruptcy courts may enter interlocutory orders in non-core proceedings. O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 739-40 (Bankr. S.D.N.Y. 2012). An order directing the production of the discovery sought by Citibank is interlocutory. See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159 (2d Cir. 1992); Bower v. Weisman (In re Weisman), 835 F.2d 23 (2d Cir. 1987).

BACKGROUND

The facts set forth below are not in dispute except where otherwise noted.

A.     Citibank's State Court Action

On March 5, 2015, Citibank began this action by filing a summons and complaint in Supreme Court, New York County (Index No. 650691/15) (the "State Court Action"), asserting twelve causes of action against Freidman and the other defendants. Citibank seeks, among other things, a judgment against Freidman as guarantor of three loans totaling $31.5 million in principal amount extended by Citibank to entities closely held by Freidman (the "Loans"). (Verified Compl., ECF No. 2-2, ¶¶ 178-183.)[1]

The Loans are secured by taxi medallions owned by the borrowers, who are the debtors in these procedurally consolidated bankruptcy cases (the "Debtors").[2] On July 22, 2015, after the state court entered an order allowing Citibank to seize the taxi medallions, which was stayed pending appeal on the condition that defendants post a $50 million bond, the Debtors, unable to post the bond, commenced these bankruptcy cases.[3] (Pet., Case No. 15-43300-CEC, ECF No. 1; Aff. of Evgeny Freidman, Case No. 15-43300-CEC, ECF No. 2, ¶¶ 39-46.)

On July 29, 2015, the Debtors removed the State Court Action to the United States District Court for the Southern District of New York, and after transfer to the United States District Court for the Eastern District of New York, the action was referred to this Court by order dated October 28, 2015. (Notice of Removal, ECF No. 1.)

---

[1] Citations to "ECF No." are to documents filed in Adv. Pro. No. 15-01185-CEC, identified by docket entry number. Citations to "Case No. 15-43300-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re Hypnotic Taxi LLC, identified by docket entry number.
[2] One of the borrowers, Taxi Club Management, Inc., does not own any of the taxi medallions that were pledged to Citibank and is not a debtor in these bankruptcy cases.
[3] These cases were commenced under chapter 11, and were converted to cases under chapter 7 on September 22, 2016.

2

In February, 2016, Citibank filed a motion seeking summary judgment against Freidman on his guaranties of the Loans and dismissal of his counterclaims. (Pl.'s Mot. for Summ. J., ECF No. 92.) On March 30, 2017, this Court issued proposed findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 9033, recommending that Citibank's motion be granted. (Proposed Findings of Fact and Conclusions of Law, ECF No. 418.)

B.  The Transfers to the Trusts

On August 1, 2003, Freidman purchased residential real property located at 136 E 65th Street, New York, New York. (Joint Pre-Trial Order ("JPTO"), ECF No. 411, ¶ 5(1).) On March 7, 2011, Freidman transferred the 65th Street Property to the 136 East 65th Street Irrevocable Residence Trust U/A 10/28/2010, a trust settled by Freidman under New York law. (JPTO, ECF No. 411, ¶ 5(1).)

On November 11, 2008, the 200 East 66th Street Residence Trust U/A 6/15/08, a trust settled by Freidman under New York law, purchased a condominium located at 200 E 66th Street, Apt. A1101, New York, New York. (JPTO, ECF No. 411, ¶ 5(3).)

On January 25, 2013, Freidman purchased real property located at 108 Halsey Street, Bridgehampton, New York. (JPTO, ECF No. 411, ¶ 5(6).) On July 10, 2013, Freidman transferred that property to the 108 Halsey Street Irrevocable Residence Trust U/A February 2013 ("Halsey Street Residence Trust," and, together with the 65th Street Residence Trust and the 66th Street Residence Trust, the "New York Residence Trusts"), a trust settled by Freidman under New York law. (JPTO, ECF No. 411, ¶ 5(6).)

On or about April 17, 2015, after Citibank commenced this action against Freidman, the trustees of the 65th Street Residence Trust transferred the 65th Street Property to the East 65th Street Owners LLC ("East 65th Street LLC"), a limited liability company organized under the

laws of the State of New York on or about April 1, 2015, and whose membership interests were titled in Freidman. (JPTO, ECF No. 411, ¶ 5(2).)

