UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                    Chapter 7

HYPNOTIC TAXI LLC, et al.,                          Case No. 15-43300 (CEC)

                              Debtors.

----------------------------------------------------------x

CITIBANK, N.A.,
                                                                         Adv. Pro. No.: 15-01185 (CEC)
                              Plaintiff,

v.

BOMBSHELL TAXI LLC, et al.,

                              Defendants.

----------------------------------------------------------x


## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

APPEARANCES:

Jantra Van Roy, Esq.                          Brett A. Berman, Esq.
Nathan Schwed, Esq.                          Fox Rothschild LLP
Zeichner Ellman & Krause LLP           2000 Market St.
1211 Avenue of the Americas             20th Floor
New York, NY 10036                          Philadelphia PA 19103-3222Attorneys for
Attorneys for the Plaintiff                    Defendant Evgeny Freidman

Paul S. Hollander, Esq.
Margreta M. Morgulas, Esq.
Okin Hollander LLC
500 Frank W. Burr Blvd., Suite 40
Teaneck, New Jersey 07666
Attorneys for The Lindy Funding Trust,
The Evelyn Funding Trust, The Kelly
Funding Trust, and The Birkin Funding Trust

CARLA E. CRAIG
Chief United States Bankruptcy Judge

The following matters are before the Court: (1) the amended petition of The Birkin Funding Trust, The Evelyn Funding Trust, The Kelly Funding Trust, and The Lindy Funding Trust (collectively, the "Trusts") pursuant to New York Civil Practice Law and Rules ("CPLR") § 6221 and Rule 64 of the Federal Rules of Civil Procedure, seeking to vacate a restraining order and an order of attachment against assets purportedly owned by the Trusts; (2) the motions of Citibank, N.A. ("Citibank") for determinations that (a) the Trusts are alter egos of Evgeny Freidman ("Freidman"); (b) certain real estate entities owned by the Trusts are Freidman's alter egos; (iv) the United States Marshal properly levied upon the ownership interests in those real estate entities; (v) the United States Marshal properly levied on real property located in New York owned by some of the real estate entities; and (vi) adverse inferences should be drawn due to the failure of Freidman and the Trusts to produce certain records; and (3) Freidman's objection to certain of Citibank's exhibits on the basis that those exhibits constitute attorney work product.   A three day trial on these matters was held on May 2, 2017 through May 4, 2017, followed by post-trial briefing.

For the following reasons, it is recommended that the District Court: (1) deny the Trusts' petition; (2) determine that the United States Marshal properly levied on Freidman's ownership interests in the real estate entities; (3) deny Citibank's motion for a determination that the real estate entities are Freidman's alter egos; (4) deny Citibank's motion for a determination that the United States Marshal properly levied upon the real estate entities' real property in New York; (5) deny Citibank's motion for adverse inferences; and (6) overrule Freidman's objection to Citibank's exhibits as moot.

JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case.   28 U.S.C. § 157(c)(1).

The Trusts argue that these proceedings are not related to the bankruptcy cases because Citibank must first commence a fraudulent conveyance action against the Trusts to avoid the transfer of Freidman's interests in the real estate entities. (Trusts' Reply Brief in Opp'n at 5-6, ECF No. 490.) The Trusts argue that, because this Court cannot "ultimately enter a valid and binding judgment with respect to the disputed transfers in question[,] this Court should not be involved in the determination of any pre-judgment remedies pertaining thereto."   (Trusts' Reply Brief in Opp'n at 5-6, ECF No. 490.)

The Trusts' argument must be rejected.   Citibank's action to recover on Freidman's guaranties is related to these bankruptcy cases because Citibank's claim against the bankruptcy estate will be reduced, or possibly satisfied, through its efforts to recover from Freidman and his assets.   The reachable assets include any interests in the real estate entities that were fraudulently transferred by Freidman to the Trusts pursuant to New York Debtor and Creditor Law ("DCL") § 278.   As the District Court noted in adopting this Court's proposed findings of fact and conclusions of law on Citibank's motion for summary judgment against Freidman to recover on his guaranties, "the vast majority of district-court and bankruptcy-court decisions in this Circuit consider actions on an insider's guarantee to fall within the 'related-to' jurisdiction of the bankruptcy court, either because they alter the composition of the creditor body or because the trustee is likely to have subordination or other claims against the guarantor that it did not

have against the lender." Citibank, N.A. v. Bombshell Taxi LLC, 15 Civ. 5067 (BMC), 2017 WL 3054832, at *2 (E.D.N.Y. July 19, 2017) (citing Lifetime Brands, Inc. v. ARC Int'l, SA, No. 09-cv-9792, 2010 WL 454680, at *1 (S.D.N.Y. Jan. 29, 2010) ("It appears, moreover, to be well settled that an action to recover on a guaranty of a bankruptcy debtor's obligation is 'related to' the debtor's bankruptcy."); Merrill Lynch Mortg. Capital Inc. v. Esmerian, No. 08 Civ. 5058, 2008 WL 2596369, at *1 (S.D.N.Y. June 30, 2008); In re Ames Dep't Stores, Inc., 190 B.R. 157, 163 (S.D.N.Y. 1995); In re New 118th LLC, 396 B.R. 885, 890-91 (Bankr. S.D.N.Y. 2008); In re River Ctr. Holdings, LLC, 288 B.R. 59 (Bankr. S.D.N.Y. 2003).)

To the extent the Trusts' objection to this Court's subject matter jurisdiction is based on the argument that Citibank cannot attach property fraudulently transferred by Freidman to the Trusts without commencing a fraudulent conveyance action against the Trusts, the argument is rejected for the reasons set forth herein.

In a non-core proceeding, absent consent of the parties to entry of a final order, the bankruptcy judge is directed to submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. 28 U.S.C. § 157(c)(1). As all of the parties have not consented to the entry of a final order by the bankruptcy court, these matters are addressed by these proposed findings and conclusions.

BACKGROUND

The following facts are undisputed or are matters of which judicial notice may be taken, except as otherwise noted.

On August 1, 2003, Freidman purchased residential real property located at 136 East 65th Street, New York, New York (the "East 65th Street Property").   (Amended Joint Pre-Trial Order ("JPTO") ¶ 5(a), ECF No. 484.)[1]   On March 7, 2011, Freidman transferred the East 65th Street Property to the 136 East 65th Street Irrevocable Residence Trust U/A 10/28/2010 ("East 65th Street Residence Trust"), a trust settled by Freidman under the laws of the State of New York. (JPTO ¶ 5(a), ECF No. 484.)

On November 11, 2008, the 200 East 66th Street Residence Trust U/A 6/15/08 ("East 66th Street Residence Trust"), a trust settled by Freidman under the laws of the State of New York, purchased a condominium located at 200 East 66th Street, Apt. A1101, New York, New York (the "East 66th Street Property").   (JPTO ¶ 5(b), ECF No. 484.)

On January 25, 2013, Freidman purchased real property located at 108 Halsey Street, Bridgehampton, New York (the "Halsey Street Property," and together with the East 65th Street Property and the East 66th Street Property, the "Residential Properties").   (JPTO ¶ 5(c), ECF No. 484.)   On July 10, 2013, Freidman transferred the Halsey Street Property to the 108 Halsey Street Irrevocable Residence Trust U/A February 2013 (the "Halsey Street Residence Trust," and, together with the East 65th Street Residence Trust and the East 66th Street Residence Trust, the "New York Residence Trusts"), a trust settled by Freidman under the laws of the State of New York. (JPTO ¶ 5(c), ECF No. 484.)

---

[1] Citations to "ECF No." are to documents filed in Adv. Pro. No. 15-01185-CEC, identified by docket entry number.   Citations to "Case No. 15-43300-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re Hypnotic Taxi LLC, identified by docket entry number.

