UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                    Chapter 7

HYPNOTIC TAXI LLC, et al.,                            Case No. 15-43300 (CEC)

                Debtors.
----------------------------------------------------------x

CITIBANK, N.A.,

                                                            Adv. Pro. No.: 15-01185 (CEC)
                Plaintiff,

v.

BOMBSHELL TAXI LLC, et al.,

                Defendants.
----------------------------------------------------------x

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

APPEARANCES:

| | |
|---|---|
| Jantra Van Roy, Esq. | Brett A. Berman, Esq. |
| Nathan Schwed, Esq. | Jordan B. Kaplan, Esq. |
| Robert Guttmann, Esq. | Fox Rothschild LLP |
| Zeichner Ellman & Krause LLP | 101 Park Ave., 17th Floor |
| 1211 Avenue of the Americas | New York, NY 10017 |
| New York, NY 10036 | Attorneys for Defendant Evgeny Freidman |
| Attorneys for the Plaintiff | |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Citibank, N.A. ("Citibank") for summary judgment fixing damages against Evgeny Freidman ("Freidman") in the amount of $43,114,572.02, plus per diem interest of $19,712.64. Freidman has already been found liable on guaranties of loans made by Citibank to entities controlled by him. (Proposed Findings of Fact & Conclusions of Law, ECF No. 418; District Court Decision, Case No. 15-cv-05067-BMC, ECF No. 53).[1] Freidman argues that summary judgment on damages may not be awarded because Citibank failed to mitigate its damages by refusing to accept the taxi medallions which were collateral for the guaranteed loans, and which Freidman attempted to surrender to Citibank in August 2016. He argues that, because the value of the collateral has significantly declined since that time, his liability must be reduced by an amount equal to the decrease of the collateral's value, and that this constitutes a genuine issue of material fact precluding summary judgment. Freidman further argues that the 24% default interest rate applied by Citibank is an unenforceable penalty.

Citibank also seeks summary judgment against Hypnotic Taxi LLC, Vodka Taxi LLC, Pudding Taxi Inc., Chopard Taxi Inc., Iceberg Taxi Inc., Milkyway Cab Corp., Vsop Taxi Inc., Cupcake Taxi LLC, Dorit Transit Inc., Hennessey Taxi Inc., Candy Apple Taxi LLC, Stoli Taxi Inc., Pointer Taxi LLC, Palermo Taxi Inc., Marseille Taxi LLC, Bombshell Taxi LLC, Merlot Taxi LLC, France Taxi LLC, Bourbon Taxi LLC, Chianti Taxi LLC, Pinot Noir Taxi LLC, and Butterfly Taxi LLC (collectively, the "Debtors") and Taxi Club Management, Inc. ("Taxi Club Management") with respect to liability and damages upon their default on loans made to them by

---

[1] Citations to "ECF No." are to documents filed in Adv. Pro. No. 15-01185-CEC, identified by docket entry number. Citations to "Case No. 15-43300-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re Hypnotic Taxi LLC, identified by docket entry number. Citations to "Case No. 15-cv-05067-BMC, ECF No. []" are to documents filed with the United States District Court for the Eastern District of New York, in Citibank, N.A. v. Bombshell Taxi LLC, et al.

Citibank. Neither the chapter 7 trustee of the Debtors' estates nor Taxi Club Management opposed the motion.

For the following reasons, Citibank's motion should be granted, and judgment should be entered in favor of Citibank against Freidman, the Debtors, and Taxi Club Management.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This non-core proceeding is related to these bankruptcy cases. Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992). A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case. 28 U.S.C. § 157(c)(1). Absent consent of the parties to entry of a final order, the bankruptcy judge is directed to submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. Id. As the parties have not consented to the entry of a final order by the bankruptcy court, this motion is addressed by these proposed findings and conclusions.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed, or are matters of which judicial notice may be taken. Additionally, with respect to Freidman, the following facts were already determined in the context of Citibank's summary judgment motion against him with respect to liability under the guaranties, and therefore constitute law of the case, see Wechsler v. Hunt Health Sys., Ltd., 198 F. Supp. 2d 508, 514 (S.D.N.Y. 2002) (stating that "issues decided in

the first decision [for summary judgment may not be revisited], because those issues, for summary judgment purposes, comprise the law of the case.").[2]

Freidman was the sole managing member or the sole shareholder of each of the Debtors. (Walsh Decl. ¶ 3, ECF No. 512-2; Freidman LBR 1007-4 Aff. ¶ 1, Case No. 15-43300-CEC, ECF No. 2.) Each of the Debtors owned either two or three taxi medallions issued by the New York City Taxi and Limousine Commission, permitting the performance of taxi services. (Walsh Decl. ¶ 2, ECF No. 512-2; Freidman LBR 1007-4 Aff. ¶ 5, Case No. 15-43300-CEC, ECF No. 2.) The Debtors also owned the vehicles used to provide the taxi services. (Freidman LBR 1007-4 Aff. ¶ 5, Case No. 15-43300-CEC, ECF No. 2.)