Also on April 17, 2015, the trustees of the 66th Street Residence Trust transferred the 66th Street Property to 66th Street Unit Owners LLC ("66th Street LLC"), a limited liability company organized under the laws of the State of New York on or about April 1, 2015, and whose membership interests were titled in Freidman.

On May 27, 2015, the trustees of the Halsey Street Residence Trust transferred the Halsey Street Property to Halsey Street Owners LLC ("Halsey Street LLC," and together with East 65th Street LLC and 66th Street LLC, the "Residential LLCs"), a limited liability company organized under the laws of the State of New York, and whose membership interests were titled in Freidman. (JPTO, ECF No. 411, ¶ 5(7).)

In or about June, 2015, Freidman created the Trusts, and pursuant to assignments dated June 15, 2015, he transferred (1) his interests in the 65th Street LLC to the Lindy Funding Trust; (2) his membership interests in the 66th Street LLC to The Evelyn Funding Trust; and (3) his membership interests in Halsey Street LLC to The Lindy Funding Trust. (Trusts' CPLR 6221 Pet., ECF No. 100, ¶¶ 3, 6, 9; JPTO, ECF No. 411, ¶ 5(5).)

In addition, in or about March, 2015, Freidman transferred parcels of real property held as investments to twenty-eight separate limited liability companies and corporations controlled by him and established for that purpose (the "Business Real Estate Entities," and together with the Residential LLCs, the "Real Estate Entities"). Freidman thereafter transferred all of his interests in the Business Real Estate Entities to the Trusts. (Opp'n to Citibank's Mem. of Law Regarding Common Interest Privilege/Protection, ECF No. 395, ¶ 12.)

As a result of these transfers, all of Freidman's interests in the Real Estate Entities were transferred to the Trusts. (JPTO, ECF No. 411, ¶ 5(10).)

    C.    <u>The Order of Attachment and the Trusts' Petition</u>

On November 5, 2015, pursuant to CPLR 6210, Citibank moved by order to show cause in this Court for a temporary restraining order and order of attachment, seeking to restrain any transfer of assets in which Freidman has an interest, and to restrain any further transfer of the assets transferred by Freidman to the Trusts. (Mot. for Order of Attach. and TRO, ECF No. 4.) Citibank sought this relief based upon the contention that Freidman had transferred his interests in the Real Estate Entities to the Trusts with intent to defraud his creditors or frustrate the enforcement of a judgment that might be entered in Citibank's favor, which constituted grounds for attachment under New York Civil Practice Law and Rules ("CPLR") 6201(3). On November 5, 2015, a temporary restraining order (the "TRO") was issued pursuant to CPLR 6210, restraining any transfers of Freidman's property or property of the Trusts not in the ordinary course of business. (Order to Show Cause and TRO, ECF No. 6.)

On November 12, 2015, a hearing was held on Citibank's motion for an order of attachment, at which it was disclosed that the trustees of the Trusts, who were individuals located in New York, resigned following the issuance of the TRO. (Tr. 11/12/15, Case No. 15-43300-CEC, ECF No. 116, 8:2-7, 33:5-9.)[4] The following day, it was disclosed that Freidman had appointed, as successor trustees for all of the Trusts, two individuals located in Moscow. (Letter, ECF No. 24.)

On November 17, 2015, an order of attachment (the "Order of Attachment," ECF No. 28) and an amended temporary restraining order (the "Amended TRO," ECF No. 29) were entered in

---

[4] "Tr." refers to the transcript of the hearing held on the date specified.

favor of Citibank. The Order of Attachment authorized levy on assets transferred by Freidman to the Trusts, and the Amended TRO restrained various parties, including the Trusts, from, among other things, transferring or encumbering those assets.

On November 19, 2015, the Court stayed the Order of Attachment pending a hearing. (Order, ECF No. 34.) On November 30, 2015, an evidentiary hearing was held on Citibank's motion for an order of attachment.

On January 12, 2016, the Court issued a decision finding that grounds for attachment existed under CPLR 6201(3) because Freidman transferred his interests in the Real Estate Entities to the Trusts with intent to defraud his creditors or to frustrate a judgment that might be entered in Citibank's favor. (Decision, ECF No. 73.) For that reason, and because the elements of CPLR 6212(a) were satisfied, the Court determined that Citibank was entitled to an order of attachment against Freidman's property and that, under § 278 of the New York Debtor and Creditor Law, such an order of attachment could properly reach the assets transferred to the Trusts in June, 2015. On January 15, 2016, an order was issued an order lifting the stay of the Order of Attachment. (Order, ECF No. 80.)