Freidman also owned shares or interests in twenty eight corporations and limited liability companies (the "Investment Entities"), which own investment properties in Brooklyn, Queens, Chicago, and Philadelphia (the "Investment Properties").[2]

On March 5, 2015, Citibank commenced an action (the "State Court Action") against Freidman and other defendants in New York State Supreme Court, New York County, asserting twelve causes of action, including a claim against Freidman to recover on his guaranties of three loans totaling $41 million (the "Loans") made by Citibank to entities owned and controlled by Freidman, specifically: Hypnotic Taxi LLC, Vodka Taxi LLC, Pudding Taxi LLC, Chopard Taxi Inc., Iceberg Taxi Inc., Milkyway Cab Corp., Vsop Taxi Inc., Cupcake Taxi LLC, Dorit Transit Inc., Hennessey Taxi Inc., Candy Apple Taxi LLC, Stoli Taxi Inc., Pointer Taxi Inc., Palermo Taxi Inc., Marseille Taxi LLC, Bombshell Taxi LLC, Merlot Taxi LLC, France Taxi LLC, Bourbon Taxi LLC, Chianti Taxi LLC, Pinot Noir Taxi LLC, and Butterfly Taxi LLC (collectively, the "Debtors"), and an affiliated management company, Taxi Club Management Inc. (JPTO ¶5(e), ECF No. 484.)   Freidman filed an answer asserting twenty four affirmative defenses and twelve counterclaims.

---

[2] The Investment Entities are Alexandrite Realty Corp, Almaz Realty Corp., Amethyst Realty Corp., Bloodstone Realty Corp., Coral Realty Corp., Dylan Realty Corp., Granat Realty Corp., Graphite Realty Corp., Helium Realty LLC, Izumrud Realty Corp., Nikki Realty Corp. (merged into Izumrud Realty Corp.), Prince Harry Realty LLC, Quartz Realty Corp., Sulphur Realty Corp., Tiger Eye Realty LLC, Turquoise Realty LLC, Zhemchug Realty Corp., Zoloto Realty Corp., Bull Consulting, Inc., Denga Realty Corp., Zinc Realty LLC, 43-05 Vernon Boulevard, LLC, 4514 Elston LLC, 4532 N. Elston LLC, Tungsten Realty, LLC, Azurite LLC, Zircon Realty LLC, Nargila Realty LLC, and Nachas Realty LLC.   (Stmt. Re: Trial Ex. For Nov. 30, 2015 Hearing, ECF No. 48-230; and Ex. N.)   The Investment Properties owned by the Investment Entities are: 1415 Neptune Avenue, Brooklyn, NY; 1411 Neptune Avenue, Brooklyn, NY; 1607 Mermaid Avenue, Brooklyn, NY; 2803 Mermaid Avenue, Brooklyn, NY; 2423 Mermaid Avenue, Brooklyn, NY; 1614 Mermaid Avenue, Brooklyn, NY; 1526 Mermaid Avenue, Brooklyn, NY; 328-330 Butler Street, Brooklyn, NY; 2869 W. 17 Street, Brooklyn, NY; 2804 Mermaid Avenue, Brooklyn, NY; 2806 Mermaid Ave., Brooklyn, NY; 1608 Mermaid Avenue, Brooklyn, NY; 1518-1520 Mermaid Avenue, Brooklyn, NY; 1603-05 Mermaid Avenue, Brooklyn, NY; 1610 Mermaid Avenue, Brooklyn, NY; 1720 Mermaid Avenue, Brooklyn, NY; 1413 Neptune Avenue, Brooklyn, NY; 1528 Mermaid Avenue, Brooklyn, NY; 48-02 Van Dam Street, Long Island City, NY; 44-07 Vernon Blvd., Long Island City, NY; 71-08 Northern Blvd., Jackson Heights, NY; 43-01 and 43-05 Vernon Blvd., Long Island City, NY; 4514 N. Elston Ave., Chicago, IL; 4532-36 N. Elston Ave., Chicago, IL; 2351 South Swanson St., Philadelphia, PA; 4520 N. Elston Ave., Chicago, IL; 30 W. Oak St., #10B, Chicago, IL; 3901-3905 Germantown Ave., Philadelphia, PA; and 1423 McFerran St., Philadelphia, PA. (Stmt. Re: Trial Ex. For Nov. 30, 2015 Hearing, ECF No. 48-20; and Ex. N.)

On or about April 17, 2015, after Citibank commenced the State Court Action, the trustees of the East 65th Street Residence Trust transferred the East 65th Street Property to the East 65th Street Owners LLC ("East 65th Street LLC"), a limited liability company established on or about April 1, 2015, and organized under the New York law. (JPTO ¶ 7(a), ECF No. 484.) The ownership interests in the East 65th Street LLC were initially titled in Freidman "solely for the purpose of effectuating the transfer to an offshore asset protection trust."   (JPTO ¶ 7(a), ECF No. 484.)

Also on that day, the trustees of the East 66th Street Residence Trust transferred the East 66th Street Property to 66th Street Unit Owners LLC ("East 66th Street LLC"), a limited liability company established on or about April 1, 2015, and organized under the New York law. (JPTO ¶ 7(c), ECF No. 484.)   The ownership interests in the East 66th Street LLC were initially titled in Freidman "solely for the purpose of effectuating the transfer to an offshore asset protection trust."   (JPTO ¶ 7(c), ECF No. 484.)

On April 24, 2015, in relation to a separate indebtedness, Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., N/K/A Capital One Equipment Finance Corp. ("Capital One"), filed an affidavit of judgment by confession, signed August 14, 2014, by Freidman, which resulted in a judgment entered on July 10, 2015, in favor of Capital One against Freidman in the amount of $8,484,949.30.   (Decl. in Supp. of Emergency Mot. of Capital One Equip. Fin. to Intervene, Exs. A and B, ECF No. 140-1, 140-2.)

On May 19, 2015, New York State Supreme Court Justice Jeffrey K. Oing granted Citibank's motion for an order of seizure (the "Seizure Order"), allowing Citibank to seize the collateral securing the Loans, consisting of taxicab medallions issued by the New York City Taxi and Limousine Commission and owned by the Debtors. (Guttman Decl., Ex. 4, ECF No. 56-4.)

On June 12, 2015, a separate order was entered in the State Court Action denying the defendants' application for a stay of the Seizure Order. (Berman Decl., Ex. Q, ECF No. 54-18.)

On May 27, 2015, the trustees of the Halsey Street Residence Trust transferred the Halsey Street Property to Halsey Street Owners LLC ( "Halsey Street LLC," and together with East 65th Street LLC and East 66th Street LLC, the "Residential LLCs"), a limited liability company organized under New York law. (JPTO ¶ 7(e), ECF No. 484.) As with the ownership interests in the East 65th Street LLC and the East 66th Street LLC, the ownership interests in the Halsey Street LLC were initially titled in Freidman "solely for the purpose of effectuating the transfer to an offshore asset protection trust." (JPTO ¶ 7(e), ECF No. 484.)

Subsequently, pursuant to assignments dated June 15, 2015, Freidman transferred (1) his interests in East 65th Street LLC to The Lindy Funding Trust, which was settled under the laws of Nevis, West Indies; (2) his interests in East 66th Street LLC to The Evelyn Funding Trust, which was settled under the laws of Belize; and (3) his interests in Halsey Street LLC to The Lindy Funding Trust. (JPTO ¶¶ 5(d), 7(b), (d), (g), ECF No. 484.)   Around the same time, Freidman also transferred to the Trusts his interests in the Investment Entities (together with the Residential LLCs, the "Real Estate Entities") that owned the Investment Properties (together with the Residential Properties, the "Properties"). (JPTO ¶ 7(g), ECF No. 484.)