Between December 2012 and July 2013, Citibank and the Debtors entered into three loan transactions: a $21 million loan by Citibank to fourteen of the Debtors (the "$21 Million Borrowers"), evidenced by notes dated December 20, 2012; a $10 million loan by Citibank to eight Debtors (the "$10 Million Borrowers"), evidenced by notes dated February 1, 2013; and a $1.5 million line of credit by Citibank to Taxi Club Management, another corporation owned by Freidman, evidenced by a note dated July 1, 2013, (respectively, the "$21 Million Loan," the "$10 Million Loan," and the "$1.5 Million Loan," and collectively, the "Loans")[3]. (Citibank Am.

---

[2] Freidman challenged the sufficiency of Citibank's E.D.N.Y. LBR 7056-1 Statement of Undisputed Facts on the grounds that it did not contain citations to evidence. In response, Citibank filed an Amended Statement Pursuant to Local Bankruptcy Rule 7056-1 containing citations to evidence. E.D.N.Y. LBR 1001-1 expressly permits this court to modify or suspend requirements set forth in the local rules, and Rule 56(e) of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, specifically permit a court to "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. Pro. 56(e). This court does not recommend denial of the motion on the basis that Citibank's original E.D.N.Y. LBR 7056-1 Statement did not contain citations to evidence. See Wright v. Maersk Line, Ltd., No. 99CIV11282(LMM)(AJP), 2001 WL 58003, at *3 n.2 (S.D.N.Y. Jan. 23, 2001) (declining to deny a motion for summary judgment for failing to cite to evidence as required by local rule). Additionally, as discussed, many undisputed facts with respect to the existence of the loans made by Citibank, the defaults thereunder, and Freidman's liability on the guaranties were already determined and are binding in the context of this motion. It should also be noted that Freidman did not file a counter-statement of undisputed material facts in accordance with E.D.N.Y. LBR 7056-1.

[3] The $21 Million Borrowers are Bombshell Taxi LLC, Candy Apple Taxi LLC, Chopard Taxi Inc., Cupcake Taxi LLC, Dorit Transit Inc., Hennessy Taxi Inc., Iceberg Taxi Inc., Marseille Taxi LLC, Milky Way Cab Corp., Palermo

E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 1, 3, 5, 7, 13, ECF No. 533.)   The Loans are secured by the taxi medallions owned by the respective Debtors, and each of the Loans is guaranteed by Freidman. (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 4, 8, 15, ECF No. 533; Walsh Decl. ¶¶ 3, 10, 17, and Ex. L ¶ 2(b), ECF Nos. 512-2 and 512-27.) The $1.5 Million Loan to Taxi Club Management was also guaranteed by the Debtors. (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt.  ¶ 16, ECF No. 533.)

Each of the Loans had a payment due on December 1, 2014, which was not made, and on December 4, 2014, Citibank declared a default and accelerated the Loans pursuant to the Loan provisions. (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 19-21, 27-30, ECF No. 533.) Partial payments were made, and were credited to the respective Loans. (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt. ¶ 38, ECF No. 533.)

On December 31, 2014, the $1.5 Million Loan matured. (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt. ¶ 23, ECF No. 533.) Failure to pay the $1.5 Million Loan triggered another default with respect to the $21 Million Loan, and Citibank gave notice of these defaults to all of the Borrowers, as well as to Freidman in his capacity as guarantor. (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 35, 36. ECF No. 533.) The $10 Million Loan matured on January 31, 2015, and the failure to pay at that time constituted an additional default with respect to the $10 Million Loan.  (Citibank Am. E.D.N.Y. LBR 7056-1 Stmt. ¶¶ 33-34, ECF No. 533.)

On March 5, 2015, Citibank commenced an action in New York State Supreme Court, New York County, asserting twelve causes of action against Freidman and the other defendants.