On March 23, 2016, the Trusts filed a petition pursuant to CPLR 6221 (the "Trusts' Petition"), claiming an adverse interest in the property attached by the Order of Attachment, and challenging the attachment of the interests in the Real Estate Entities held by the Trusts. (Trusts' CPLR 6221 Pet., ECF No. 100.) The Trusts argue, among other things, that the Court lacks personal jurisdiction over the Trusts because the Order of Attachment was not served on the current trustees, and lacks subject matter jurisdiction because, at the time the Order of Attachment was issued, Freidman did not own any interests in the Real Estate Entities. (Trusts' CPLR 6221 Pet., ECF No. 100, 18, 21-22.)

On March 25, 2016, Citibank filed an application for an order to show cause seeking expedited discovery regarding the appointments and resignations of the trustees of the Trusts and the protector of the trusts. (Mot. for Order to Show Cause, ECF No. 104.) A conference was held that day, at the conclusion of which the Court set a schedule for expedited discovery. (Tr. 3/25/16, ECF No. 110.)

On April 11, 2016, Citibank filed another application for an order to show cause seeking an order directing Freidman and the Trusts to disclose (1) whether they have transferred or otherwise disposed of ownership interests in any of the Real Estate Entities; (2) the details of any transfers or other disposition by any of the Trusts of ownership interests in any of the Real Estate Entities; (3) the names of any past or current managing member for each of the Real Estate Entities that are LLCs or any person otherwise authorized to manage the affairs of those LLCs; and (4) the names of any past or current presidents of each of the Real Estate Entities that are corporations. (Mot. for Order to Show Cause, ECF No. 124.) That same day, the Trusts sought a protective order pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii) and 26 (c)(1)(D), incorporated in Fed. R. Bankr. P. 7026, barring Citibank from seeking responses to its request for document production and compelling the attendance of the current and former trustees of the Trusts at depositions. (Mot. for Protective Order, ECF No. 125.) In response, Citibank filed a motion seeking to prevent the Trusts from relying on facts in relation to which the Trusts refuse to produce document discovery, and to produce the former and current trustees of the Trusts for deposition. (Cross Mot. for Order of Preclusion, ECF No. 148.) A hearing on these motions was scheduled for April 22, 2016.

On April 15, 2016, Citibank filed a motion seeking an order declaring that the levies by the U.S. Marshals upon the assets Freidman transferred to the Trusts were effective, and seeking related relief. (Mot. for Order Declaring Levies by U.S. Marshals Effective, ECF No. 142.)

On April 19, 2016, the Trusts filed an amended petition under CPLR 6221 to challenge, among other things, the Order of Attachment, the Amended TRO, and the Court's determination to permit discovery in connection with the Petition. (Trusts' Am. Pet., ECF No. 150.) The Trusts again argued that the Court lacks personal jurisdiction over the Trusts and lacks in rem jurisdiction over the Trusts' property, and that Citibank failed to properly serve the Trusts. (Trusts' Am. Pet., ECF No. 150, 12, 14-15.) The Trusts also argued that they are not the proper garnishee under CPLR 6202 because they are not holding any property owned by Freidman nor do they owe a debt to him. (Trusts' Am. Pet., ECF No. 150, 12-13.) The Trusts further argued that the discovery sought by Citibank is irrelevant to the determination of the Trusts' Amended Petition. (Trusts' Am. Pet., ECF No. 150, 10-11.) The Trusts, as permitted by CPLR 6221, have not consented to the jurisdiction of this Court with respect to any matter other than the claims asserted in the petition.

On April 21, 2016, Citibank responded to the Trusts' Amended Petition, filing opposition which included a cross-motion seeking a determination that Freidman and the Trusts are alter egos. (Opp'n and Cross Mot. for Alter Ego Determination, ECF No. 156.)

A hearing on Citibank's motions for disclosure and for preclusion, and on the Trusts' motion for a protective order, was held on April 22, 2016. On April 29, 2016, the Court issued a decision and order, which was amended on May 9, 2016. (Decision and Order, ECF No. 173; Am. Order, ECF No. 190.) The May 9, 2016 amended order denied the Trusts' motion for a protective order, and directed, among other things, that the Trusts and Freidman respond to

8

certain discovery requests. (Am. Order, ECF No. 190.) The order also directed the Trusts and Freidman to provide a privilege log identifying any responsive documents withheld on the basis of privilege. (Am. Order, ECF No. 190.)