As a result of these transfers, all of Freidman's interests in the Real Estate Entities were transferred to the Trusts. (JPTO ¶ 7(g), ECF No. 484.)   According to the Trusts, the transfers of the Residential Properties to and from the Residential LLCs were "simply a necessary and intermediate step in the continuation of an estate plan commenced by Mr. Freidman." (JPTO ¶ 7(f), ECF No. 484.)

On June 15, 2015, the Appellate Division, First Department entered an order granting a temporary stay of the Seizure Order pending a hearing by a full panel. (Berman Decl., Ex. U, ECF No. 54-32.) On July 14, 2015, the Appellate Division granted a stay of the Seizure Order on condition that the defendants post a $50 million bond. (Berman Decl., Ex. W, ECF No. 54-36.)

On June 22, 2015, Citibank filed a motion seeking, among other things, partial summary judgment against Freidman to recover under the guaranties of the Loans.[3] (ECF No. 92.)

On July 22, 2015, the Debtors filed voluntary chapter 11 bankruptcy petitions.[4] The commencement of the bankruptcy cases automatically stayed Citibank's action against the Debtors.

On July 29, 2015, the Debtors removed the State Court Action to the United States District Court for the Southern District of New York. After transfer to the United States District Court for the Eastern District of New York, because of the pending bankruptcy cases, the action was referred to this Court by order dated October 28, 2015. (Notice of Removal, ECF No. 1.)

On November 5, 2015, Citibank moved by order to show cause for a temporary restraining order and an order of attachment, seeking to restrain any transfer of assets in which Freidman has an interest and to restrain any further transfer of assets transferred by Freidman to the Trusts. (Mot. for Order of Attach. and Temporary Restraining Order, ECF No. 4.) A temporary restraining order (the "TRO") was issued that day pursuant to CPLR § 6210,

---

[3] On March 30, 2017, the Court issued Proposed Findings of Fact and Conclusions of Law recommending that the District Court grant partial summary judgment against Freidman on Citibank's claim for recovery under his guaranties of the Loans, and dismiss Freidman's counterclaims, which were adopted by the District Court on July 19, 2017 (Proposed Facts and Conclusions of Law, ECF No. 418; Mem. Decision and Order, Case 15-cv-05067-BMC, ECF No. 53.)

[4] These cases were consolidated for procedural purposes and are jointly administered as In re Hypnotic Taxi, Case No. 15-43300. On September 22, 2016, the Debtors' chapter 11 bankruptcy cases were converted to cases under chapter 7 of the Bankruptcy Code. (Case No. 15-43300-CEC, ECF No. 368.)

restraining any transfers of Freidman's property or property of the Trusts not in the ordinary course of business. (Order to Show Cause and TRO, ECF No. 6.)

On November 12, 2015, a hearing was held on Citibank's motion for an order of attachment, at which it was disclosed that two of the trustees of the Trusts, who were lawyers with offices in New York City, resigned following the issuance of the TRO. (Tr. 11/12/15 at 28, Case No. 15-43300-CEC, ECF No. 98.)[5] Effective November 10, 2015, Freidman appointed two individuals located in Moscow as successor trustees for all of the Trusts. (JPTO ¶ 7(i), ECF No. 484.)

On November 17, 2015, an order of attachment (the "Order of Attachment," ECF No. 28) and an amended temporary restraining order (the "Amended TRO," ECF No. 29) were entered in favor of Citibank. The Order of Attachment provides, in pertinent part:

> [IT IS] ORDERED, that the Sheriff shall levy within his or her jurisdiction at any time before final judgment upon any property in which Freidman has an interest and upon any debts owing to Freidman, and shall take into his/her actual custody all such property capable of delivery and shall collect and receive all such debts, including, but not limited to, the assets of Kelly Funding Trust, Birkin Funding Trust, Lindy Funding Trust, and Evelyn Funding Trust, and assets maintained at any financial institution, including any securities, asset management or other similar types of accounts, up to and including the sum of $40 million.

(Order of Attachment, ECF No. 28.)

The Amended TRO provides, in pertinent part:

> [IT IS] ORDERED, pursuant to CPLR 6210, that, pending further order of the Court, Freidman, or any agents of Freidman or any garnishee (as defined in CPLR Article 62), including the Trusts, and their respective current, former and future trustees, and any other person in custody or control of assets of Freidman shall be forbidden to:
>> (1) create, or suffer any creation of, documents evidencing any ownership interest in any property in which such person knows

---

[5] "Tr." refers to the transcript of the hearing held on the date specified.

or has reason to believe that Freidman has an interest including, without limitation, any assets transferred by Freidman to the Trusts;

(2) grant or suffer any encumbrance on, or make or suffer any transfer of, any real property owned by any entity in which Freidman has an ownership interest, including without limitation any real property or cooperative shares owned by Freidman, or by LLCs or Corporations whose ownership interests were transferred by Freidman to the Trusts.

(Amended TRO, ECF No. 29.)[6]

On November 19, 2015, the Court stayed the Order of Attachment pending an evidentiary hearing on Citibank's motion, which was held on November 30, 2015. (ECF No. 34.) On January 12, 2016, the Court issued a decision finding, based upon evidence presented at the hearing, that Freidman transferred his interests in the Real Estate Entities to the Trusts with intent to defraud his creditors or to frustrate a judgment that might be entered in Citibank's favor.  Citibank, N.A. v. Bombshell Taxi LLC (In re Hypnotic Taxi LLC), 543 B.R. 365 (Bankr. E.D.N.Y. 2016).   For that reason, and because the elements of CPLR § 6212(a) were satisfied, the Court determined that the stay of the Order of Attachment should be lifted, and on January 15, 2016, issued an order lifting the stay of the Order of Attachment.   (ECF No. 80.)

By letters dated March 1, 2016, Freidman purported to remove himself as a discretionary beneficiary of the Trusts, and resigned as the protector of the Trusts. (Ex. K.)

On March 23, 2016, the Trusts filed a petition pursuant to CPLR § 6221, challenging the attachment of the interests in the Real Estate Entities which own the Properties, which interests the Trusts claimed to own. (Pet., ECF No. 100.)   The Trusts argued, among other things, that the Court lacked personal jurisdiction over the Trusts because the Order of Attachment was not served on the current trustees (i.e., the individuals located in Moscow who were substituted by

---

[6] On February 12, 2016, the Court issued a second order amending the TRO, which specifically named the Trusts and referenced the Halsey Street Property. (Second Am. TRO, ECF No. 86.)

Freidman for New York-based trustees in November, 2015, after the issuance of the TRO). (Pet. at 18, 21-22, ECF No. 100.) The Trusts also argued that the Court lacked subject matter jurisdiction because at the time the Order of Attachment was issued, Freidman did not own any interests in the Real Estate Entities.   (Pet. at 18, 21-22, ECF No. 100.)

On March 25, 2016, Citibank filed an application for an order to show cause seeking expedited discovery regarding the appointments and resignations of the trustees of the Trusts and regarding the protector of the trusts. (ECF No. 104-1.)   After a conference, the Court directed that document production be provided on an expedited basis.   (Tr. 3/25/16 at 26, ECF No. 110.)

On April 11, 2016, Citibank filed another application for an order to show cause seeking an order directing Freidman and the Trusts to disclose (1) whether they have transferred or otherwise disposed of ownership interests in any of the Real Estate Entities; (2) the details of any transfers or other disposition by any of the Trusts of ownership interests in any of the Real Estate Entities; (3) the names of any past or current managing member for each of the Real Estate Entities or any person otherwise authorized to manage the affairs of the Real Estate Entities; and (4) the names of any past or current presidents of each of the corporations.   (ECF No. 124.) That same day, the Trusts sought a protective order pursuant to Rule 26(b)(2)(C)(iii) and (c)(1)(D) of the Federal Rules of Civil Procure ("FRCP") barring Citibank from seeking responses to its request for document production or compelling the attendance of the current and former trustees of the Trusts at depositions.   (ECF No. 125.)   In response, Citibank filed a motion seeking to prevent the Trusts from relying on facts as to which the Trusts refuse to produce document discovery and to produce the former and current trustees of the Trusts for deposition.   (ECF No. 148.)   A hearing on these motions was scheduled for April 22, 2016.