---

Taxi Inc., Pointer Taxi Inc., Pudding Taxi LLC, Stoli Taxi Inc., and Vsop Taxi Inc. (Walsh Decl. ¶ 13, ECF No. 512-2.) The $10 Million Borrowers are Bourbon Taxi LLC, Butterfly Taxi LLC, Chianti Taxi LLC, France Taxi LLC, Hypnotic Taxi LLC, Merlot Taxi LLC, Pinot Noir Taxi LLC, and Vodka Taxi LLC. (Walsh Decl. ¶ 6, ECF No. 512-2.) The $21 Million Borrowers, the $10 Million Borrowers, and Taxi Club Management are collectively referred to herein as the "Borrowers."

Freidman filed an answer asserting twenty four affirmative defenses and twelve counterclaims. On June 22, 2015, Citibank filed a motion seeking, among other things, partial summary judgment against Freidman to recover under the guaranties of the Loans.

On July 22, 2015, the Debtors filed voluntary chapter 11 bankruptcy petitions.[4] The commencement of the bankruptcy cases automatically stayed Citibank's action against the Debtors.

On July 29, 2015, the Debtors removed the state court action to the United States District Court for the Southern District of New York, and after transfer to the United States District Court for the Eastern District of New York, because of the pending bankruptcy cases, the action was referred to this Court by order dated October 28, 2015. (ECF No. 1.)

On September 22, 2016, upon the motions of the United States Trustee and Citibank, and in absence of opposition by the Debtors or any parties in interest, the Debtors' chapter 11 bankruptcy cases were converted to cases under chapter 7 of the Bankruptcy Code. (Case No. 15-43300-CEC, ECF No. 368.)

On March 30, 2017, this Court issued Proposed Findings of Fact and Conclusions of Law recommending that Citibank's motion for summary judgment against Freidman with respect to his liability as guarantor of the Loans be granted and recommending that Freidman's counterclaims be dismissed. (ECF No. 418.) On July 19, 2017, the District Court overruled Freidman's objections to the Proposed Findings of Fact and Conclusions of Law, and adopted it as its decision. (Case No. 15-cv-05067-BMC, ECF No. 53.)

---

[4] These cases were consolidated for procedural purposes and are jointly administered as In re Hypnotic Taxi, Case No. 15-43300.

On December 18, 2017, Citibank filed this motion for summary judgment against the Borrowers with respect to liability and damages due to their default under the Loans, and also sought to fix the judgment amount against Freidman, given the prior determination of his liability under the guaranties.   Freidman disputes the amount of the judgment sought, arguing that Citibank failed to mitigate its damages by refusing to accept the Debtors' turnover of the collateral in August 2016, and argues that the 24% default interest rate is an unenforceable penalty. The Debtors and Taxi Club Management did not oppose the motion. A hearing on the motion was held on February 12, 2018.[5]

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)), cert. denied, 540 U.S. 811 (2003). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

---

[5] References to the transcript of this hearing are referred to herein as "Tr."

I.      <u>Freidman</u>

Citibank seeks entry of judgment against Freidman in the amount of $43,114,572.02, which is the sum of the principal and interest (contractual or default interest, as applicable), less the amount received by the chapter 7 trustee of the Debtors' estates from the sale of Citibank's collateral.[6] The per diem interest on that amount is $19,712.64.

A.  <u>Duty to Mitigate Damages</u>

Freidman argues that he is entitled to a credit of "at least $34.5 million, plus interest accrued on that amount since August 2016." (Freidman Mem. Of Law in Opp'n at 1, ECF No. 530.) He argues that, on August 23, 2016, the Debtors, as debtors in possession prior to the conversion of the cases to chapter 7, attempted to turn over the collateral to Citibank. (Freidman Mem. of Law in Opp'n at 1, ECF No. 530; Notice of Debtors' Surrender of Collateral to Citibank, N.A., Case No. 15-43300-CEC, ECF No. 346.)   The notice filed by the Debtors in connection with the turnover stated that the Debtors consented to lifting the automatic stay to permit Citibank to exercise its rights with respect to the collateral.   (Notice of Debtors' Surrender of Collateral to Citibank, N.A., Case No. 15-43300-CEC, ECF No. 346.)   Freidman asserts that, rather than accept the collateral and sell it, thereby reducing the total amount owed by the Debtors and Freidman, Citibank refused the surrender and commenced an adversary proceeding to enjoin the turnover of the collateral.   (Freidman Mem. of Law in Opp'n at 1-2,