Discovery continued through the summer. On October 5, 2016, the Court issued an order in response to various motions regarding discovery, directing, among other things, that Freidman and the Trusts certify in writing that they have produced all non-privileged documents in their possession, custody, or control as previously ordered by the Court, and that they have delivered to Citibank a privilege log identifying all responsive documents withheld on the basis of privilege, including the common interest privilege. (Am. Order, ECF No. 301.)

On October 21, 2016, Citibank filed an application for an order to show cause to compel Freidman, the Trusts, and Okin Hollander LLC ("Okin Hollander"), attorneys to the Trusts, among others, to immediately comply with the Court's October 5, 2016 order, which was scheduled for a hearing on November 2, 2016. (Mot. for Order to Show Cause, ECF No. 314; Order to Show Cause, ECF No. 322.)

At the hearing on November 2, 2016, the Court instructed the Trusts and Freidman to provide amended certifications to comply with the October 5, 2016 order. (Tr. 11/2/16, ECF No. 328.) The Court also instructed Freidman to determine whether Cole Schotz, P.C. ("Cole Schotz"), a law firm that also represented Freidman and/or his business entities, was in possession of any documents responsive to Citibank's document requests, and, if so, directed that all responsive documents in the possession of Cole Schotz be provided to Citibank in accordance with the prior discovery orders. (Tr. 11/2/16, ECF No. 328, 17:2-7.)

On January 10, 2017, Citibank's attorneys received documents produced by Cole Schotz, together with a privilege log identifying documents being withheld by Cole Schotz on the basis of privilege.

On January 17, 2017, Citibank filed a motion (the "Adverse Inference Motion"), pursuant to Fed. R. Civ. P. 37, made applicable by Fed. R. Bankr. P. 7037, seeking, among other things, an inference that Freidman and/or Cole Schotz controlled and/or directed the Trusts and the Trusts' counsel, Okin Hollander, based upon Okin Hollander's alleged noncompliance with discovery orders by failing to disclose communications with Cole Schotz on its privilege log dated October 25, 2016. (Adverse Inference Mot., ECF No. 348, ¶¶ 29-37.) Citibank claimed that Okin Hollander failed to disclose hundreds of communications with Cole Schotz, which appear on the privilege log of Cole Schotz produced on January 10, 2017, but did not appear on any Okin Hollander privilege log. (Adverse Inference Mot., ECF No. 348, ¶¶ 29-37.)

On January 27, 2017, Citibank filed a proposed order to show cause and an application seeking, in part, the same relief requested in the Adverse Inference Motion. (Mot. for Order to Show Cause, ECF No. 356.) Citibank requested an order (1) determining that the failure of Freidman, the Trusts, and their respective counsel to produce, or disclose in a privilege log, communications and documents concerning communications between the Trusts and their counsel, Okin Hollander, and Freidman and his counsel, Cole Schotz and Fox Rothschild LLP ("Fox Rothschild"), was knowing and intentional and that any asserted privileges as to intentionally concealed communications have been waived; (2) requiring Cole Schotz to deliver to the Court, in word searchable format, all invoices for legal services rendered by Cole Schotz to Freidman or any entity affiliated with Freidman; (3) requiring respondents to immediately produce all documents concerning communications between any respondent(s) and Artur

Galstian, including any communications withheld on the asserted basis of "common interest privilege" or any other basis; and (4) requiring respondents to immediately produce all documents concerning communications between (i) any Trustee of the Trusts and/or counsel for the Trusts and (ii) Freidman and/or counsel for Freidman, including invoices reflecting same and any communications withheld on the asserted basis of "common interest privilege" or any other basis ("Common Interest Motion"). (Mot. for Order to Show Cause, ECF No. 356.) Citibank has since withdrawn its request for Cole Schotz's invoices and for communications involving Artur Galstian, but continues to seek documents reflecting communications between Freidman and/or his counsel and the Trusts and/or their counsel, on the basis that Freidman and the Trusts have not met their burden to show that they are entitled to invoke the common interest doctrine, and that any entitlement to do so was waived by the failure to properly and timely disclose those communications in privilege logs.