On April 15, 2016, Citibank filed a motion seeking an order declaring that levies by the United States Marshal upon the assets Freidman transferred to the Trusts were effective, and seeking related relief ("Motion to Declare Levies on Ownership Interests Effective"). (ECF No. 142.)   In support of that motion, Citibank asserted that Freidman's interests in the Real Estate Entities were levied upon by the United States Marshal's personal service of the Order of Attachment on Freidman on January 27, 2016, in his capacity as managing member of each of the Residential LLCs, and by mail service on Freidman on April 12, 2016, in his capacity as individual defendant, and managing member or president of the Real Estate Entities. (Motion to Declare Levies on Ownership Interests Effective, ECF No. 142 at 2, 10.)   Citibank sought, among other relief, an order directing Freidman, in his individual capacity and as managing member or president of the Real Estate Entities, to execute turnover documents and deliver the ownership interests to the United States Marshal.   (Motion to Declare Levies on Ownership Interests Effective, ECF No. 142.)

On April 19, 2016, the Trusts filed an amended petition under CPLR § 6221 (the "Petition") challenging, among other things, the Order of Attachment, the temporary restraining order, and the Court's determination to permit discovery in connection with the Petition. (Trusts' Am. Pet., ECF No. 150.)   The Trusts, as permitted by CPLR § 6221, do not consent to the jurisdiction of this Court with respect to any matter other than the claims asserted in the Petition.   The Trusts contend that the temporary restraining order and Order of Attachment must be vacated because the Court lacks personal jurisdiction over the Trusts and lacks *in rem* jurisdiction over the Trusts' assets, and because Citibank failed to properly serve the Trusts. (Trusts' Am. Pet. at 12, ECF No. 150.)   The Trusts also argue that they are not proper garnishees under CPLR § 6202 because they are not holding any property owned by Freidman

nor do they owe a debt to him; rather, they contend they own the property levied upon.   (Am. Pet. at 12-13, ECF No. 150.) The Trusts further argue that the discovery sought by Citibank is irrelevant to the determination of the claims asserted in the Trusts' Petition.   (Am. Pet. at 10-11, ECF No. 150.)

On April 21, 2016, Citibank filed opposition to the Trusts' Petition and moved for a determination that Freidman and the Trusts are alter egos. (ECF Doc. No. 156.)

A hearing on Citibank's motions for disclosure and for preclusion, and on the Trusts' motion for a protective order, was held on April 22, 2016.   On April 29, 2016, the Court issued a decision and an order, which was amended on May 9, 2016.   (ECF Nos. 173, 190.)   The amended order directed, among other things, that the Trusts and Freidman produce the documents sought by Citibank, with the exception of those documents which were previously provided to Citibank by Freidman or the Debtors.   (ECF No. 190.)   The amended order also directed the Trusts and Freidman to provide a privilege log identifying any responsive documents withheld on the basis of privilege.   (ECF No. 190.)

Discovery proceeded throughout the summer. On October 5, 2016, the Court issued an order (the "Certification Order") in response to various motions regarding discovery, directing Freidman and the Trusts to certify to Citibank that they have (i) produced all the requested non-privileged documents in their possession, custody or control; and (ii) either obtained all responsive documents from their former counsel, professionals, and any of their respective trustees, attorneys, officers, agents or employees, or certify that one or more of those persons or entities had failed to deliver responsive documents, despite demand.   (ECF No. 301.)   The Certification Order further directed counsel for Freidman and the Trusts to certify that they have: (i) withheld no document on any basis other than privilege; and (ii) delivered to Citibank a

privilege log identifying all responsive documents withheld on the basis of any privilege. (ECF No. 301.)

On October 21, 2016, Citibank filed an application for an order to show cause to compel Freidman, the Trusts, Granoff, Walker & Forlenza, P.C., Michael A. Zimmerman, Esq., and Okin Hollander LLC to immediately comply with the Certification Order, on the basis that the responses provided were inadequate. (ECF No. 314.)[7]    The order to show cause was scheduled for a hearing for November 2, 2016, and at that hearing, the Court instructed the Trusts and Freidman to provide amended certifications to comply with the Certification Order.    (ECF No. 322; Tr. 11/2/16, ECF No. 328.)

On January 17, 2017, Citibank filed a motion for an order declaring levies by the United States Marshal upon the Properties to be effective (the "Real Property Levy and Real Estate Entities Alter Ego Motion"). (ECF Nos. 349, 351.)    Beginning on or about April 30, 2016, Citibank had obtained levies on the Properties by filing notices of attachments with the clerks in the New York counties in which most of the Properties are located, separate from the levies on the Real Estate Entities which were served by the United States Marshal on Freidman on January 27, 2016 and April 12, 2016.    (App. ¶ 3, ECF No. 351.)    In addition to seeking a declaration that the levies on the Properties were effective, Citibank sought a determination that the Real Estate Entities are Freidman's alter egos. (ECF Nos. 349, 351.)

Also on January 17, 2017, Citibank filed a motion (the "Adverse Inference Motion") pursuant to Rule 37 of the Federal Rules of Civil Procedure, made applicable by Rule 7037 of the Federal Rules of Bankruptcy Procedure, seeking an adverse inference from the failure of

---

[7] Ellen Walker, Esq. of Granoff, Walker & Forlenza, P.C. and Michael A. Zimmerman, Esq. are Freidman's former attorneys, and assisted in creating the Real Estate Entities the Trusts.    Ms. Walker was also one of the original trustees of the Trusts. (JPTO ¶ 7(i), ECF No. 484.)

Freidman and the Trusts to produce the Real Estate Entities' records maintained in the accounting program QuickBooks. (ECF No. 348.) The motion also sought an adverse inference that Freidman and/or his attorneys, Cole Schotz, P.C. ("Cole Schotz") controlled and/or directed the Trusts and the Trusts' counsel, Okin Hollander LLC ("Okin Hollander"), based upon Okin Hollander's noncompliance with the April 29, 2016 discovery order by failing to disclose communications with Cole Schotz on its privilege log dated October 25, 2016. (Adverse Inference Motion at ¶¶ 29-37, ECF No. 348-1.) Citibank alleged that Okin Hollander failed to disclose hundreds of communications with Cole Schotz, which appear on the privilege log of Cole Schotz produced on January 10, 2017.   (Adverse Inference Motion at ¶¶ 29-37, ECF No. 348-1.)   Citibank also pointed to Okin Hollander's certification dated October 25, 2016, that it "had not withheld from the respective productions referenced herein any responsive documents other than those documents identified on the October 25 Privilege Log," and to Okin Hollander's representation at the November 2, 2016 hearing that it has not withheld any documents other than those identified.   (Adverse Inference Motion ¶¶ 36-37 and Exs. F, K, ECF Nos. 348-1, 348-7, 348-12.)

A hearing on the Real Property Levy and Real Estate Entities Alter Ego Motion and the Adverse Inference Motion was held on February 27, 2017.   On March 7, 2017 the Court issued an order denying the Real Property Levy and Real Estate Entities Alter Ego Motion, and scheduling a trial on the Trusts' Petition and the Adverse Inference Motion for May 2, 2017. (ECF No. 389.)

On March 20, 2017, Citibank filed a renewed motion for an order declaring levies by the United States Marshal upon the Properties to be effective, and for a determination that the Real Estate Entities are Freidman's alter egos (the "Renewed Real Property Levy and Real Estate

Entities Alter Ego Motion") (ECF No. 405), which was returnable on May 2, 2017, together with the trial on the Trusts' Petition, Citibank's Motion to Declare Levies on Ownership Interests Effective, and Citibank's Adverse Inference Motion.