---

[6] Freidman initially argued that the motion should be denied because Citibank's calculation of the amount owed failed to provide a credit from the sale of the medallions by the chapter 7 trustee of the Debtors' estates.   (Freidman Mem. of Law in Opp'n at 6, ECF No. 530.)   Citibank agrees that Freidman is entitled to such credit, and Citibank's calculation specifically provides for it. (Schwed Decl., Ex. C., ECF No. 531-3.)   To the extent Freidman questions the accuracy of the credit because he did not receive a copy of the closing statement from the sale of the medallions (Tr. at 48), this argument should be rejected.   Citibank was not at the closing of the sale, and does not have a copy of the closing statement. (Tr. at 51.) Citibank provided copies of the checks received from the sale of the medallions. (Schwed Decl., Ex. A, ECF No. 531-1.)   Freidman has not raised a genuine issue of material fact with respect to the accuracy of the credit amount.   Citibank is only required to give a credit for the amounts actually received.

7

ECF No. 530; Compl., Adv. Pro. No. 16-1152-CEC, ECF No. 1.)   Freidman argues that, at the time of the attempted surrender, each medallion was valued at $750,000, but by the time the chapter 7 trustee sold them in January 2018, each medallion sold for $187,000. (Freidman Mem. of Law in Opp'n at 2, ECF No. 530.)   As such, Freidman argues that summary judgment fixing the damages at $43,114,572.02, must be denied because the failure of Citibank to mitigate its damages by selling the collateral in 2016 raises a material question of fact as to the correct judgment amount.

Freidman's argument must be rejected at the outset because, although it is well established that a plaintiff must mitigate its damages, see Cary Oil Co., Inc. MG Ref. & Mktg., Inc., 257 F. Supp. 2d 751, 763 (S.D.N.Y. 2003), "the duty to mitigate is a limitation on consequential damages," Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 659 (2d Cir. 1994). See also Cary Oil, 257 F. Supp. 2d at 763 ("[T]he Second Circuit acknowledged an exception to this duty when a party is not seeking consequential damages." (citing Amoco Oil Co., 35 F.3d at 659)). In this case, Citibank is seeking direct damages of payment of principal and interest pursuant to the Loans and guaranties, and is not seeking consequential damages.   As such, the exception to the duty to mitigate applies.

Even if the duty to mitigate applied in this case, Freidman has not raised a genuine issue of material fact to support his argument that Citibank's actions were unreasonable.   The relevant analysis of whether a party satisfied its duty to mitigate damages is whether the party's course of action was reasonable at the time, not whether "another reasonable course of action . . . would have avoided further damage." Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams., 618 F.

Supp. 2d 280, 306 (S.D.N.Y. 2009) (quoting Fed. Ins. Co. v. Sabine Towing & Transp. Co., Inc., 783 F.2d 347, 350 (2d Cir. 1986)).

Here, Freidman has not raised a genuine issue of material fact with respect to the reasonableness of Citibank's actions. Citibank commenced its action against the Debtors and Freidman in March 2015, approximately three months after the default. The Debtors then filed their petitions under chapter 11 of the Bankruptcy Code, imposing the automatic stay pursuant to § 362(a), and preventing Citibank from continuing its action against the Debtors or seizing the collateral. At that point, Citibank was only permitted to pursue Taxi Club Management and Freidman. Freidman has not cited any authority that Citibank was obligated to mitigate damages by filing a motion for relief from the automatic stay, which he invoked by voluntarily filing bankruptcy petitions on behalf of the Debtors.

Moreover, Citibank's refusal to accept turnover of the vehicles and medallions in August 2016 was not unreasonable. In its complaint to enjoin the turnover, Citibank alleges that the Debtors, controlled by Freidman, informed Citibank that, unless Citibank arranged to recover the 46 taxi vehicles and medallions, the Debtors would park all of the vehicles in front of Citibank's offices in Long Island City, NY. (Berman Decl., Ex. B ¶ 18, ECF No. 530-2.) There can be no genuine argument that Citibank's refusal to accept the collateral in this disruptive way was unreasonable. More importantly, the Debtors had no authority to dispose of property of the estate, absent court approval pursuant to 11 U.S.C. § 363(b). The refusal of Citibank to accept turnover of the medallions, together with the vehicles to which they were attached, absent required Court approval is hardly unreasonable.