On February 24, 2017, Okin Hollander filed a supplemental privilege log. (Letter, ECF No. 385.) The Trusts also filed opposition to the Common Interest Motion, asserting, among other things, that the discrepancy between the Cole Schotz privilege log and the Okin Hollander privilege logs was attributable, in part, to the fact that Okin Hollander's privilege logs had identified only the last email in a "thread," while Cole Schotz had logged each email as a separate communication. (Opp'n to Adverse Inference Mot., ECF No. 375.)

A hearing with respect to a number of matters, including the Common Interest Motion, was held on February 27, 2017, at the conclusion of which the parties were directed to submit a statement of agreed facts and additional briefings with respect to the Common Interest Motion. (Tr. 2/27/17, ECF No. 425, 138-139.) After the parties unsuccessfully attempted to arrive at an agreed statement of facts on which the Common Interest Motion could be decided, the matter

was set down for a trial on March 27, 2017. The parties filed pre-trial submissions (ECF Nos. 368, 390, 391, 394, 395, 396, 397, 401), a Joint Pre-Trial Order (JPTO, ECF No. 411), and post-trial submissions (ECF Nos. 414, 423, 424, 426).

Citibank seeks production of these communications on an expedited basis, in advance of a trial that has been scheduled for May 2, 2017 on various issues relating to, among other things, the Trusts' Petition, and the adequacy and propriety of Citibank's levies. This opinion decides the Common Interest Motion.

### DISCUSSION

Though the procedural history is lengthy, the issue on this motion may be simply stated: whether communications between the Trusts and their attorneys, on the one hand, and Freidman and his attorneys, on the other hand, are protected from disclosure by the common interest doctrine, and if so, whether the disclosure of those communications should nevertheless be required because of the Trusts' failure to properly and timely identify these communications in privilege logs provided to Citibank. Because the Trusts and Freidman have not met the burden to demonstrate that the common interest doctrine applies, it is not necessary to resolve the second question.

The common interest doctrine is not an independent privilege, but rather "an extension of the attorney-client privilege." Pem-Am., Inc. v. Sunham Home Fashions, LLC, No. 03 CIV. 1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007) (citing United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir.1989)). The doctrine serves as "an exception to the general rule that voluntary disclosure of confidential, privileged material to a third-party waives any applicable privilege," and applies to materials protected by both the attorney-client privilege and the work product doctrine. HSH Nordbank AG N.Y. Branch v. Swerdlow, 259 F.R.D. 64, 71

(S.D.N.Y. 2009)(citations omitted). The common interest doctrine arises in situations where "a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (citing United States v. Bay State Ambulance and Hosp. Rental Serv., 874 F.2d 20, 28 (1st Cir.1989)).

"Privileges should be narrowly construed and expansions cautiously extended." United States v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999) (citing University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990)). The party asserting that a privilege exists by virtue of the common interest doctrine bears the burden of establishing each element necessary to demonstrate its applicability. Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 472 (S.D.N.Y. 2003). "Such a showing must be based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence." Id. "The burden cannot be met by 'mere conclusory or ipse dixit assertions' in unsworn motion papers authored by attorneys." Id. (quoting von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987), cert. denied, 481 U.S. 1015 (1987)). To establish that an otherwise waived privilege is preserved by the common interest doctrine, it must be shown: (1) that the party or parties asserting the applicability of the doctrine share a common legal interest with the party or parties with whom the information protected by the privilege was shared and (2) that the sharing of the privileged information was intended to be in furtherance of the common legal interest shared by the parties. Id. at 471. If these elements are not met, the disclosure of the privileged information constitutes a waiver of privilege. See In re F.T.C., No. M18-304 (RJW), 2001 WL 396522, at *2 (S.D.N.Y. Apr. 19, 2001) (citations omitted).

In order to invoke the common interest doctrine, the interest shared by the parties, among whom the privileged information passed, must be legal; the mere existence of a common

13

business strategy or shared commercial interest, even if combined with the anticipation of or concern about litigation, is not enough to invoke the doctrine. See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995), see also Gulf Islands Leasing, 215 F.R.D. at 472-73. Such a legal interest must also be identical, not merely similar. See Gulf Islands Leasing, 215 F.R.D. at 471 (citing N. River Ins. Co. v. Columbia Cas. Co., No. 90 CIV. 2518 (MJL), 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995)). Furthermore, the shared desire to succeed in a legal action does not meet the requirement of the doctrine. See Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 893 (S.D.N.Y.), on reargument, 187 F.R.D. 148 (S.D.N.Y. 1999) (citing Int'l Ins. Co. v. Newmont Min. Corp., 800 F. Supp. 1195, 1196 (S.D.N.Y. 1992)), see also N. River Ins. Co. v. Columbia Cas. Co., No. 90 CIV. 2518 (MJL), 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995) (Holding that a shared desire to succeed in litigation "does not qualify as an identical legal interest."). "[T]he existence even of…a coordinated legal strategy is insufficient where there is only a common commercial interest and no identity of legal interests." Gulf Islands Leasing, 215 F.R.D. at 473.