The trial on these matters was held on May 2, 2017 through May 4, 2017, at the conclusion of which the Court scheduled post-trial briefing and reserved decision.

DISCUSSION

I.      The Trusts' Petition and Citibank's Cross Motion for Alter Ego Determination

The Trusts argue that they own the Real Estate Entities, which, in turn, own the Properties.   They argue that Freidman is not the owner, and therefore, the Order of Attachment should be vacated with respect to the Real Estate Entities and Properties.   The Trusts also argue that the Court lacked jurisdiction to attach those assets because there was no *in personam* jurisdiction over the Trusts.

In opposition, Citibank argues that *in personam* jurisdiction over the Trusts was not necessary prior to attaching the Trusts' assets because the CPLR provides the Trusts with a mechanism to protect their interests, if any, in the Real Estate Entities.   Citibank further argues that, because Freidman transferred his ownership interests in the Real Estate Entities to the Trusts with intent to hinder, delay, or defraud creditors, the transfers may be disregarded under DCL § 278, and therefore, personal jurisdiction over the Trusts is unnecessary, because the ownership interests may be attached as though they had not been conveyed by Freidman. Lastly, Citibank argues that, in any event, the Trusts are Freidman's alter egos, and therefore, they are subject to this Court's jurisdiction.

Personal jurisdiction over the Trusts was not required prior to attaching Freidman's assets, including the ownership interests in the Real Estate Entities purportedly owned by the

Trusts.   Helicon Partners, LLC v. Kim's Provision Co., No. 12-01602 (SMB), 2013 WL

1881744, at *8 (Bankr. S.D.N.Y. May 6, 2013); Allstate Ins. Co. v. TMR Medibill Inc., No. CV-

00-0002 (CPS), 2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000).   Due process for any

entity claiming an interest in property attached is preserved by CPLR § 6221, which gives it the

opportunity to challenge the attachment.   Helicon, 2013 WL 1881744, at *8.   That is exactly

what the Trusts have done by filing the Petition.

Furthermore, Freidman's transfer of his interests in the Real Estate Entities to the Trusts

was fraudulent, and may be disregarded pursuant to DCL § 278.   That statute provides, in

pertinent part:

> Where a conveyance or obligation is fraudulent as to a creditor, such
> creditor, when his claim has matured, may, as against any person
> except a purchaser for fair consideration without knowledge of the
> fraud at the time of the purchase, or one who has derived title
> immediately or mediately from such a purchaser,
> a. Have the conveyance set aside or obligation annulled to the extent
> necessary to satisfy his claim, or
> b. Disregard the conveyance and attach or levy execution upon the
> property conveyed.

N.Y. Debt. & Cred. Law § 278(1).

The Trusts have not asserted that they are "purchaser[s] for fair consideration without

knowledge of the fraud," or that they "derived title immediately or mediately from such a

purchaser."   To the contrary, the Trusts have freely admitted that the transfers from the New

York Residence Trusts to the Real Estate Entities were "solely for the purpose of effectuating the

transfer to an offshore asset protection trust."   (JTPO ¶ 7(c), (e), (f), ECF No. 848.)   It is clear

that the transfers of the Real Estate Entities to the Trusts, which occurred after entry of a

judgment in favor of Capital One against Freidman in the amount of $8,484,979.30, and after

Citibank commenced the State Court Action against Freidman to recover on his guarantee of the

Loans, were made with the intent to hinder, delay, or defraud creditors.   Extensive evidence supporting this conclusion was presented at the hearing held on November 30, 2015, on Citibank's motion for an order of attachment.   Citibank, N.A., 534 B.R. at 374-80. No credible evidence has been presented by the Trusts or Freidman to counter this conclusion.   Given the fraudulent nature of the transfers from Freidman to the Trusts, pursuant to DCL § 278, the transfers may be disregarded and the interests in the Real Estate Entities may be attached.

This conclusion applies to both the Investment Entities and the Residential LLCs, and is unaffected by the fact that the Residential Properties were initially owned by the New York Residence Trusts prior to being transferred to the Residential LLCs.   The New York Residence Trusts transferred the Residential Properties to the Residential LLCs, owned by Freidman, who then transferred those ownership interests to the Trusts.   The Trusts admit that Freidman's creation of the Residential LLCs, his ownership of the interests in the Residential LLCs, and the transfer of the Residential Properties to the Residential LLCs, was "solely for the purpose of effectuating the transfer to an offshore asset protection trust."   (JPTO ¶ 7(a), (c), (e), ECF No. 484.)   To the extent that the Trusts may be arguing that Freidman's role in the transfer should be disregarded, and that the transaction should be viewed as a transfer from the New York Residence Trusts to the Trusts, this argument must be rejected.   Freidman was no mere conduit in this transfer.

"[T]he mere conduit doctrine 'envisions that there are three relevant parties: the transferor, the conduit, and a third party who receives the transferred funds from the conduit.'" McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.), 559 B.R. 41, 64 (Bankr. E.D.N.Y. 2016) (quoting Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.), 397 B.R. 1, 15 (S.D.N.Y. 2007)). This doctrine is typically invoked by a financial institution or broker as a

defense to a fraudulent conveyance claim, asserting that it is not liable because it is a "mere conduit," and not an initial transferee of the property. Id. (citing Bear, Stearns, 397 B.R. at 15.).

The mere conduit doctrine is inapplicable to this case for several reasons. First, Freidman was not a mere middleman in this transfer; he created both the New York Residence Trusts and the Trusts and caused the transfer to be made.   Freidman was on all sides of the transfer, as the settlor and a beneficiary of the New York Residence Trusts (Ex. B), the owner of the Residential LLCs, and, as discussed below, the grantor, protector, a beneficiary, and alter ego of the Trusts. He controlled every aspect of this transaction for his benefit.   See Christy v. Alexander & Alexander Inc. of N.Y. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 57–58 (2d Cir.1997) (adopting the "dominion and control" test for determining whether a recipient of a transfer is an initial transferee or a mere conduit); Bear, Stearns, 397 B.R. at 18 (stating that a party is not a mere conduit if it exercises dominion and control over the transferred assets and is able to use it for his own purposes); Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 313 (Bankr. S.D.N.Y. 2009) ("[A]n initial transferee is the person who has dominion and control over the subject of the initial transfer to the extent that he or she may dispose of it as he or she pleases . . . .").

Second, the property transferred by the New York Residence Trusts to the Residential LLCs was not the same as the property transferred by Freidman to the Trusts; the New York Residence Trusts transferred the Residential Properties to the Residential LLCs, while Freidman transferred the ownership interests in the Residential LLCs to the Trusts.

To the extent that the Trusts seek to counter the evidence that Freidman's transfer of the Residential LLCs to the Trusts was intended to hinder, delay, or defraud creditors by pointing out that the Residential Properties were held in trust prior to the transfers, this too must fail.

Citibank points out that self-settled trusts such as the New York Residence Trusts may be pierced by creditors of the settlor.    See, e.g., N.Y. Est. Powers & Trusts Law § 7–3.1(a) ("A disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator."); State v. Hawes, 169 A.D.2d 919, 920 (N.Y. App. Div. 1991) ("The statutory language is abundantly clear and unequivocal that self-settled trusts are void as against creditors."). Neither Freidman nor the Trusts have disputed this contention.

The Trusts argue that Citibank has not commenced a fraudulent conveyance action seeking to avoid the transfers of Freidman's interests in the Real Estate Entities to the Trusts. However, the Court had jurisdiction to find that the transfers to the Trusts were fraudulent conveyances in the context of the Citibank's motion for the Order of Attachment, and now in the context of the Trusts' Petition. The Trusts have cited no authority to support its argument that entry of a judgment against the transferees on a fraudulent conveyance claim is a prerequisite to disregarding the transfers and attaching or executing upon the assets under DCL § 278. Indeed, if that were the case, DCL § 278 would serve little purpose.   A creditor with a judgment against the transferee of a fraudulent conveyance may execute on that judgment, and does not need to avail itself of the provisions of DCL § 278.