Moreover, Citibank's choice to pursue the Borrowers and Freidman under the terms of the Loans and guaranties, instead of exercising its rights with respect to the collateral medallions,

is well within Citibank's rights under the Security Agreements, which expressly provide (i) Citibank has "no obligation to marshal any Collateral in favor of . . . Guarantors" (Walsh Decl., Exs. E and I at ¶ 6, ECF Nos. 512-8 through 512-11, 512-16 through 512-24); (i) that the Debtors "have no right to require that [Citibank] proceed against all or any part of the Collateral" (Walsh Decl., Exs. E and I at ¶ 9, ECF Nos. 512-8 through 512-11, 512-16 through 512-24); (iii) Citibank "shall have no duty as to the collection or protection of the Collateral" (Walsh Decl., Exs. E and I at ¶ 13, ECF Nos. 512-8 through 512-11, 512-16 through 512-24); and (iv) "[t]he Borrower releases [Citibank] from any claims, causes of action and demands at any time arising out of or with respect to this Agreement, the Collateral and/or any actions taken or omitted to be taken by the Lender with respect thereto" (Walsh Decl., Exs. E and I at ¶ 13, ECF Nos. 512-8 through 512-11, 512-16 through 512-2412-2).   Given these provisions, and Freidman's waiver of defenses under the terms of the guaranties (see Proposed Findings of Fact & Conclusions of Law at n. 8, ECF No. 418), the argument that Citibank's judgment must be reduced because it did not mitigate its damages should be rejected.   See A.T. Clayton & Co. v. Hachenberger, 920 F. Supp. 2d 258, 268-69 (D. Conn. 2013) (guarantor's defense that the plaintiff failed to mitigate its damages was rejected because the guaranty was absolute, and specifically waived any requirement of the plaintiff to "take any action or exhaust any right against the [d]ebtor or any . . . . collateral"); CIT Grp./Commercial Servs., Inc. v. Prisco, 640 F. Supp. 2d 401, 410 (S.D.N.Y. 2009) (finding that the guarantor waived defenses to liability, including mitigation of damages, and stating that "[u]nder New York law, the only affirmative defenses that are not waived by an

absolute and unconditional [g]uaranty are payment and lack of consideration for the [g]uaranty").

At the hearing this motion, Freidman raised for the first time the argument that Citibank violated the obligations under the Uniform Commercial Code to sell the collateral in a commercially reasonable manner within 30 days. (Tr. at 36-38.)   The failure to raise this argument in his papers, giving Citibank and the Court advance notice, is grounds for its rejection. Freidman's argument should also be rejected on the merits. Although Freidman did not cite any provision of the Uniform Commercial Code, he appears to rely on § 9-610, which provides, in pertinent part:

> (a) [Disposition after default.] After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
> (b) [Commercially reasonable disposition.] Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

N.Y. U.C.C. § 9-610.

On its face, the statute does not support Freidman's argument.   It does not require a secured creditor to take possession of collateral, rather, it permits a creditor to do so.   In the event the secured creditor disposes of it, such disposition much be commercially reasonable. Because Citibank did not take possession of the collateral or attempt to sell it, Uniform Commercial Code § 9-610 is inapplicable here.   Freidman has not cited to any authority that requires Citibank to seize and sell the collateral prior to seeking to recover on the guaranties. See Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp. 2d 536, 548 (S.D.N.Y. 2007) ("A

11

secured creditor owes no duty to anyone to foreclose its lien on a borrower's assets after a default.")

  B. Default Interest Rate

Freidman next argues that the 24% default interest rate charged by Citibank is "grossly inflated" and "an unenforceable penalty." (Freidman Mem. of Law in Opp'n at 7, ECF No. 530.) This argument is easily rejected because "[u]nder New York law, '[i]t is well settled that an agreement to pay interest at a higher rate in the event of default or maturity is an agreement to pay interest and not a penalty.'" In re S. Side House, LLC, 451 B.R. 248, 264 (Bankr. E.D.N.Y. 2011), aff'd sub nom. U.S. Bank Nat'l Ass'n v. S. Side House, LLC, No. 11-CV-4135 ARR, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) (quoting Jamaica Sav. Bank v. Ascot Owners, Inc., 245 A.D.2d 20, 20, 665 N.Y.S.2d 858 (N.Y. App. Div. 1997) (second alteration in original). "And it is well established that 'contractual provisions providing for an increased interest rate on default are enforceable under New York law.'" S. Side House, 451 B.R. at 264 (quoting U.S. Tr. Co. of N.Y. v. LTV Steel Co. (In re Chateaugay Corp.), 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), aff'd, 170 B.R. 551 (S.D.N.Y. 1994)). A 24% default interest rate, negotiated between sophisticated parties, does not constitute a penalty, but rather is an enforceable interest rate. See, e.g., AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC, 890 F. Supp. 2d 373, 389 (S.D.N.Y. 2012) (finding that a default interest rate of 25% "is not independently unconscionable or void as against public policy, and it was agreed upon by two sophisticated parties at the time at which they forged the . . . [a]greements"); In re Sultan Realty, LLC, No. 12-