For example, courts have found a common legal interest sufficient to invoke the common interest doctrine between an agent for a syndicated loan group and the members of the group, in an action against the borrower brought by the agent on behalf of the lending group, HSH Nordbank, 259 F.R.D. at 64, 73; and between an assignor and assignee of trademark rights, in an action involving a challenge to the assignee's right to use the trademark and a challenge to the validity of the assignment agreement, where the non-party assignor had a contractual duty to indemnify the assignee. Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc., No. CV 07-1675 ERK VVP, 2009 WL 3786210, at *3 (E.D.N.Y. Nov. 12, 2009).

On the other hand, an asserted common legal interest was found insufficient to invoke the common interest doctrine between two wholly owned subsidiaries of a common parent, even where one subsidiary had financed the plaintiff's purchase of an aircraft from the other, and the finance and purchase agreements contained cross-defaults. See Gulf Islands Leasing, 215 F.R.D. at 467-69. The court rejected the contention that the subsidiaries shared a common legal interest that the plaintiff not breach any of the agreements with either subsidiary, characterizing the non-party subsidiary's ultimate interest in the dispute as a desire to ensure that the sums owed under its agreements with the plaintiff were paid, and noting that "[a] concern to ensure the payment of money is commercial in nature and does not qualify for protection under the common interest rule." Id. at 472-73.

In the instant case, Freidman and the Trusts shared communications protected by the attorney-client privilege with each other and their respective counsel. Despite multiple submissions, and the evidentiary hearing held on March 27, 2017, neither Freidman, nor the Trusts, have met their burden to demonstrate that either shares a common legal interest with the other sufficient to invoke the common interest doctrine and thereby preserve the privileged nature of the shared communications notwithstanding such disclosure.

A.     Cole Schotz's Submissions Regarding the Common Interest Doctrine

Cole Schotz has presented no evidence, either at trial or in papers, which establishes the existence of a common legal interest between Freidman and the Trusts. Cole Schotz, in their objection to Citibank's OSC, makes a single reference to "parties with whom Freidman has a common interest." (Objection to Mot. for Order to Show Cause, ECF No. 368, 3.) No mention is made of the type of interest shared by Freidman and these parties, be it legal, commercial, or otherwise. Cole Schotz also states that they have "[a]t all relevant times…acted under the

15

understanding that a valid common interest privilege exists between Freidman and his counsel, the Trusts and their counsel." Id. at 5 n.6. However, Cole Schotz fails to provide any information about what facts led them to this conclusion. Finally, Cole Schotz states that they had been informed, by the Trusts, that the Trusts had informed Citibank that the common interest doctrine applied to preserve the privilege. See id.

Here, Cole Schotz has made a bare assertion that a common interest exists, stated their belief that the common interest doctrine applies, and noted that Citibank had been made aware of the Trusts' position that the common interest doctrine was applicable. None of this establishes that Freidman and the Trusts share a common legal interest sufficient to invoke the common interest doctrine. See Gulf Islands Leasing, 215 F.R.D. at 472 ("[I]t is the burden of the party asserting a privilege to establish its existence" and "[s]uch a showing must be based on competent evidence."). As Cole Schotz has failed to demonstrate the existence of a common legal interest between the Trusts and Freidman, Cole Schotz has not succeeded in meeting the burden required to show that the attorney-client privilege, created by their relationship with Freidman, was preserved by the common interest doctrine and not waived through communications with the Trusts and their attorneys.