Citibank further argues that the Court had jurisdiction over the Trusts to authorize attachment of property purportedly owned by the Trusts because the Trusts are Freidman's alter egos. The Trusts counter that, pursuant to CPLR § 6221, they have subjected themselves to the jurisdiction of this Court solely with respect to the claims asserted in the Petition, and not with respect to Citibank's alter ego claim.

CPLR § 6221 provides:

> Prior to the application of property or debt to the satisfaction of a judgment, any interested person may commence a special

proceeding against the plaintiff to determine the rights of adverse claimants to the property or debt.

\*　　\*　　\*　　\*

The court may vacate or discharge the attachment, void the levy, direct the disposition of the property or debt, direct that undertakings be provided or released, or direct that damages be awarded.

\*　　\*　　\*　　\*

The commencement of the proceeding shall not of itself subject the adverse claimant to personal jurisdiction with respect to any matter other than the claim asserted in the proceeding.

N.Y. C.P.L.R. § 6221.

Although the statute expressly provides that, by commencing a special proceeding under CPLR § 6221, the petitioner does not submit to the court's jurisdiction "with respect to any matter other than the claim asserted in the proceeding," a court hearing such a proceeding must necessarily have jurisdiction over the parties seeking relief to evaluate any defense to the petition.   Here, the Trusts have commenced a petition asserting a claim of ownership of the Real Estate Entities and have claimed that they are not proper garnishees, in response to which Citibank has asserted that the Trusts are Freidman's alter egos.   "The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394 (1914); In re Exec. Life Ins. Co. of N.Y., 103 A.D.3d 631, 633 (N.Y. App. Div. 2013). The Trusts' position that the Court may not consider Citibank's defense to the Petition unless a plenary action is brought against the Trusts is untenable. In this context, it should be remembered that, while this Court's TRO was pending, Freidman took steps to prevent Citibank from obtaining personal jurisdiction over the Trusts in New York, by substituting individuals located in Moscow for the New York lawyers who previously served as trustees.   Whether or not this action violated the letter of the TRO (and Citibank contends that it did), it certainly violated the spirit of

the TRO.   See Sassower v. Starr (In re Sassower), 338 B.R. 212, 222 (Bankr. S.D.N.Y. 2006)

(dismissing an adversary proceeding in bankruptcy court because it failed to state a claim and

because it violated spirit of injunctions issued barring a party from filing lawsuits in the Court of

Appeals and the United States District Court for the Southern District of New York). In any

event, the Trusts have provided no authority in support of this position, and the Court has found

none.   Therefore, the Court has jurisdiction to consider Citibank's alter ego defense to the

Trusts' Petition.

       The form of an entity may be disregarded under New York law to hold a party liable for

the debts of an entity when the party controls the entity, and such control is used to commit a

fraud or a wrong. Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131,

138 (2d Cir. 1991)("[C]ontrol . . . is the key; the control must be used to commit a fraud or other

wrong that causes plaintiff's loss." (citing Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d

Cir. 1988)). "Typically, piercing analysis is used to hold individuals liable for the actions of a

corporation they control. However, New York law recognizes 'reverse' piercing, which . . . seeks

to hold a corporation accountable for actions of its shareholders."   Am. Fuel Corp. v. Utah

Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997).   The analysis is identical for both

forms of piercing.   Pryor v. D'Alessio (In re D'Alessio), Case No. 8-08-72819-REG, Adv. Pro.

Nos. 8-10-08187-REG and 8-12-08095-REG, 2014 WL 201871, at *8 (Bankr. E.D.N.Y. Jan. 17,

2014).

       "New York law requires the party seeking to pierce a corporate veil to make a two-part

showing: (i) that the owner exercised complete domination over the corporation with respect to

the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that

injured the party seeking to pierce the veil." Am. Fuel Corp., 122 F.3d at 134. "Liability

therefore may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties." Wm. Passalacqua Builders, 933 F.2d at 138 (citing cases).

In Babitt v. Vebeliunas (In re Vebeliunas), 332 F.3d 85 (2d Cir. 2003), the Second Circuit assumed that New York courts would pierce trusts under similar circumstances, and has noted that New York appellate courts have pierced trusts where "the respective parties used trusts to conceal assets or engaged in fraudulent conveyances to shield funds from adverse judgments." Vebeliunas, 332 F.3d at 90 (discussing Posner v. S. Paul Posner 1976 Irrevocable Family Trust, 688 N.Y.S.2d 548 (N.Y. App. Div. 1999), Goldberg v. Goldberg, 568 N.Y.S.2d 394 (N.Y. App. Div. 1991), and Pappas v. Freund, 660 N.Y.S.2d 302 (N.Y. Sup. Ct. 1997)).   The standard for piercing a trust is similar to piercing the corporate veil: the claimant "must establish that (1) the owner of the Trust exercised such control that the Trust has become a mere instrumentality of the owner; (2) the owner used this control to commit a fraud or 'other wrong'; and (3) the fraud or wrong resulted in injury or loss."   Smith v. SEC, 432 F. App'x 10, 13 (2d Cir. 2011) (quoting Vebeliunas, 332 F.3d at 91-92.)

The evidence establishes that Freidman controls the Trusts.   The Trusts are structured so that Freidman reserves the right to continue to use the Properties owned by the Real Estate Entities. The trust deeds of all of the Trusts provide that:

> The Trustees, with the written consent of the Protector, shall have power to permit a Discretionary Beneficiary to occupy, use or enjoy personally any movable or immovable property which may, for the time being, be comprised in the Trust Fund upon any terms and conditions which the Trustees may think fit.

(Ex. A, Birkin Trust at 24–25, ¶ 17; Kelly Trust at 23, ¶ 17; Evelyn Trust at 23, ¶ 17; Lindy Trust at 23, ¶ 17.)   The third and seventh schedules of all of the Trusts designated Freidman as both

the Protector and a Discretionary Beneficiary. (Ex. A, Evelyn Trust at 64 (Third Schedule), 68 (Seventh Schedule); Birkin Trust at 66 (Third Schedule), 70 (Seventh Schedule); Kelly Trust at 65 (Third Schedule), 69 (Seventh Schedule); Lindy Trust at 64 (Third Schedule), 68 (Seventh Schedule).)   There are no beneficiaries other than discretionary beneficiaries.   Furthermore, the Protector is empowered to remove and replace the Trustees at any time. (Ex. A, Birkin Trust at 35-36, ¶ 35(d); Kelly Trust at 34-35, ¶ 35(d); Evelyn Trust at 34, ¶ 35(d); Lindy Trust at 34, ¶ 35(d).)   Freidman's attempt to remove himself from those schedules effective March 1, 2016, after the issuance of Amended TRO on November 16, 2015, violated the prohibition "to make or suffer any sale, assignment, or transfer, or any interference with, any property in which Freidman has an interest not in the ordinary course of such person's business or personal affairs." (TRO, ECF No. 6; Am. TRO, ECF No. 29 (incorporating terms of TRO).)   It therefore may be disregarded in the context of this proceeding. Pomodoro Grill v. I.M.V. 1290, LLC, 49 Misc.3d 1202(A) at *4 (N.Y. Sup. Ct. 2015) (deeming a meeting held in violation of a stay to be a nullity).   It is also a transparent attempt, after the fact, to make it appear that he does not control the Trusts.

Citibank has also established that Freidman controls the Trusts by controlling the Real Estate Entities, which are the Trusts' primary, if not only, assets.   Although Freidman testified that he "didn't retain any ownership or any management or any executive profile at all" with the Real Estate Entities after his interests were transferred to the Trusts in June 2015, he also testified that he receives rent payments from the tenants of the investment properties and maintained copies of leases and rent checks for those properties. (Tr. 5/2/17 at 33, 100, 110, 145-146, ECF No. 480.)