10119 SMB, 2012 WL 6681845, at *7-8 (Bankr. S.D.N.Y. Dec. 21, 2012) (enforcing default interest rate of 24%).

II.     Debtors and Taxi Club Management

The undisputed facts establish that the Debtors and Taxi Club Management entered into the Loans with Citibank, and defaulted under the terms of the Loans.   Neither the Debtors nor Taxi Club Management opposed this motion. As such, Citibank's motion for summary judgment against the Debtors and Taxi Club Management should be granted, the counterclaims by the Debtors and Taxi Club Management should be dismissed.

III.    Amounts of the Judgments

In connection with the motion, Citibank provided copies of the loan histories (the "Loan Histories") (Walsh Decl., Exs. Q, R, ECF Nos. 512-32, 512-33), charts summarizing those records reflecting the calculation of principal and interest on each of the Loans (Walsh Decl., Exs. S, T, ECF Nos. 512-34, 512-35), and a schedule reflecting the full amount of principal and interest for each Borrower as of November 30, 2017, together with per diem interest (Walsh Decl., Ex. U, ECF No. 512-36).

Freidman challenged the admissibility of these exhibits as evidence. (Freidman Mem. of Law in Opp'n at 9, ECF No. 530; Tr. at 47.)   In response, Citibank filed the declaration of Shawna Eades, a Vice-President of Citibank, stating that the Loan Histories "are and have been maintained in the regular court of Citibank's business and it is the regular course of Citibank's business to make and maintain such records and to rely on them in the ordinary course of its business."   (Eades Decl. ¶ 2, ECF No. 540.)   She further states that she has "personal knowledge of the manner in which the [loan histories] were created and kept, and of Citibank's record-keeping practice and procedures;" "[e]ach of the entries on the [Loan Histories] were

13

made at or near the time of the actions or events they reflect by, or from information transmitted from, a person with knowledge of the subject transaction," and that the Loan Histories are "true and accurate printouts on the entries of loan activities reflected therein, and were all maintained and reproduced in the regular court of Citibank's business."  (Eades Decl. ¶¶ 2, 3, 4, ECF No. 540.)   As such, the Loan Histories annexed to the Walsh Declaration as Exhibits Q and R are admissible pursuant to Rule 803(6) of the Federal Rules of Evidence. Fed. R. Evid. 803(6). Exhibits S, T, and U to the Wash Declaration are admissible under Rule 1006 of the Federal Rules of Evidence because they are charts showing the calculation of the amount owed based on the Loan Histories.   Fed. R. Evid. 1006.   Exhibit C to the Declaration of Nathan Schwed (the "Schwed Declaration") (ECF No. 531-3) reflects the credit given to the Debtors and Freidman from payments received on February 1, 2018 from the sale of the medallions, and recalculates the amount due based upon the application of those monies.

As such Citibank has provided evidence to support judgment against the Debtors and Taxi Club Management in the amounts reflected on Exhibit C to the Schwed Declaration (ECF No. 531-3.)   The proper judgment amount against Freidman, as guarantor, as of February 1, 2018, is the sum of the amounts owed by the Borrowers, $43,114,572.02, plus a per diem interest of $19,712.64.

## CONCLUSION

For the following reasons, it is recommended that Citibank's motion be granted, and that judgment be entered against the Debtors and Taxi Club Management as set forth in Exhibit C to the Schwed Declaration (ECF No. 531-3), and that judgment be entered against Freidman in the amount of $43,114,572.02, plus per diem interest of $19,712.64 from February 1, 2018 through the date of entry of judgment.



**Dated: Brooklyn, New York**
**July 5, 2018**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**