B.  The Trusts' and Freidman's Claims Regarding the Common Interest Doctrine

The Trusts, through their attorneys, Okin Hollander, and Freidman, through his attorneys, Fox Rothschild, have also failed to show that they share a common legal interest. (Non-Party Trusts' Opp'n to Mot. for Adverse Inferences, ECF No. 375; Opp'n to Citibank's Mem. of Law Regarding Common Interest Privilege/Protection, ECF No. 395; Decl. of Paul S. Hollander, ECF No. 396; Trusts' Post-Trial Submission, ECF No. 423.) The Trusts' and Freidman's joint opposition on this issue states that the Trusts' retention of Okin Hollander related to the defense

and resolution of the State Court Action and that they "share a common interest with respect to the State Court Action." (Opp'n to Citibank's Mem. of Law Regarding Common Interest Privilege/Protection, ECF No. 395, ¶¶ 22-23, 50.) The opposition neither details, nor describes, the nature of that common interest. The Trusts are not defendants in the State Court Action, and even if the Trusts would benefit if Freidman were successful in the State Court Action (on the theory that if Citibank fails to obtain a judgment against Freidman, it cannot seek to attach or execute on the assets Freidman transferred to the Trusts), this is insufficient to establish a common legal interest. Just as in Gulf Islands Leasing, the non-party subsidiary's desire to ensure the payment of sums owed under its agreements with the plaintiff was insufficient to invoke the doctrine, here the Trusts' desire to protect their assets from attachment or execution falls short of a common legal interest with Freidman. 215 F.R.D. at 472-73. At most, this constitutes a shared desire that Freidman should succeed in the State Court Action. See Shamis, 34 F. Supp. 2d at 893 ("[S]haring a desire to succeed in an action does not create a 'common interest.'"); N. River Ins. Co., 1995 WL 5792 at *4 (The shared desire to succeed in litigation "does not qualify as an identical legal interest.").

In their post-trial submission, the Trusts assert that the common legal interest they share with Freidman is "the protection of the assets validly vested in the Non-Party Trusts for the benefit of Freidman's heirs and/or parents." (Trusts' Post-Trial Submission, ECF No. 423, ¶¶ 41, 43-44.) However, the Trusts have not identified any legal interest Freidman has in protecting the property they hold. Although Freidman is the settlor of the Trusts, and transferred his interests in the Real Estate Entities to the Trusts, no showing has been made that Freidman retains any interest in the Trusts or in Trust property. (Opp'n to Citibank's Mem. of Law Regarding Common Interest Privilege/Protection, ECF No. 395, ¶ 12). It has not been shown that Freidman

17

is a beneficiary of the Trusts, a trustee of the Trusts, holds a remainder interest in any property held by the Trusts, possesses the power to revoke or amend the Trusts, or retains any interest whatsoever in the property conveyed to the Trusts. Indeed, the evidentiary record shows the contrary: by letters dated March 1, 2016, offered in evidence by Citibank at the hearing as Exhibit HH, Freidman resigned as protector of the Trusts, and was removed as a discretionary beneficiary of the Trusts. See N.Y. Est. Powers & Trusts Law § 7-2.1(a) (McKinney) ("Except as otherwise provided in this article, an express trust vests in the trustee the legal estate, subject only to the execution of the trust."), see also N.Y. Est. Powers & Trusts Law § 7-1.7 (McKinney) ("Every legal estate and interest not embraced in an express trust and not otherwise disposed of remains in the creator.").

As there has not been a showing that Freidman holds a legal or beneficial interest in the property of the Trusts, it appears that Freidman shares only a personal or business interest with the Trusts, i.e. the desire for "the protection of the assets [held by the] Trusts for the benefit of Freidman's heirs and/or parents." (Trusts' Post-Trial Submission, ECF No. 423, ¶¶ 41, 43-44.) Such an interest is not a common legal interest sufficient to invoke the common interest doctrine. See Gulf Islands Leasing, 215 F.R.D. at 472-73. As such, neither Freidman, nor the Trusts, have met the burden required to show that the attorney-client privilege, created by their relationships with their respective counsel, was preserved by the common interest doctrine notwithstanding disclosure of otherwise privileged communications by Freidman or his attorneys to the Trusts or their attorneys, or vice versa.

## CONCLUSION

As neither Freidman, nor the Trusts, have met the burden required to demonstrate that the common interest doctrine applies, the Court finds that the attorney-client privilege was waived

with respect to the communications shared between the Trusts and/or their counsel, on the one hand, and Freidman and/or his counsel, on the other hand. Accordingly, the Trusts, Freidman, and their respective counsel, are directed to produce all such communications previously requested and withheld on the basis of the common interest doctrine to Citibank on or before April 18, 2017.



**Dated: Brooklyn, New York**
**April 10, 2017**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**