The documentary evidence also contradicts Freidman's assertion that he did not control the Real Estate Entities after his interests in them were transferred to the Trusts in 2015.   The Amended Operating Agreements and the Shareholder Agreements, dated March, 2016, for each of the Real Estate Entities, which purportedly replace Freidman with Artur Galstian as manager or president of the Real Estate Entities, were created during the pendency of the Amended TRO, after service of the TRO on Freidman as managing member and president of the Real Estate Entities, and after the United States Marshal levied upon Freidman's interests in the Real Estate Entities.   And, according to their terms, the Amended Operating Agreements and the Shareholder Agreements are not effective until March 2016. (Exs. F, G, H.) Additionally, Galstian testified that he was never managing member or president of any of the Real Estate Entities, but rather he managed individual properties to "find out which property was paying rent, which one wasn't, was it rented or not, contacted the accountant to find out what the [profit and loss was on the properties", similar to the function of an independent contractor managing the specific properties.   (Tr. 5/4/15 at 77, 84-87, ECF No. 482.)

The second prong of the piercing test is also satisfied. It is clear that Freidman's transfer of his interests in the Real Estate Entities to the Trusts was made with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in Citibank's favor. C.f. Vebeliunas, 332 F.3d at 90 ("[There are no allegations in the instant case that the Irrevocable Vart Trust was used to conceal assets from creditors[, or that the] purchase of [the subject real property] or transfer of the property to the Irrevocable Vart Trust was part of a fraudulent conveyance.").   The claim that the transfers were merely for estate planning purposes was contradicted by overwhelming evidence of fraudulent intent.   Freidman transferred his interests in the Real Estate Entities after a judgment was entered against him in favor of Capital One

(Decl. in Supp. of Emergency Mot. of Capital One Equip. Fin. to Intervene, Exs. A and B, ECF No. 140-1, 140-2.), and after Citibank commenced this action seeking to recover in excess of $40 million on Freidman's guaranties of the Loans made to the Debtor.   All of the beneficiaries of the Trusts were Freidman, his children, and his parents. (Ex. A, Birkin Trust at 66 (Third Schedule), 70 (Seventh Schedule); Kelly Trust at 65 (Third Schedule), 69 (Seventh Schedule); Evelyn Trust at 64 (Third Schedule), 68 (Seventh Schedule); Lindy Trust at 64 (Third Schedule), 68 (Seventh Schedule).) After the transfers, Freidman continued to enjoy the benefit of Residential Properties for himself and his family, and used some of the investment properties as places of business for his other entities. (Tr. 5/2/17 at 54-57, 76-78, ECF No. 480.) Immediately after Citibank filed a motion for an order of attachment, Freidman fired the New York attorneys who he had initially appointed as trustees and substituted individuals residing in Moscow.   As this Court noted in granting Citibank's motion for an order of attachment, from the perspective of an inquiry into the badges of fraud, it is difficult to imagine a more arresting chronology. Citibank, N.A., 543 B.R. at 377-78. The contention that these transfers were undertaken merely for estate planning purposes, and not to hinder, delay, or defraud creditors, defies credulity.[8]

The Trusts have not asserted that the transfers were for fair consideration or offered any other evidence to rebut this showing of fraud.   Therefore, because both prongs of the piercing test are satisfied, it is appropriate to find that the Trusts alter egos of Freidman and that the veils of the Trusts may be pierced.   See Duttle v. Bandler & Kass, No 82 CIV. 5084 (KMW), 1992 WL 162636 at *6 (S.D.N.Y. June 23, 1992) ("It would be inequitable to permit a fraudulent

---

[8] Badges of fraud include: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

settlor of a trust to keep the trustee beyond equitable reach of a court by selecting a trustee who stated that he would not appear in American court, and refused to submit to deposition on the question of jurisdiction, and then by moving for dismissal of the trustee as a third party."). This conclusion is consistent with decisions issued in this district post-<u>Vebeliunas</u>. <u>United States v. Evseroff</u>, No. 00-cv-06029 (KAM), 2012 WL 1514860 (E.D.N.Y. Apr. 30, 2012), <u>aff'd</u> 528 F. App'x 75 (2d Cir. 2013) (piercing trust's veil to permit creditor to collect from trust property); <u>Pergament v. Maghazeh Family Trust (In re Maghazeh)</u>, 310 B.R. 5 (Bankr. E.D.N.Y. 2004) (piercing an irrevocable trust to bring the trust's assets into the debtor's bankruptcy estate when the trust was used to fraudulently shield the debtor's assets from his creditors and the debtor controlled the trust).

Because Freidman's transfer of his interests in the Real Estate Entities to the Trusts was fraudulent and may be disregarded under DCL § 278, and because, in any event, the Trusts are Freidman's alter egos and the Trusts' veils may be pierced, the attachment of the ownership interests in the Real Estate Entities was proper. It is respectfully recommended that the Trusts' Petition be denied.[9]

---

[9] The Trusts raise a number of procedural objections to the Order to Attachment, all of which must be rejected. First, the Trusts argue that the Order of Attachment must be vacated because Citibank did not seek to confirm the attachment as required by CPLR § 6211(b), which requires confirmation of *ex parte* orders of attachment within five days. As pointed out by Citibank, however, the Order of Attachment was sought on notice to Freidman (ECF No. 10), the defendant in this adversary proceeding, and therefore § 6211(b) is inapplicable. The CPLR does not require that notice of a motion for an order of attachment be given to every garnishee of a judgment debtor's property. The Trusts do not allege that they did not have actual notice of the motion for the attachment, and concede that at least one of the trustees of each trust was served with the motion. (Trusts' Reply Mem. of Law at 13, n. 18, ECF No. 490.) And, in any event, because Freidman and the Trusts are alter egos, the notice given to Freidman is imputed to the Trusts. Second, the Trusts argue that Citibank failed to confirm the *ex parte* temporary restraining orders. However, the *ex parte* issuance of the TRO is expressly permitted by CPLR § 6210, and the CPLR imposes no requirement to confirm it. N.Y. C.P.L.R. § 6210. ("Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee . . . ."). Third, the Trusts argue that an order of attachment and a temporary restraining order cannot be issued simultaneously. This argument must be rejected because CPLR § 6210 expressly permits such relief.

II.     Effectiveness of Levies on Freidman's Interests in the Real Estate Entities

Citibank and the Trusts dispute whether service of the temporary restraining orders and Order of Attachment by United States Marshal Service on Freidman was sufficient to levy on Freidman's interests in the Real Estate Entities.   The Trusts assert that Citibank was required to serve the trustees of the Trusts, who are not within this Court's jurisdiction. The Trusts also argue that the Court lacks jurisdiction to determine that the interests in the Real Estate Entities were effectively levied upon.

The Trusts' argument that the Court lacks jurisdiction to determine whether the ownership interests in the Real Estate Entities were effectively levied upon should be rejected. If a court has jurisdiction to issue an order of attachment, it has jurisdiction to determine whether the levy pursuant to that order of attachment is effective.   It is also well established that, under both federal law and New York law, if a Court has jurisdiction over party, it also has jurisdiction over that party's alter egos. Wisfelner v. Blavatnik (In re Lyondell Chem. Co.), 543 B.R. 127, 141-43 (Bankr. S.D.N.Y. 2016); Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 475 F. Supp. 2d 456, 458-60 (S.D.N.Y. 2007) (citing cases).   Because the Trusts are Freidman's alter egos, this Court has jurisdiction over the Trusts.

The determination that Freidman's interests in the Real Estate Entities were effectively levied upon does not violate the limited scope of jurisdiction under CPLR § 6221 because it has been shown that Freidman fraudulently transferred his interests in the Real Estate Entities to the Trusts.   Therefore, pursuant to DCL § 278, those transfers may be disregarded and the uncertificated interests in the Real Estate Entities treated as revested in Freidman.   Given this conclusion, the parties to the determination whether Freidman's interests in the Real Estate

Entities were effectively levied upon are Freidman, as owner of the Real Estate Entities, and Citibank.

Attachment "is frequently used when the creditor suspects that the [defendant] is secreting property or removing it from New York." Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 311 (N.Y. 2010). "An order of attachment, standing alone, gives no great rights to the attaching creditor." In re The Int'l Banking Corp B.S.C., 439 B.R. 614, 620 (Bankr. S.D.N.Y. 2010). To obtain priority with respect to the attached property, the attaching creditor must deliver the order of attachment to the sheriff or marshal. Id. Pursuant to CLPR § 6214(a), in order to levy on the property, the sheriff or marshal must serve "copy of the order of attachment upon the garnishee, or upon the defendant if property to be levied upon is in the defendant's possession or custody, in the same manner as a summons." N.Y. C.P.L.R. § 6214.

Uncertificated interests in limited liability companies are subject to attachment pursuant to CPLR § 6202.   Hotel 71 Mezz Lender, 14 N.Y.3d at 314 (holding that the "defendants' ownership/membership interests in 22 out-of-state limited liability companies" are property subject to attachment under the CPLR).   "Where a creditor seeks to attach . . . an intangible form of property[] solely for securing purposes (i.e., the debtor is subject to the court's personal jurisdiction), the situs of the debt is wherever the debtor is present." Id. at 315. In this case, the uncertificated interests in the Real Estate Entities constitute property that is subject to attachment pursuant to CPLR § 6202, and because Freidman owns the interests in the Real Estate Entities, the situs of those interests was New York, where he was personally served by the United States Marshal in the same manner as a summons. (Ex. L.)

Even without a finding that the transfers may be disregarded under DCL § 278, the conclusion that the interests were effectively levied upon may also be reached by applying the provisions of the CPLR § 5201(c), which provides, in pertinent part:

> Proper garnishee for particular property or debt:
>
> Where property consists of a right or share in the stock of an association or corporation, or interests or profits therein, for which a certificate of stock or other negotiable instrument is not outstanding, the corporation, or the president or treasurer of the association on behalf of the association, shall be the garnishee.

N.Y. C.P.L.R. § 5201(c)(1).   A managing member of a limited liability company is a proper garnishee for a judgment debtor's ownership interests in that entity.   See Hotel 71 Mezz Lender, 14 N.Y.3d at 308-09, 315-16. Pursuant to CPLR § 105(i), "[a] 'garnishee' is . . . a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest." N.Y. C.P.L.R. § 105(i). See also N.Y. C.P.L.R. § 311-a ("Service of process on any domestic or foreign limited liability company shall be made by delivering a copy personally to (i) any member of the limited liability company in this state, if the management of the limited liability company is vested in its members, (ii) any manager of the limited liability company in this state, if the management of the limited liability company is vested in one or more managers. . . .").

At the time the United States Marshal served Freidman with the Order of Attachment, he was the president and managing member of the Real Estate Entities, and therefore, was the proper garnishee for the interests in the Real Estate Entities. The Amended Operating Agreements and Shareholder Agreements appointing Artur Galstian as manager or president of the Real Estate Entities were not effective, if at all, until March, 2016, after the service of the order of attachment on Freidman as managing member of the Residential LLCs   (Ex. F, G, H,

L.)   Moreover, Galstian testified that he never undertook the responsibility to manage the Real

Estate Entities. (Tr. 5/4/15 at 77, 84-87, ECF No. 482.)   In short, there is no credible evidence

that Freidman ever actually resigned or ceased to function as manager and president of the Real

Estate Entities.   Service of the Order of Attachment on the trustees is not required pursuant to

the CPLR in order to levy on the Real Estate Entities.   Therefore, the United States Marshal

effectively levied upon the interests in the Real Estate Entities.

III.   <u>Renewed Property Levy and Real Estate Entities Alter Ego Motion and Adverse
       Inference Motion</u>

Citibank seeks a determination that the Real Estate Entities are Freidman's alter egos, and

that the levy on the Properties was effective.   Citibank seeks to establish this in part through an

adverse inference, which they request based upon the failure of Freidman and the Trusts to

produce the Real Estate Entities' QuickBooks and other records.   The Real Estate Entities have

not responded to the motion or otherwise appeared in these proceedings.

Citibank, relying on <u>Allstate Ins. Co. v. TMR Medibill Inc.</u>, No. CV-00-0002 (CPS),

2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000), also argues that a plenary action against

the Real Estate Entities for an alter-ego determination is not required.   However, <u>Allstate</u>

involved the issuance of a preliminary injunction against alleged alter egos, which were not

named defendants.   <u>Allstate</u>, 2000 WL 34011895, at *16.   The court in <u>Allstate</u> concluded that,

because the plaintiffs "demonstrated a likelihood of success for reverse veil piercing," the

property of those alter egos would be attached.   <u>Id.</u>   In <u>Allstate</u>, the court did not make a final

determination that the entities subject to attachment, were, in fact, alter egos.   A court is

permitted to issue provisional remedies, such as attachment against nonparties, because the

CPLR safeguards due process and provides those parties with the ability to challenge the orders.

<u>Helicon</u>, 2013 WL 1881744, at *8-9.    Nothing in <u>Allstate</u> precluded the alleged alter egos from commencing an action under CPLR § 6221 challenging the attachment.

Here, however, an affirmative finding that the Real Estate Entities are alter egos of Freidman, made in the context of a motion against the Real Estate Entities, in an adversary proceeding in which they are not defendants, may cut off the Real Estate Entities' ability to commence a petition under CPLR § 6221 to challenge the attachment.    Indeed, Citibank explained at the February 27, 2017 hearing on its initial motion for this relief that an alter ego determination was being sought "as a defense in anticipation of such a petition for the sake of efficiency." (Tr. 2/27/17 at 52, ECF No. 425.)    Citibank's counsel further stated that "[i]f [the Real Estate Entities] do not petition the Court . . . to determine that Mr. Freidman has no interest in the property in which [Citibank] records the order of attachment . . . then we don't need a determination."    (<u>Id.</u>)    It is improper to determine the merits of a defense to a hypothetical petition under CPLR § 6221.    It must be emphasized that this motion differs from Citibank's assertion, as a defense to the Trusts' Petition, that the Trusts are Freidman's alter egos, because, in filing the Petition under CPLR § 6221, the Trusts subjected themselves to the Court's jurisdiction to hear and determine all defenses relating to the Petition, including Citibank's alter-ego defense.

For these reasons, it is recommended that Citibank's Adverse Inference Motion and the Renewed Real Property Levy and Real Estate Entities Alter Ego Motion be denied.

IV.    <u>Freidman's Objection to Exhibits on Basis of Work Product and/or Attorney-Client Privileges</u>

Freidman objected to the consideration of certain exhibits (i) identified and withheld by Freidman on the basis of work product privilege and (ii) which he contended included attorney-client communications.    Because these proposed findings of fact and conclusions of law are made without relying on those exhibits, Freidman's objection is moot.

CONCLUSION

For the foregoing reasons, it is recommended that the District Court: (1) deny the Trusts' Petition; (2) determine that the United States Marshal properly levied on Freidman's interests in the real estate entities; (3) deny Citibank's motion for a determination that the real estate entities are Freidman's alter egos; (4) deny Citibank's motion for a determination that the United States Marshal properly levied upon the real estate entities' real property in New York; (5) deny Citibank's motion for adverse inferences; and (6) overrule Freidman's objection to Citibank's exhibits as moot.



**Dated: Brooklyn, New York**
**October 4, 2017**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**